(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 6

This endorsement, effective on __02/14/2018__ , at 12:01 A.M. standard time, forms a part of:

Account No. __511481__

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to: Urban Meridian Group Inc

By: See Contract Allocation Endorsement AR CA



_____
Authorized Representative

In consideration of a total additional premium of $4,979, it is understood and agreed the policy is amended as follows:

1. The following values are added as respects to the 4808 Gibson, Houston, TX Location:

   Building: $1,815,900
   Rents:    $  120,000

2. Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

   I.D.2.  $172,361,998 maximum limit of liability.

3. Form AR CA 03 17 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached AR CA 03 17 "Contract Allocation Endorsement".

4. The breakdown of the total additional premium is as follows:

   | | |
   |---|---|
   | AMR-57471-01: | $1,884 |
   | AMP7531792-01: | $ 251 |
   | MSP-23885-01: | $ 753 |
   | CPP8980420-01: | $ 753 |
   | 10T029659-07482-17-01: | $ 313 |
   | USI-20467-01: | $ 209 |
   | LEX-014710125-01: | $ 753 |
   | ORAMPR003050-00: | $ 63 |

All other terms and conditions shall remain unchanged.

## EXHIBIT 1

Printed/Issued On:  04/09/18

CERTIFIED

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  2/14/2018

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionally by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.023 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $12,926,775 | 7.5000% | $0.151 |
| $172,361,998 excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $12,927,150 | 7.5000% | $0.113 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $10,341,420 | 6.0000% | $0.151 |
| $172,361,998 excess of | Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $10,341,720 | 6.0000% | $0.113 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $10,341,420 | 6.0000% | $0.151 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,723,570 | 1.0000% | $0.151 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $32,747,830 | 19.0000% | $0.151 |
| $172,361,998 excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $10,341,720 | 6.0000% | $0.113 |
| $172,361,998 excess of | Deductibles | NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,723,620 | 1.0000% | $0.113 |
| $172,361,998 excess of | Deductibles | NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $32,748,780 | 19.0000% | $0.113 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $31,024,260 | 18.0000% | $0.151 |
| $172,361,998 excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $31,025,160 | 18.0000% | $0.113 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $31,024,260 | 18.0000% | $0.151 |
| $172,361,998 excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $31,025,160 | 18.0000% | $0.113 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $31,024,260 | 18.0000% | $0.151 |
| $172,361,998 excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $31,025,160 | 18.0000% | $0.113 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,585,355 | 1.5000% | $0.151 |
| $172,361,998 excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,585,430 | 1.5000% | $0.113 |
| $172,356,998 excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $8,617,850 | 5.0000% | $0.151 |
| $172,361,998 excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $8,618,100 | 5.0000% | $0.113 |
| $100,000,000 excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | ORU | Old Republic Union Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | | |
| | All Other Flood | AOF | | |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          **511481**

by

*John D. Allen*

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:** 511481

**Certificate #:** AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 727 | SAM |
| 2007 | NVA |
| 2121 | ARG |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 33 | HIS |
| 780 | ADV |
| 5886 | WBC |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 1969 | APL |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1897 | SKD |
| 2121 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 33 | HIS |
| 2468 | NEO |
| 1183 | TAL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 1861 | ANV |
| 2988 | BRT |

| | |
|---|---|
| 410 | MSP |
| 3268 | AGR |
| 4444 | CNP |
| 2003 | SJC |
| 727 | SAM |
| 623 | BEA |
| 2987 | BRT |
| 4444 | CNP |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 1969 | APL |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |

CERTIFIED

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 4

This endorsement, effective on ___01/05/2018___ , at 12:01 A.M. standard time, forms a part of:

Account No. ___511481___

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to:  Urban Meridian Group Inc

By:  See Contract Allocation Endorsement AR CA



_____
Authorized Representative

In consideration of a total return premium of $10,676, it is understood and agreed the policy is amended as follows:

1. The following location is deleted in its entirety:

   - Quasar W12 LTD
     3530 W 12th St
     Houston, TX 77008
     Total Values:  $3,660,000

2. Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

   I.D.2. $173,376,098 maximum limit of liability.

3. Form AR CA 03 17 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached AR CA 03 17 "Contract Allocation Endorsement".

4. The breakdown of the total return premium is as follows:

   | | |
   |---|---|
   | AMR-57471-01: | $4,040 |
   | AMP7531792-01: | $ 538 |
   | MSP-23885-01: | $1,614 |
   | CPP8980420-01: | $1,613 |
   | 10T029659-07482-17-01: | $ 673 |
   | USI-20467-01: | $ 449 |
   | LEX-014710125-01: | $1,615 |
   | ORAMPR003050-00: | $ 134 |

All other terms and conditions shall remain unchanged.

Printed/Issued On:  04/09/18

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:   1/5/2018
Endorsement No:   4

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPITATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.023 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,002,832 | 7.5000% | $0.151 |
| $173,376,098 excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,003,207 | 7.5000% | $0.113 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $10,402,266 | 6.0000% | $0.151 |
| $173,376,098 excess of | Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $10,402,566 | 6.0000% | $0.113 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $10,402,266 | 6.0000% | $0.151 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,733,711 | 1.0000% | $0.151 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $32,940,509 | 19.0000% | $0.151 |
| $173,376,098 excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $10,402,566 | 6.0000% | $0.113 |
| $173,376,098 excess of | Deductibles | NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,733,761 | 1.0000% | $0.113 |
| $173,376,098 excess of | Deductibles | NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $32,941,459 | 19.0000% | $0.113 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $31,206,798 | 18.0000% | $0.151 |
| $173,376,098 excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $31,207,698 | 18.0000% | $0.113 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $31,206,798 | 18.0000% | $0.151 |
| $173,376,098 excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $31,207,698 | 18.0000% | $0.113 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $31,206,798 | 18.0000% | $0.151 |
| $173,376,098 excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $31,207,698 | 18.0000% | $0.113 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,600,566 | 1.5000% | $0.151 |
| $173,376,098 excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,600,641 | 1.5000% | $0.113 |
| $173,371,098 excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $8,668,555 | 5.0000% | $0.151 |
| $173,376,098 excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $8,668,805 | 5.0000% | $0.113 |
| $100,000,000 excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | ORU | Old Republic Union Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | | |
| | All Other Flood | AOF | | |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #        **511481**

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**   511481

**Certificate #:**   AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 727 | SAM |
| 2007 | NVA |
| 2121 | ARG |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 33 | HIS |
| 780 | ADV |
| 5886 | WBC |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 1969 | APL |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1897 | SKD |
| 2121 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 2468 | NEO |
| 33 | HIS |
| 1183 | TAL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 1861 | ANV |
| 2988 | BRT |

| | |
|---|---|
| 46 | MSP |
| 3268 | AGR |
| 4444 | CNP |
| 2003 | SJC |
| 727 | SAM |
| 623 | BEA |
| 2987 | BRT |
| 4444 | CNP |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 1969 | APL |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 5

This endorsement, effective on __01/24/2018__ , at 12:01 A.M. standard time, forms a part of:

Account No. __511481__

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to:  Urban Meridian Group Inc

By:  See Contract Allocation Endorsement AR CA



_____
Authorized Representative

In consideration of a total return premium of $8,427, it is understood and agreed the policy is amended as follows:

1. The Building value as respects to the 10660 Eastex Freeway, Houston, TX Location is increased to $9,450,000.

2. Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

   I.D.2.  $170,426,098 maximum limit of liability.

3. Form AR CA 03 17 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached AR CA 03 17 "Contract Allocation Endorsement".

4. The breakdown of the total return premium is as follows:

   | | |
   |---|---|
   | AMR-57471-01: | $3,190 |
   | AMP7531792-01: | $  425 |
   | MSP-23885-01: | $1.274 |
   | CPP8980420-01: | $1.274 |
   | 10T029659-07482-17-01: | $  531 |
   | USI-20467-01: | $  354 |
   | LEX-014710125-01: | $1,273 |
   | ORAMPR003050-00: | $  106 |

All other terms and conditions shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:   1/24/2018
Endorsement No:   5

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPITATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.023 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $12,781,582 | 7.5000% | $0.152 |
| $170,426,098 excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $12,781,957 | 7.5000% | $0.113 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $10,225,266 | 6.0000% | $0.152 |
| $170,426,098 excess of | Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $10,225,566 | 6.0000% | $0.113 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $10,225,266 | 6.0000% | $0.152 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,704,211 | 1.0000% | $0.152 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $32,380,009 | 19.0000% | $0.152 |
| $170,426,098 excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $10,225,566 | 6.0000% | $0.113 |
| $170,426,098 excess of | Deductibles | NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,704,261 | 1.0000% | $0.113 |
| $170,426,098 excess of | Deductibles | NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $32,380,959 | 19.0000% | $0.113 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $30,675,798 | 18.0000% | $0.152 |
| $170,426,098 excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $30,676,698 | 18.0000% | $0.113 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $30,675,798 | 18.0000% | $0.152 |
| $170,426,098 excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $30,676,698 | 18.0000% | $0.113 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $30,675,798 | 18.0000% | $0.152 |
| $170,426,098 excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $30,676,698 | 18.0000% | $0.113 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,556,316 | 1.5000% | $0.152 |
| $170,426,098 excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,556,391 | 1.5000% | $0.113 |
| $170,421,098 excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $8,521,055 | 5.0000% | $0.152 |
| $170,426,098 excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $8,521,305 | 5.0000% | $0.113 |
| $100,000,000 excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

CERTIFIED

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | ORU | Old Republic Union Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | | |
| | All Other Flood | AOF | | |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          **511481**

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**  511481

**Certificate #:**  AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|:---:|:---:|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 727 | SAM |
| 2007 | NVA |
| 2121 | ARG |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 33 | HIS |
| 780 | ADV |
| 5886 | WBC |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 1969 | APL |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1897 | SKD |
| 2121 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 33 | HIS |
| 2468 | NEO |
| 1183 | TAL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 1861 | ANV |
| 2988 | BRT |

| | |
|---|---|
| 46 | MSF |
| 3268 | AGR |
| 4444 | CNP |
| 2003 | SJC |
| 727 | SAM |
| 623 | BEA |
| 2987 | BRT |
| 4444 | CNP |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 1969 | APL |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |

CERTIFIED

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

**ENDORSEMENT 7**

This endorsement, effective on ___12/01/2017___, at 12:01 A.M. standard time, forms a part of:

Account No. ___511481___

| | |
|---|---|
| Certain Underwriters at Lloyd's, London | AMR-57471-01 |
| Indian Harbor Insurance Company | AMP7531792-01 |
| QBE Specialty Insurance Company | MSP-23885-01 |
| Steadfast Insurance Company | CPP8980420-01 |
| General Security Indemnity Company of Arizona | 10T029659-07482-17-01 |
| United Specialty Insurance Company | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to:   Urban Meridian Group Inc

By:   See Contract Allocation Endorsement AR CA

_John D. Allen_

Authorized Representative

In consideration of a total additional premium of $12,697, [plus $500 inspection fee] it is understood and agreed the policy is amended as follows:

1. Effective 12/01/2017 the address as respects to ON Quasar Land LTD is amended to read:

   6950, 6970, 6990, 7020, 7021, 7050, 7051 Portwest Dr. Houston, TX  77024

2. Effective 05/01/2018:

   a. The following Location is added:

      Quasar Hardy LTD
      13827 W Hardy
      Houston, TX  77060
      Flood Zone:  AE
      Values - Building:      $6,215,000
               Business Income:  $  660,000
               Total Values:   $6,875,000

   b. Section I.D.2. of form AR COMPASS 02 17 "Commercial Property Compass Form" is amended to read as follows:

      I.D.2.   $179,236,998  maximum limit of liability.

   c. Form AR CA 03 17 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached revised AR CA 03 18 "Contract Allocation Endorsement".

   d. Form AR PED 03 06 "Pre-Existing Damage Exclusion" is added, per the attached.

e. The breakdown of the total additional premium is as follows:

```
AMR-57471-01              $4,805
AMP7531792-01             $  639
MSP-23885-01              $1,920
CPP8980420-01             $1,921
10T029659-07482-17-01     $  800
USI-20467-01              $  533
LEX-014710125-01          $1,920
ORAMPR003050-00           $  159
```

All other terms and conditions of the policy shall remain unchanged.



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## <u>Pre-Existing Damage Exclusion</u>

It is understood and agreed that this policy shall exclude any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing building damage at the time of this Certificate's or policy's inception.  This exclusion shall be removed upon substantial completion of repair or reconstruction of the damaged building.



All other terms and conditions remain unchanged.

AR PED 03 06

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:   5/1/2018
Endorsement No:   7

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPITATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.022 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,442,400 | 7.5000% | $0.149 |
| $179,236,998 excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,442,775 | 7.5000% | $0.111 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $10,753,920 | 6.0000% | $0.149 |
| $179,236,998 excess of | Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $10,754,220 | 6.0000% | $0.111 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $10,753,920 | 6.0000% | $0.149 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,792,320 | 1.0000% | $0.149 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $34,054,080 | 19.0000% | $0.149 |
| $179,236,998 excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $10,754,220 | 6.0000% | $0.111 |
| $179,236,998 excess of | Deductibles | NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,792,370 | 1.0000% | $0.111 |
| $179,236,998 excess of | Deductibles | NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $34,055,030 | 19.0000% | $0.111 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $32,261,760 | 18.0000% | $0.149 |
| $179,236,998 excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $32,262,660 | 18.0000% | $0.111 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $32,261,760 | 18.0000% | $0.149 |
| $179,236,998 excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $32,262,660 | 18.0000% | $0.111 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $32,261,760 | 18.0000% | $0.149 |
| $179,236,998 excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $32,262,660 | 18.0000% | $0.111 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,688,480 | 1.5000% | $0.149 |
| $179,236,998 excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,688,555 | 1.5000% | $0.111 |
| $179,231,998 excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $8,961,600 | 5.0000% | $0.149 |
| $179,236,998 excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $8,961,850 | 5.0000% | $0.111 |
| $100,000,000 excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| **SYMBOLS USED HEREIN:** | **CAUSE OF LOSS** | **SYMBOL** | **CODE** | **COMPANY** |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | ORU | Old Republic Union Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | | |
| | All Other Flood | AOF | | |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| **Risk** | **Basis of Limits** |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          **511481**

by

Authorized Signature

## CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:** 511481

**Certificate #:** AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
| --- | --- |
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 727 | SAM |
| 2007 | NVA |
| 2121 | ARG |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 33 | HIS |
| 780 | ADV |
| 5886 | WBC |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 1969 | APL |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1897 | SKD |
| 2121 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 2468 | NEO |
| 33 | HIS |
| 1183 | TAL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 1861 | ANV |
| 2988 | BRT |

| | |
|---|---|
| 416 | MSP |
| 3268 | AGR |
| 4444 | CNP |
| 727 | SAM |
| 2003 | SJC |
| 623 | BEA |
| 2987 | BRT |
| 4444 | CNP |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 1969 | APL |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |

CERTIFIED

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 10

This endorsement, effective on __01/05/2018__ , at 12:01 A.M. standard time, forms a part of:

Account No. __511481__

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to: Urban Meridian Group Inc

By: See Contract Allocation Endorsement AR CA

_____
Authorized Representative

In consideration of premiums shown below, it is understood and agreed the policy is amended as follows:

1. Effective 01/05/2018 with a total return premium of $14,522:

   a. Endorsement 4 is deleted in its entirety

   b. The following Locations are deleted in their entirety:

      i.   Quasar W12 LTD
           3530 W 12th St
           Houston, TX 77008
           Total Values:  $3,660,000

      ii.  OTM Partners LP
           3607 Old Spanish Trail
           Houston, TX  77021
           Total Values:  $1,456,296

   c. Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

      I.D.2.  $171,919,802 maximum limit of liability.

   d. Form AR CA 03 17 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached AR CA 03 18 "Contract Allocation Endorsement".

   e. The breakdown of the total return premium is as follows:

      | | |
      |---|---|
      | AMR-57471-01: | $5,492 |
      | AMP7531792-01: | $ 732 |
      | MSP-23885-01: | $2,196 |
      | CPP8980420-01: | $2,197 |
      | 10T029659-07482-17-01: | $ 915 |
      | USI-20467-01: | $ 610 |
      | LEX-014710125-01: | $2,197 |
      | ORAMPR003050-00: | $ 183 |

CERTIFIED

2. Effective 01/24/2018 for a total additional premium of $7,946 [plus $500 Inspection Fee]:

   a. Endorsement 5 is deleted in its entirety.

   b. The Building value as respects to the 10660 Eastex Freeway, Houston, TX Location is decreased from $9,450,000 to $6,500,000.

   c. The following is added:

   Location:    Quasar Baytown, Ltd.
                6902-6958 Garth Road
                Baytown, TX  77521
                Flood Zone: X-Unshaded
   Values:      Building:   $5,600,000
                Rents:      $  600,000
                Total:      $6,200,000

   Mortgagee/Loss Payee:   Woodforest National Bank
                           its successors and/or assigns
                           P O Box 863329
                           Plano, TX  75086-3329

   d. Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

   I.D.2.   $175,169,802 maximum limit of liability.

   e. The breakdown of the total additional premium is as follows:

   AMR-57471-01:            $3,005 [plus $500 inspection fee]
   AMP7531792-01:           $  400
   MSP-23885-01:            $1,201
   CPP8980420-01:           $1,202
   10T029659-07482-17-01:   $  501
   USI-20467-01:            $  334
   LEX-014710125-01:        $1,202
   ORAMPR003050-00:         $  101

3. Effective 02/14/2018 Endorsement 6 is amended as follows:

   a. Item 2. is deleted in its entirety and replaced with the following:

   Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

   I.D.2.   $177,105,702 maximum limit of liability.

   b. Item 3. is deleted in its entirety.

4. Effective 05/01/2018 Endorsement 7 is amended as follows:

   a. Item 2.b. is deleted in its entirety and replaced with the following:

   Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

   I.D.2.   $183,980,702 maximum limit of liability.

   b. Item 2.c. is deleted in its entirety.

CERTIFIED

5. Effective 06/25/2018 Endorsement 8 is amended as follows:

    a. Item 2. is deleted in its entirety and replaced with the following:

       Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

       I.D.2.   $184,370,887 maximum limit of liability.

    b. Item 3. is deleted in its entirety.

6. Effective 06/29/2018 for a total return premium of $2,052:

    a. Endorsement 9 is deleted in its entirety:

    b. The following Location is added:

       1910 Wayside Dr.
       Houston, TX 77011
       Flood Zone: X-Unshaded
       Values - Building:   $300,000
                 Rents:   $ 30,240
                 Total:   $330,240

    c. The following Location is deleted in its entirety:

       KRO Acquisitions LLC
       2710 W Alabama
       Houston, TX  77093
       Total Values:  $750,000

    d. Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

       I.D.2.   $183,951,127 maximum limit of liability.

    e. The breakdown of the total return premium is as follows:

       AMR-57471-01:          $776
       AMP7531792-01:         $104
       MSP-23885-01:          $311
       CPP8980420-01:         $311
       10T029659-07482-17-01: $129
       USI-20467-01:          $ 86
       LEX-014710125-01:      $310
       ORAMPR003050-00:       $ 25

All other terms and conditions shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:   1/5/2018
Endorsement No. 10

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.022 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $1,302,923 | 7.5000% | $0.148 |
| $17,377,305 excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $1,303,298 | 7.5000% | $0.111 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $1,042,338 | 6.0000% | $0.148 |
| $17,377,305 excess of | NW | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $1,042,638 | 6.0000% | $0.111 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $1,042,338 | 6.0000% | $0.148 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $173,723 | 1.0000% | $0.148 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $3,300,738 | 19.0000% | $0.148 |
| $17,377,305 excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $1,042,638 | 6.0000% | $0.111 |
| $17,377,305 excess of | Deductibles | NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $173,773 | 1.0000% | $0.111 |
| $17,377,305 excess of | Deductibles | NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $3,301,688 | 19.0000% | $0.111 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $3,127,015 | 18.0000% | $0.148 |
| $17,377,305 excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $3,127,915 | 18.0000% | $0.111 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $3,127,015 | 18.0000% | $0.148 |
| $17,377,305 excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $3,127,915 | 18.0000% | $0.111 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $3,127,015 | 18.0000% | $0.148 |
| $17,377,305 excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $3,127,915 | 18.0000% | $0.111 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $260,585 | 1.5000% | $0.148 |
| $17,377,305 excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $260,660 | 1.5000% | $0.111 |
| $17,372,305 excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $868,615 | 5.0000% | $0.148 |
| $17,377,305 excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $868,865 | 5.0000% | $0.111 |
| $100,000,000 excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

CERTIFIED

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | ORU | Old Republic Union Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | | |
| | All Other Flood | AOF | | |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA. if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Location |

This schedule forms a part of the original Account #   **511481**

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**   511481

**Certificate #:**   AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 727 | SAM |
| 2007 | NVA |
| 2121 | ARG |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 33 | HIS |
| 780 | ADV |
| 5886 | WBC |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 1969 | APL |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1897 | SKD |
| 2121 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 2468 | NEO |
| 33 | HIS |
| 1183 | TAL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 1861 | ANV |
| 2988 | BRT |

| | |
|---|---|
| 46 | MSP |
| 3268 | AGR |
| 4444 | CNP |
| 727 | SAM |
| 2003 | SJC |
| 623 | BEA |
| 2987 | BRT |
| 4444 | CNP |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 1969 | APL |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |

CERTIFIED

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

**ENDORSEMENT 11**

This endorsement, effective on _____06/30/2018_____, at 12:01 A.M. standard time, forms a part of:

Account No. ___511481___

| | |
|---|---|
| Certain Underwriters at Lloyd's, London | AMR-57471-01 |
| Indian Harbor Insurance Company | AMP7531792-01 |
| QBE Specialty Insurance Company | MSP-23885-01 |
| Steadfast Insurance Company | CPP8980420-02 |
| General Security Indemnity Company of Arizona | 10T029659-07482-17-01 |
| United Specialty Insurance Company | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to:  Urban Meridian Group Inc

By:  See Contract Allocation Endorsement AR CA

_Joh D. Allen_

Authorized Representative

It is understood and agreed the policy number as respects to Steadfast Insurance Company is amended to read CPP8980420-02 in lieu of CPP8980420-01.

It is further agreed that any and all reference to policy number CPP8980420-01 shall read CPP8980420-02.

All other terms and conditions remain unchanged.

CERTIFIED

Printed/Issued On:  **10/17/2018**

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

# ENDORSEMENT 8

This endorsement, effective on ___06/25/2018___ , at 12:01 A.M. standard time, forms a part of:

Account No. ___511481___

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to: Urban Meridian Group Inc

By: See Contract Allocation Endorsement AR CA



_____
Authorized Representative

It is understood and agreed that the policy is amended as follows:

1. The total Building Value at Washington Shopping Ctr LTD, located at 5555 Washington, Houston TX 77077 is increased from $1,529,815.00 to $1,920,000.00.

2. Item D.2) Limit of Liability of Section I of the form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

   I.D.2) $179,627,183.00   maximum Limit of Liability

3. Form AR CA 03 18  "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached revised AR CA 03 18 "Contract Allocation Endorsement".

All other terms and conditions of the policy shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:   1/1/2018

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.022 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,471,664 | 7.5000% | $0.149 |
| $179,627,183 excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,472,039 | 7.5000% | $0.111 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $10,777,331 | 6.0000% | $0.149 |
| $179,627,183 excess of | Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $10,777,631 | 6.0000% | $0.111 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $10,777,331 | 6.0000% | $0.149 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,796,222 | 1.0000% | $0.149 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $34,128,215 | 19.0000% | $0.149 |
| $179,627,183 excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $10,777,631 | 6.0000% | $0.111 |
| $179,627,183 excess of | Deductibles | NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,796,272 | 1.0000% | $0.111 |
| $179,627,183 excess of | Deductibles | NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $34,129,165 | 19.0000% | $0.111 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $32,331,993 | 18.0000% | $0.149 |
| $179,627,183 excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $32,332,893 | 18.0000% | $0.111 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $32,331,993 | 18.0000% | $0.149 |
| $179,627,183 excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $32,332,893 | 18.0000% | $0.111 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $32,331,993 | 18.0000% | $0.149 |
| $179,627,183 excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $32,332,893 | 18.0000% | $0.111 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,694,333 | 1.5000% | $0.149 |
| $179,627,183 excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,694,408 | 1.5000% | $0.111 |
| $179,622,183 excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $8,981,109 | 5.0000% | $0.149 |
| $179,627,183 excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $8,981,359 | 5.0000% | $0.111 |
| $100,000,000 excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | ORU | Old Republic Union Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | | |
| | All Other Flood | AOF | | |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          **511481**

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**  511481

**Certificate #:**  AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 727 | SAM |
| 2007 | NVA |
| 2121 | ARG |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 33 | HIS |
| 780 | ADV |
| 5886 | WBC |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 1969 | APL |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1897 | SKD |
| 2121 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 2468 | NEO |
| 33 | HIS |
| 1183 | TAL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 1861 | ANV |
| 2988 | BRT |

| | |
|---|---|
| 46 | MSP |
| 3268 | AGR |
| 4444 | CNP |
| 727 | SAM |
| 2003 | SJC |
| 623 | BEA |
| 2987 | BRT |
| 4444 | CNP |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 1969 | APL |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |

CERTIFIED

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 9

This endorsement, effective on ___06/29/2018___ , at 12:01 A.M. standard time, forms a part of:

Account No. __511481__

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to:  Urban Meridian Group Inc

By:  See Contract Allocation Endorsement AR CA

_____
Authorized Representative

It is understood and agreed that the policy is amended as follows:

1. The following location is added:

    1910 Wayside Dr.
    Houston, TX 77011
    Building: $300,000
    Rents:    $ 30,240
    Total:    $330,240
    Flood Zone: X-Unshaded

2. Item I.D.2. Limit of Liability on Section I of Form AR Compass
   02 17 "Commercial Property Compass Form" is deleted in its entirety
   and replaced with the following:

    I.D.2. $179,957,423 maximum limit of liability.

3. Form AR FLD 06 13 "Flood Zone Designation" is deleted in its
   entirety and replaced with the attached revised AR FLD 06 13 "Flood
   Zone Designation".

4. Form AR CA 03 18  "Contract Allocation Endorsement" is deleted in
   its entirety and replaced with the attached revised AR CA 03 18
   "Contract Allocation Endorsement".


All other terms and conditions of the policy shall remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLOOD ZONE DESIGNATION

It is agreed that for purposes of applying the policy's applicable Flood exclusions, sublimits and/or deductibles:

1. The Locations from the latest Statement of Values on file with the Program Manager are designated to be in the Flood Zones as indicated below. The street addresses shown below shall apply to the entire Location that includes that street address. Any Flood Zone prefixed A or V is considered to be Flood Zone A or V, respectively.

| Address | City | State | Zip | Flood Zone |
|---|---|---|---|---|
| 2400 S. Loop W Fwy | Houston | TX | 77054 | X-UnSh |
| 2401 West Ridge | Houston | TX | 77054 | X-UnSh |
| 7020 Stuebner Ariline Rd. | Houston | TX | 77091 | AE |
| 3607 Old Spanish Trail | Houston | TX | 77021 | X-UnSh |
| 4808 Gibson St. | Houston | TX | 77007 | X-UnSh |
| 1417 Congress St. | Houston | TX | 77002 | X-UnSh |
| 4704 Airline Dr. | Houston | TX | 77022 | X-UnSh |
| 6010 Washington | Houston | TX | 77007 | X-UnSh |
| 4720 Clinton Dr | Houston | TX | 77020 | X-UnSh |
| 7410 Apache St. | Houston | TX | 77028 | AE |
| 200 Emile St. | Houston | TX | 77020 | X-UnSh |
| 5820 Washington | Houston | TX | 77077 | X-UnSh |
| 22220-22224 NW Freeway | Cypress | TX | 77095 | X-UnSh |
| 2533 Southmore | Houston | TX | 77004 | X-UnSh |
| 5555 Washington | Houston | TX | 77077 | X-UnSh |
| 2133 Hwy 6 South | Houston | TX | 77077 | X-UnSh |
| 2135 Hwy 6 South | Houston | TX | 77077 | X-UnSh |
| 5040 Broadway | Pearland | TX | 77584 | X500 |
| 6940-7021 Portwest Dr. | Houston | TX | 77024 | X-UnSh |
| 525 McCarty St. | Houston | TX | 77029 | X-UnSh |
| 1901-1903 Jefferson St. 2502 S | Laredo | TX | 78040 | X-UnSh |
| 6501 Navigation | Houston | TX | 77011 | X-UnSh |
| 3838 Westheimer | Houston | TX | 77028 | X-UnSh |
| 3900 6th Street | Holmes Beach | FL | 34217 | AE |
| 9451 Cullen Blvd. | Houston | TX | 77051 | X500 |
| 4310 Old Spanish Trail | Houston | TX | 77021 | X-UnSh |
| 7647 Harrisburg Blvd | Houston | TX | 77012 | X-UnSh |
| 3815 Garrott St. | Houston | TX | 77006 | X-UnSh |
| 410 Sul Ross | Houston | TX | 77006 | X-UnSh |
| 6028 Navigation | Houston | TX | 77011 | X-UnSh |
| 5304 Navigation | Houston | TX | 77011 | X500 |
| 702 W Bay Area Blvd | Webster | TX | 77598 | X-UnSh |
| 421 SE 34th Ave. | Amarillo | TX | 79103 | X-UnSh |
| 2504 Broadway Ave. | Galveston | TX | 77550 | AE |
| 13840 Pike Road | Missouri City | TX | 77489 | X-UnSh |
| 3730 Dacoma Street | Houston | TX | 77092 | X-UnSh |
| 6942 Signat Drive | Houston | TX | 77041 | X-UnSh |
| 2710 W Alabama St | Houston | TX | 77098 | X-UnSh |
| 440 South Street | Houston | TX | 77023 | AE |
| 10660 Eastex Freeway | Houston | TX | 77093 | AE |
| 3852 Telephone Rd | Houston | TX | 77023 | AE |

AR FLD 06 13

CERTIFIED

15827 W Hardy              Houston                TX      77088            AE

1910 Wayside Dr.           Houston                TX      77011         X-UnSh

2. Any future Location(s) declared and added to the Statement of Values on file with the Program Manager :
   The Flood Zone will be determined at time of binding.If the Flood Zone is not indicated on the endorsement adding the
   Location (s), then it will be determined at the time of loss.

3. Miscellaneous Unnamed Location or Newly Acquired Property (if covered by the policy):
   The Flood sublimit applying (if Flood is a covered peril for the affected Location) will be the lesser of:
   a) The Miscellaneous Unnamed Locations or Newly Acquired Property sublimit (whichever is applicable at the time of
      loss); or
   b) The applicable Flood limit.

   All other terms and conditions remain unchanged.



AR FLD 06 13

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  1/1/2018

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPITATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.022 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,496,432 | 7.5000% | $0.148 |
| $179,957,423 excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,496,807 | 7.5000% | $0.111 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $10,797,145 | 6.0000% | $0.148 |
| $179,957,423 excess of | Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $10,797,445 | 6.0000% | $0.111 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $10,797,145 | 6.0000% | $0.148 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,799,524 | 1.0000% | $0.148 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $34,190,960 | 19.0000% | $0.148 |
| $179,957,423 excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $10,797,445 | 6.0000% | $0.111 |
| $179,957,423 excess of | Deductibles | NW | B123018AMR1042 | Lloyds | AMR-57471-01 | $1,799,574 | 1.0000% | $0.111 |
| $179,957,423 excess of | Deductibles | NW | B123018AMR1139 | Lloyds | AMR-57471-01 | $34,191,910 | 19.0000% | $0.111 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $32,391,436 | 18.0000% | $0.148 |
| $179,957,423 excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $32,392,336 | 18.0000% | $0.111 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $32,391,436 | 18.0000% | $0.148 |
| $179,957,423 excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $32,392,336 | 18.0000% | $0.111 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $32,391,436 | 18.0000% | $0.148 |
| $179,957,423 excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $32,392,336 | 18.0000% | $0.111 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,699,286 | 1.5000% | $0.148 |
| $179,957,423 excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,699,361 | 1.5000% | $0.111 |
| $179,952,423 excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $8,997,621 | 5.0000% | $0.148 |
| $179,957,423 excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $8,997,871 | 5.0000% | $0.111 |
| $100,000,000 excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | ORU | Old Republic Union Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | | |
| | All Other Flood | AOF | | |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #     **511481**

by

Authorized Signature

**CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List**

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**   511481

**Certificate #:**   AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 727 | SAM |
| 2007 | NVA |
| 2121 | ARG |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 33 | HIS |
| 780 | ADV |
| 5886 | WBC |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 1969 | APL |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1897 | SKD |
| 2121 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 2468 | NEO |
| 33 | HIS |
| 1183 | TAL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 1861 | ANV |
| 2988 | BRT |

| | |
|---|---|
| 48 | MSP |
| 3268 | AGR |
| 4444 | CNP |
| 727 | SAM |
| 2003 | SJC |
| 623 | BEA |
| 2987 | BRT |
| 4444 | CNP |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 1969 | APL |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |

CERTIFIED

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

REVISED

**ENDORSEMENT** 2

This endorsement, effective on _12/01/2017_ , at 12:01 A.M. standard time, forms a part of:

Account No. _511481_

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to: Urban Meridian Group Inc

By: See Contract Allocation Endorsement AR CA



_____
Authorized Representative

In consideration of a total return premium of $ 1,021, it is understood and agreed the policy is amended as follows:

1. The policy term shown on Form CERTCO 06 17 "Declaration Page" is amended to read:

   Effective From 12/01/2017 to 12/01/2018 ;
   Both days at 12:01 a.m. standard time at the Insured's mailing address.

   It is agreed that any and all reference to an Effective Date of 12/09/2017 on all policy forms is amended to read 12/01/2017.

2. The following location is deleted in its entirety:

   - UMG Realty
     144 Winkler
     Houston, TX 77087
     Total Values: $324,000

3. Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety and replaced with the following:

   I.D.2) $186,325,296 maximum limit of liability.

Printed/Issued On:  03/30/18

4. Form AR CA 03 17 "Contract Allocation Endorsement" is deleted in its
    entirety and replaced with the attached AR CA 03 17 "Contract
Allocation   Endorsement".

5. The breakdown of the total return premium is as follows:

    AMR-57471-01:              $388
    AMP7531792-01:            $ 52
    MSP-23885-01:             $154
    CPP8980420-01:            $154
    10T029659-07482-17-01:    $ 63
    USI-20467-01:             $ 43
    LEX-014710125-01:         $154
    ORAMPR003050-00:          $ 13

All other terms and conditions shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date: 9/14/2017
Endorsement No: REVISED 2

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.
The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 | excess of Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 | excess of Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 | excess of Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 | excess of Deductibles | F Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.024 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,974,022 | 7.5000% | $0.152 |
| $186,325,296 | excess of Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,974,397 | 7.5000% | $0.111 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $11,179,218 | 6.0000% | $0.152 |
| $186,325,296 | excess of Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $11,179,518 | 6.0000% | $0.111 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | B123017AMR1042 | Lloyds | AMR-57471-01 | $1,863,203 | 1.0000% | $0.152 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | B123017AMR1139 | Lloyds | AMR-57471-01 | $35,400,856 | 19.0000% | $0.152 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $11,179,218 | 6.0000% | $0.152 |
| $186,325,296 | excess of Deductibles | NW | B123017AMR1042 | Lloyds | AMR-57471-01 | $1,863,253 | 1.0000% | $0.111 |
| $186,325,296 | excess of Deductibles | NW | B123017AMR1139 | Lloyds | AMR-57471-01 | $35,401,806 | 19.0000% | $0.111 |
| $186,325,296 | excess of Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $11,179,518 | 6.0000% | $0.111 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $33,537,653 | 18.0000% | $0.152 |
| $186,325,296 | excess of Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $33,538,553 | 18.0000% | $0.111 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $33,537,653 | 18.0000% | $0.152 |
| $186,325,296 | excess of Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $33,538,553 | 18.0000% | $0.111 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $33,537,653 | 18.0000% | $0.152 |
| $186,325,296 | excess of Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $33,538,553 | 18.0000% | $0.111 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,794,804 | 1.5000% | $0.152 |
| $186,325,296 | excess of Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,794,879 | 1.5000% | $0.111 |
| $186,320,296 | excess of $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $9,316,015 | 5.0000% | $0.152 |
| $186,325,296 | excess of Deductibles | NW | USI17 | USI | USI-20467-01 | $9,316,265 | 5.0000% | $0.111 |
| $100,000,000 | excess of Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

CERTIFIED

AR CA 03 17

Printed/Issued On: 3/30/2018

Page 1 of 4

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

**SYMBOLS USED HEREIN:**

| CAUSE OF LOSS | SYMBOL | | CODE | COMPANY |
|---|---|---|---|---|
| Basic | BA | | Lloyds | Certain Underwriters at Lloyd's, London |
| Broad | BR | | | |
| Special | SP | | Indian H | Indian Harbor Insurance Company |
| All Risk excl F/Q | AR | | QBE | QBE Specialty Insurance Company |
| Difference in Conditions | DIC | | | |
| Windstorm and Hail | WH | | Steadfast | Steadfast Insurance Company |
| Named Windstorm | NW | | GSI | General Security Indemnity Company of Arizona |
| All Other Windstorm | AOW | | | |
| Named Storm Flood | NF | | USI | United Specialty Insurance Company |
| Flood | F | | LEX | Lexington Insurance Company |
| All Other Flood | AOF | | | |
| Earthquake | Q | | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| Terrorism Coverages (T3) | T | | HAN | International Insurance Company of Hannover |
| Certified Terrorism as Defined by TRIA, if available | T1 | | ORU | Old Republic Union Insurance Company |
| Non-Certified Terrorism | T2 | | | |
| Equipment Breakdown | EBD | | | |
| Excluding | EXCL | | | |
| Including | INCL | | | |
| Cyber and Data Compromise | CYB | | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          **511481**

by

*[signature: John D. Allen]*

Authorized Signature

**CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List**

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

Account #:   511481

Certificate #:   AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 4444 | CNP |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 1980 | ISN |
| 727 | SAM |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 780 | ADV |
| 33 | HIS |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 5886 | WBC |
| 1897 | SKD |



| | |
|---|---|
| 2151 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 1969 | APL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

REVISED

**ENDORSEMENT** 3

This endorsement, effective on ___12/01/2017___ , at 12:01 A.M. standard time, forms a part of:

Account No. __511481__

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to:  Urban Meridian Group Inc

By:  See Contract Allocation Endorsement AR CA

_____
Authorized Representative

In consideration of a total return premium of $28,946, it is understood and agreed the policy is amended as follows:

1. The Total Values for the following Locations have been amended:

    a. The Wilcox
       2400 S. Loop W Fwy
       Houston, TX 77054
       Total Values:  $17,206,075

    b. The Morgan
       2401 West Ridge
       Houston, TX 77054
       Total Values:  $17,377,305

2. Item I.D.2. Limit of Liability on Section I of Form AR Compass 02 17 "Commercial Property Compass Form" is deleted in its entirety  and replaced with the following:

    I.D.2.    $177,036,098 maximum limit of liability

3. Form AR CA 03 17 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached AR CA 03 17 "Contract Allocation Endorsement".

4. The breakdown of the total return premium is as follows:

    AMR-57471-01:            $10,953
    AMP7531792-01:           $ 1,459
    MSP-23885-01:            $ 4,376
    CPP8980420-01:           $ 4,376
    10T029659-07482-17-01:   $ 1,824
    USI-20467-01:            $ 1,216
    LEX-014710125-01:        $ 4,377
    ORAMPR003050-00:         $   365

All other terms and conditions of the policy shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:   12/1/2017
Endorsement No:   REVISED 3

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPITATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.023 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,277,332 | 7.5000% | $0.151 |
| $177,036,098 excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,277,707 | 7.5000% | $0.113 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $10,621,866 | 6.0000% | $0.151 |
| $177,036,098 excess of | Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $10,622,166 | 6.0000% | $0.113 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | B123017AMR1042 | Lloyds | AMR-57471-01 | $1,770,311 | 1.0000% | $0.151 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | B123017AMR1139 | Lloyds | AMR-57471-01 | $33,635,909 | 19.0000% | $0.151 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $10,621,866 | 6.0000% | $0.151 |
| $177,036,098 excess of | Deductibles | NW | B123017AMR1042 | Lloyds | AMR-57471-01 | $1,770,361 | 1.0000% | $0.113 |
| $177,036,098 excess of | Deductibles | NW | B123017AMR1139 | Lloyds | AMR-57471-01 | $33,636,859 | 19.0000% | $0.113 |
| $177,036,098 excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $10,622,166 | 6.0000% | $0.113 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $31,865,598 | 18.0000% | $0.151 |
| $177,036,098 excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $31,866,498 | 18.0000% | $0.113 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $31,865,598 | 18.0000% | $0.151 |
| $177,036,098 excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $31,866,498 | 18.0000% | $0.113 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $31,865,598 | 18.0000% | $0.151 |
| $177,036,098 excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $31,866,498 | 18.0000% | $0.113 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,655,466 | 1.5000% | $0.151 |
| $177,036,098 excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,655,541 | 1.5000% | $0.113 |
| $177,031,098 excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $8,851,555 | 5.0000% | $0.151 |
| $177,036,098 excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $8,851,805 | 5.0000% | $0.113 |
| $100,000,000 excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyd's, London |
| | Broad | BR | Indian H | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Company |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| | Named Storm Flood | NF | HAN | International Insurance Company of Hannover |
| | Flood | F | ORU | Old Republic Union Insurance Company |
| | All Other Flood | AOF | | |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          **511481**

by

Authorized Signature

**CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List**

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**  511481

**Certificate #:**  AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 4444 | CNP |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 1980 | ISN |
| 727 | SAM |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 780 | ADV |
| 33 | HIS |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 5886 | WBC |
| 1897 | SKD |
| 2121 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 1969 | APL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |

| | |
|---|---|
| 4655 | JUL |
| 727 | SAM |
| 623 | BEA |



**TEXAS COMPLAINTS NOTICE**

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener información o para presentar una queja: |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance: | Usted puede escribir al Departamento de Seguros de Texas a: |
| P. O. Box 149104 | P. O. Box 149104 |
| Austin, TX 78714-9104 | Austin, TX 78714-9104 |
| Fax: (512) 490-1007 | Fax: (512) 490-1007 |
| Web: www.tdi.texas.gov | Web: www.tdi.texas.gov |
| E-mail: ConsumerProtection@tdi.texas.gov | E-mail: ConsumerProtection@tdi.texas.gov |
| **PREMIUM OR CLAIM DISPUTES:** | **DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:** Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente primero. Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas . |
| Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | |
| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **ADJUNTE ESTE AVISO A SU PÓLIZA:** Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto. |

October 19, 2015
LMA9080B

CERTIFIED

## TEXAS SURPLUS LINES NOTICE

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code.  Chapter 225, Insurance Code, requires payment of a 4.85% percent tax on gross premium.

LMA9079
September 1, 2013



# FLORIDA NOTICES

## FLORIDA SURPLUS LINES NOTICE (GUARANTY ACT)

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

LMA9037
September 1, 2013

## FLORIDA SURPLUS LINES NOTICE (RATES AND FORMS)

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

LMA9038
September 1, 2013

**This Declaration Page is attached to and forms part of Certificate provisions.**

| | |
|---|---|
| Previous Account No. 434808 | Account No. 511481 |

| | |
|---|---|
| Certain Underwriters at Lloyd's, London | Certificate No. AMR-57471-01 |
| Indian Harbor Insurance Company | Policy No. AMP7531792-01 |
| QBE Specialty Insurance Company | Policy No. MSP-23885-01 |
| Steadfast Insurance Company | Policy No. CPP8980420-01 |
| General Security Indemnity Company of Arizona | Policy No. 10T029659-07482-17-01 |
| United Specialty Insurance Company | Policy No. USI-20467-01 |
| Lexington Insurance Company | Policy No. LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | Policy No. N/A |
| International Insurance Company of Hannover SE | Policy No. N/A |
| Old Republic Union Insurance Company | Policy No. ORAMPR003050-00 |

| Name and address of the Insured | Producer |
|---|---|
| Urban Meridian Group Inc | Insgroup, Inc |
| 4808 Gibson St | 5151 San Felipe, 17th Floor |
| Houston, TX 77007 | Houston, Texas 77056 |

Effective From ____12/09/2017____ to ____12/09/2018____ ;

Both days at 12:01 a.m. standard time at the Insured's mailing address.

Insurance is effective with: Insurer(s) as stated on Form AR CA - Contract Allocation Endorsement

**This Policy consists of the following coverage parts for which a premium is indicated - This premium may be subject to adjustment.**

COMMERCIAL PROPERTY COVERAGE PART                                    Premium

| | | | |
|---|---|---|---|
| Certain Underwriters at Lloyd's, London | Property | $ | 223,735 |
| One Lime Street, London EC3M 7HA | TRIA | $ | 0 |
| c/o Thompson Heath and Bond Limited, 107 Leadenhall Street, London  EC3A 4AF | | | |
| Indian Harbor Insurance Company | Property | $ | 29,409 |
| 505 Eagleview Blvd., Ste. 100; Dept: Regulatory | TRIA | $ | 0 |
| Exton, PA 19341-1120 | | | |
| QBE Specialty Insurance Company | Property | $ | 88,808 |
| 88 Pine Street, 16th Floor, Wall Street Plaza | TRIA | $ | 0 |
| New York, NY 10005 | | | |
| Steadfast Insurance Company | Property | $ | 88,228 |
| 1299 Zurich Way | TRIA | $ | 0 |
| Schaumburg, IL 60196 | | | |
| General Security Indemnity Company of Arizona | Property | $ | 36,762 |
| One Seaport Plaza, 199 Water Street | TRIA | $ | 0 |
| New York, NY 10038-3526 | | | |
| United Specialty Insurance Company | Property | $ | 24,508 |
| 1900 L. Don Dodson Drive | TRIA | $ | 0 |
| Bedford, TX  76021 | | | |
| Lexington Insurance Company | Property | $ | 88,228 |
| 100 Summer Street #2000 | TRIA | $ | 0 |
| Boston, MA  02110 | | | |
| Princeton Excess and Surplus Lines Insurance Company | Property | $ | 0 |
| 555 College Road East | TRIA | $ | 0 |
| Princeton, NJ  08543 | | | |
| International Insurance Company of Hannover SE | Property | $ | 0 |
| Roderbruchstrasse 26, 30655 Hannover, Germany | TRIA | $ | 0 |
| Attn: Ralph Beutter | | | |
| Old Republic Union Insurance Company | Property | $ | 7,352 |
| 370 North Michigan Avenue | TRIA | $ | 0 |
| Chicago, IL  60601 | | | |
| Inspection Fee | | $ | 3,000 |
| **Total** | | $ | 590,030 |

Minimum Earned Premium = $205,460

Dated ____01/08/18____ by _____

Correspondent and/or Program Manager for the Company(ies)
AmRisc, LLC, 20405 SH 249, Suite 430, Houston, TX  77070

| | |
|---|---|
| State stamp if applicable | The Correspondent and/or Program Manager is not an Insurer hereunder and neither |
| CERTCO 06 17 | is nor shall be liable for any loss or claim whatsoever. |

# SCHEDULE OF FORMS AND ENDORSEMENTS

| Account No.<br>511481 | NAMED INSURED<br>Urban Meridian Group Inc |
|---|---|

### Forms and Endorsements

```
LMA9080B 10 19 15           TEXAS COMPLAINTS NOTICE
LMA9079 09 01 13            TEXAS SURPLUS LINES NOTICE
LMA 9037-38 09 01 13        FLORIDA NOTICES
CHANGE END. PAGE            ENDORSEMENT PAGE
AR CA 03 17                 CONTRACT ALLOCATION ENDORSEMENT
AR COMPASS 02 17            COMPASS COMMERCIAL PROPERTY FORM
AR EB 10 16                 EQUIPMENT BREAKDOWN SCHEDULE AND COVERAGE
LLOYDS SOS 03 17            LLOYDS OF LONDON AMENDATORY ENDT
XL SOP 11 12                INDIAN HARBOR INSURANCE COMPANY AMENDATORY ENDT
PN CW 01 0915               FRAUD NOTICE
QBIL-0217 04 15             QBE SERVICE OF PROCESS ENDT
STF-CL-111-A CW 11.08       STEADFAST INSURANCE COMPANY AMENDATORY ENDT
U-GU-873-A CW 6.11          ZURICH DISCLOSURE STATEMENT
U-GU-874-A CW 6.11          ZURICH DISCLOSURE NOTICE
U-GU-1041-A LMA3100         OFAC NOTICE and SANCTION LIMITATION CLAUSES
VRS COS SOS 01 18           VARIOUS COMPANIES SERVICE OF SUIT CLAUSES ENDT
AR CYB 12 14                CYBERONE COVERAGE FORM
AR DC 12 14                 DATA COMPROMISE COVERAGE FORM
AR CYH 11 15                CALENDAR YEAR HURRICANE DEDUCTIBLE
AR COMPASS SINKHOLE 02 17   COMPASS SINKHOLE LOSS EXTENSION
AR TERR 09 17               TERRORISM ENDORSEMENT
AR FLD 06 13                FLOOD ZONE DESIGNATION ENDT
WDP-1 04 15                 WIND DRIVEN PRECIPITATION ENDT
AR TRIA EXCL 02 15          EXCLUSION OF CERTIFIED ACTS OF TERRORISM ENDT
```

### Additional Miscellaneous Forms

Forms Schedule

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 1

This endorsement, effective on ___12/09/2017___ , at 12:01 A.M. standard time, forms a part of:

Account No. ___511481___

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-57471-01 |
| Indian Harbor Insurance Company Policy No. | AMP7531792-01 |
| QBE Specialty Insurance Company Policy No. | MSP-23885-01 |
| Steadfast Insurance Company Policy No. | CPP8980420-01 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-07482-17-01 |
| United Specialty Insurance Company Policy No. | USI-20467-01 |
| Lexington Insurance Company | LEX-014710125-01 |
| Princeton Excess and Surplus Lines Insurance Company | N/A |
| International Insurance Company of Hannover SE | N/A |
| Old Republic Union Insurance Company | ORAMPR003050-00 |

Issued to: Urban Meridian Group Inc

By: See Contract Allocation Endorsement AR CA



_____
Authorized Representative

1. Terrorism is provided as per Form AR TERR 09 17, subject to:
   a. Limit – As per schedule subject to $100,000,000 maximum Per Occurrence
   b. Deductible – $10,000 Per Occurrence

2. Replacement Cost Valuation shall apply as regards to Real & Personal Property; Except roof coverings to be Actual Cash Value if originally installed or last fully replaced prior to 2002.

3. Coverage excludes all damage directly or indirectly caused by any Named Storm in existence upon AmRisc receipt of written request to bind.

4. All Buildings with outstanding damage are excluded. Contact Underwriter if waiver needed.

5. Any additional premium or return premium under $500 shall be waived.

6. Warrant fire protection sprinklers are provided throughout all buildings, as noted on AmRisc Application – Statement of Values.

7. Warrant no losses in the last 5 years on properties to be covered unless specified in AmRisc Application – Statement of Values.

8. Warrant no Exterior Insulation and Finish Systems (EIFS) Construction.

9. Warrant no known sinkhole activity at the insured Location(s) or within 1000 ft. of the insured Location(s).

10. Warrant no aluminum distribution wiring unless exception by underwriter as noted on AmRisc Application – Statement of Values.

11. Warrant no more than 20% Section 8 subsidized units in any one Location.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date 12/30/2017

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $5,000 | excess of | Deductibles | AR EXCL NW | B123017AMR780 | Lloyds | AMR-57471-01 | $5,000 | 100.0000% | $0.008 |
| $100,000 | excess of | Deductibles | CYB | QBE17 | QBE | MSP-23885-01 | $100,000 | 100.0000% | $0.000 |
| $50,000,000 | excess of | Deductibles | EBD | B123017AMR1088 | Lloyds | AMR-57471-01 | $50,000,000 | 100.0000% | $0.000 |
| $1,000,000 | excess of | Deductibles | F,Q | B123017AMR1063 | Lloyds | AMR-57471-01 | $1,000,000 | 100.0000% | $0.024 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,998,322 | 7.5000% | $0.152 |
| $186,649,296 | excess of | Deductibles | NW | GSI17 | GSI | 10T029659-07482-17-01 | $13,998,697 | 7.5000% | $0.111 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | XLA17 | IndianH | AMP7531792-01 | $11,198,658 | 6.0000% | $0.152 |
| $186,649,296 | excess of | Deductibles | NW | XLA17 | IndianH | AMP7531792-01 | $11,198,958 | 6.0000% | $0.111 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | B123017AMR1042 | Lloyds | AMR-57471-01 | $1,866,443 | 1.0000% | $0.152 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | B123017AMR1139 | Lloyds | AMR-57471-01 | $35,462,416 | 19.0000% | $0.152 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | B123017AMR824 | Lloyds | AMR-57471-01 | $11,198,658 | 6.0000% | $0.152 |
| $186,649,296 | excess of | Deductibles | NW | B123017AMR1042 | Lloyds | AMR-57471-01 | $1,866,493 | 1.0000% | $0.111 |
| $186,649,296 | excess of | Deductibles | NW | B123017AMR1139 | Lloyds | AMR-57471-01 | $35,463,366 | 19.0000% | $0.111 |
| $186,649,296 | excess of | Deductibles | NW | B123017AMR252 | Lloyds | AMR-57471-01 | $11,198,958 | 6.0000% | $0.111 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | STF17 | Steadfast | CPP8980420-01 | $33,595,973 | 18.0000% | $0.152 |
| $186,649,296 | excess of | Deductibles | NW | STF17 | Steadfast | CPP8980420-01 | $33,596,873 | 18.0000% | $0.111 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | LEX17 | LEX | LEX-014710125-01 | $33,595,973 | 18.0000% | $0.152 |
| $186,649,296 | excess of | Deductibles | NW | LEX17 | LEX | LEX-014710125-01 | $33,596,873 | 18.0000% | $0.111 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | QBE17 | QBE | MSP-23885-01 | $33,595,973 | 18.0000% | $0.152 |
| $186,644,296 | excess of | Deductibles | NW | QBE17 | QBE | MSP-23885-01 | $33,596,873 | 18.0000% | $0.111 |
| $186,649,296 | excess of | $5,000 | AR EXCL NW | ORU17 | ORU | ORAMPR003050-00 | $2,799,664 | 1.5000% | $0.152 |
| $186,649,296 | excess of | Deductibles | NW | ORU17 | ORU | ORAMPR003050-00 | $2,799,739 | 1.5000% | $0.111 |
| $186,644,296 | excess of | $5,000 | AR EXCL NW | USI17 | USI | USI-20467-01 | $9,332,215 | 5.0000% | $0.152 |
| $186,649,296 | excess of | Deductibles | NW | USI17 | USI | USI-20467-01 | $9,332,465 | 5.0000% | $0.111 |
| $100,000,000 | excess of | Deductibles | T | B123017AMR917-2 | Lloyds | AMR-57471-01 | $100,000,000 | 100.0000% | $0.000 |

CERTIFIED

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyd's, London |
| | Broad | BR | | |
| | Special | SP | Indian H | Indian Harbor Insurance Company |
| | All Risk excl F/Q | AR | QBE | QBE Specialty Insurance Company |
| | Difference in Conditions | DIC | | |
| | Windstorm and Hail | WH | Steadfast | Steadfast Insurance Company |
| | Named Windstorm | NW | GSI | General Security Indemnity Company of Arizona |
| | All Other Windstorm | AOW | | |
| | Named Storm Flood | NF | USI | United Specialty Insurance Company |
| | Flood | F | LEX | Lexington Insurance Company |
| | All Other Flood | AOF | | |
| | Earthquake | Q | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| | Terrorism Coverages (T3) | T | HAN | International Insurance Company of Hannover |
| | Certified Terrorism as Defined by TRIA, if available | T1 | ORU | Old Republic Union Insurance Company |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          **511481**

by

*John D. Allen*

Authorized Signature

CERTIFIED

**CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List**

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

Account #:    511481

Certificate #:    AMR-57471-01

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 33 | HIS |
| 510 | KLN |
| 510 | KLN |
| 33 | HIS |
| 510 | KLN |
| 1886 | QBP |
| 2003 | SJC |
| 2987 | BRT |
| 2987 | BRT |
| 510 | KLN |
| 4444 | CNP |
| 510 | KLN |
| 1886 | QBP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 1980 | ISN |
| 727 | SAM |
| 1861 | ANV |
| 2987 | BRT |
| 5820 | JCD |
| 780 | ADV |
| 33 | HIS |
| 1225 | AES |
| 2010 | MMX |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 5886 | WBC |
| 1183 | TAL |
| 5886 | WBC |
| 1897 | SKD |



| | |
|---|---|
| 2131 | ARG |
| 318 | MSP |
| 5000 | SPL |
| 780 | ADV |
| 1969 | APL |
| 1886 | QBP |
| 2121 | ARG |
| 2014 | ACA |
| 318 | MSP |
| 1897 | SKD |
| 1861 | ANV |
| 5820 | JCD |
| 727 | SAM |
| 623 | BEA |



# COMPASS COMMERCIAL PROPERTY FORM

In consideration of the premium charged, this policy covers for direct physical loss of or damage to the Covered Property caused by a Covered Cause of Loss occurring during the policy period. Coverage shall be subject to the terms, conditions, definitions, exclusions, limitations and provisions contained herein.

## SECTION I - COVERAGES AND LIMITS OF LIABILITY

Terms which appear in boldface type have special meaning.  See Section VIII. POLICY DEFINITIONS.

A.  NAMED INSURED:  First Named Insured (as shown in the Declarations) and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is responsible or legally obligated to insure.

B.  LOSS PAYEE(S), LENDER'S LOSS PAYEE(S), MORTGAGEE(S), AND ADDITIONAL INSURED(S):  Per Certificates of Insurance (or similar document, list or schedule) on file with AmRisc.   Any Certificates of Insurance issued in connection with this Policy shall be issued solely as a matter of convenience or information (and do not alter or amend coverage) for the addressee(s) or holders(s) of said Certificates of Insurance, except where any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) are named pursuant to the Special Provisions of said Certificate of Insurance.  In the event any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) are so named by contract, this Policy shall be deemed to have endorsed accordingly, subject to all other terms, conditions and exclusions stated herein, and provided the Certificate of Insurance is issued prior to a loss.  Such endorsement adding any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) will be deemed attached to the policy and the Insured will pay any required premium.

C.  COVERAGE TERRITORY:  Coverage under this Policy applies to **Occurrences** within the United States of America and Canada.

D.  LIMIT OF LIABILITY ("Policy Limit"):  The total maximum liability for all insurance companies and Lloyd's of London, London England (all hereinafter, the "Companies") in any one **Occurrence** as a result of all covered loss or damage regardless of the number of **Locations,** coverages, or perils insured under this Policy shall not exceed the lesser of: 1. (a, b, or c, or d; as indicated by an 'X'); OR 2.:

   1.  a.  __X__  As respects each **Location** insured by this Policy:  __100.00__ % of the total combined stated values for all categories of Covered Property and Time Element exposures shown for that **Location** on the latest Statement of Values or other documentation on file with AmRisc;

   b.  ____  As respects each item (e.g. Building, Personal Property, Time Element), insured by this Policy: _____% of the total stated value shown for that item on the latest Statement of Values or other documentation on file with AmRisc;

    c.  \_\_\_\_ As respects each **Location** insured by this Policy: _____% of the total combined stated values for all categories of Covered Property shown for that **Location**; and separately, _____ % of the total combined stated values for Time Element shown for that **Location**; all on the latest Statement of Values or other documentation on file with AmRisc;

    d.  \_\_\_

<u>OR</u>

    2. $ 186,649,296      maximum limit of liability.

E.  SUBLIMITS OF LIABILITY: Sublimits of Liability stated below are included within and not in addition to the Limit of Liability shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence**, unless otherwise indicated.

If the words "NOT COVERED" are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.

    1.  **Earth Movement:**

        a. $ 1,000,000      Annual Aggregate

        Subject to the Annual Aggregate Limit for all Earth Movement shown in E.1.a. above:

        b. $ NOT COVERED      Annual Aggregate for all **Earth Movement** in California, Alaska and Hawaii, combined.

        c. $ NOT COVERED      Annual Aggregate for **Pacific Northwest States**, combined.

        d. $ NOT COVERED      Annual Aggregate for **New Madrid Earthquake Zone Counties**, combined.

    2.  **Flood:**

        a. $ 1,000,000      Annual Aggregate

        Subject to the Annual Aggregate Limit for all Flood shown in E.2.a. above:

        b. $ Incl. in Above      Annual Aggregate as respects **Flood** for all **Locations** combined, wholly or partially within **Special Flood Hazard Areas.**

    3.  **Named Storm:**

        $ INCLUDED      Regardless of the number of Coverages, **Locations** or Perils involved including, but not limited to, wind, wind gusts, tornados, cyclones, hail, or rain, all arising out of a **Named Storm**, the maximum amount the Companies will pay per **Occurrence** as respects all covered loss or damage.

In the event a loss involves more than one of the above perils (E.1. - E.3.) and provided it is a covered peril(s), each peril's sublimit above shall be considered a separate sublimit apart from the other peril's sublimits above.

However, the Sublimits below (E.4. - E.36.) shall be considered sublimits within the above applicable covered peril sublimits (E.1. - E.3.).

    4.  Accounts Receivable:      $1,000,000

5.  Builder's Risks:                     $1,000,000          New Buildings or structures in the Course of Construction; excluding Soft Costs.

6.  Builder's Risk Soft Costs:           $100,000

7.  Civil or Military Authority:         30     Days, but in no event will the Companies pay more than $1,000,000.

8.  Contingent Time Element:             60 Days     or $1,000,000;      whichever is less.

9.  Debris Removal: The Companies' total liability for Debris Removal per **Occurrence** for all insured **Locations** sustaining covered direct physical loss or damage payable under this Policy shall not exceed the lesser of:

    a. 25%   of the amount of covered physical loss or damage to covered Property (excluding Time Element), payable for all insured **Locations**;  or

    b. $5,000,000.

However, in the event the covered loss is subject to a sublimit, as stated in Sublimits E.4. - E.8. and E.10 - E.36., the Debris Removal shall be limited to 25% of that sublimit.

10. **Electronic Data and Media:**       $500,000

11. Errors or Omissions:                 $100,000             subject to all other sublimits contained herein.

12. Extended Period of Indemnity:        180 Days

13. Extra Expense/Expediting Expense: $1,000,000

14. Fine Arts:                           $250,000

15. Fire Brigade Charges:                $100,000

16. **Fungus, Molds, Mildew, Spores, Yeast**: $100,000          Annual Aggregate.

17. Ingress/Egress Coverage:             30 Days     ;  but in no event will the Companies pay more than $1,000,000.

18. Leased, rented, borrowed, loaned, or unscheduled owned **Contractor's Equipment**: $100,000;          but not to exceed: $25,000          any one item.

19. Leasehold Interest:                  $100,000

20. Limited Pollution Coverage:          $100,000          Annual Aggregate.

21. Lock Replacement:                    $250,000

22. **Miscellaneous Unnamed Locations:** $250,000;          subject to all other sublimits contained herein.

23. Newly Acquired Property:             60 Days     but in no event will the Companies pay more than $1,000,000,          subject to all other sublimits contained herein.

24. Ordinance or Law:
    a. Coverage A: Included in **Building** Limit.
    b. Coverage B:20%    of the scheduled **Building** value, not to exceed $5,000,000.
    c. Coverage C: Included with Coverage B.
    d. Coverage D: Included in the Time Element (if covered).
    e. Coverage E: Included in the **Building** Limit.

25. Ordinary Payroll:                   30 Days        (provided values are included in the reported Time Element Values).

26. Plants, lawns, trees or shrubs:     $250,000

    Any one plant, lawn, tree or shrub: $25,000

27. Professional Fees:                  $100,000          Annual Aggregate for all claims combined.

28. Reclaiming, restoring or repairing land improvements: $10,000

29. Reward Reimbursement:               $25,000

30. Royalties:                          $100,000

31. Service Interruption:               $500,000;           however, a qualifying period of 72 hours applies to this coverage (if Time Element is covered).

32. Spoilage:                           $100,000

33. Time Element Monthly Limitation:    1/4    Monthly; applicable to all Time Element coverages, except those that have a sublimit in this Paragraph E.

34. Transit:                            $100,000

35. Underground pipes, flues & drains:  $250,000

36. **Valuable Papers and Records:**    $1,000,000

F.  MAXIMUM AMOUNT PAYABLE:  In the event of a Covered Cause of Loss hereunder, the total liability of the Companies shall be limited to the least of the following:

1.  The actual adjusted amount of loss, less applicable deductible(s), or

2.  The limit of liability or applicable sublimit of liability shown in this Policy or endorsed hereon.

G.  DEDUCTIBLE: Each claim for loss or damage under this Policy shall be subject to a per **Occurrence** deductible amount of:

    1. $  10,000            Property Damage & Time Element (if covered), combined; OR

    2. $  N/A               Property Damage; and

       N/A                  Time Element (if covered).

unless a specific deductible shown below applies for the indicated peril(s).

1.  **Flood:**

    a. $ 25,000             Per **Occurrence**, except as follows in Subparagraphs G.1.b. or G.1.c.:

    b.  As respects **Locations** wholly or partially within **Special Flood Hazard Areas**:

        Maximum available limits with National Flood Insurance Program (NFIP), whether purchased or not; plus $100,000            per Occurrence.

    c.  As respects **Locations** wholly or partially within **Special Flood Hazard Areas** or Zones B, X500, or X-Shaded:

        Maximum available limits with National Flood Insurance Program (NFIP), whether purchased or not; plus $ N/A               per Occurrence.

2. **Earth Movement**:

   a. $ 25,000             Per **Occurrence**, except as follows in Subparagraph G.2.b., G.2.c. or G.2.d.:

   b. As respects **Locations** in California, Hawaii and Alaska:

       N/A    % of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of
   $N/A                any one **Occurrence.**

   c. As respects **Locations** in the **Pacific Northwest States**:

       N/A    % of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of
   $N/A                any one **Occurrence.**

   d. As respects Locations in the **New Madrid Earthquake Zone Counties**:

       N/A    % of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of
   $ N/A                any one **Occurrence.**

3. **Windstorm or Hail**:

   a. $        *            Per **Occurrence; OR**

       $N/A            Per **Occurrence, Per Location;**
   *$25,000; Except $100,000 as respects Locations outside Tier 1 & 2 Counties; 2.0% of the TIV at each
   Location involved in the loss arising out of  Wind Driven Precipittion, subject to a minimum deductible of
   $50,000.
   except as follows in Subparagraphs G.3.b. or G.3.c.:

   b. any loss arising out of a **Named Storm** (which includes **Hurricane**):

   1) N/A    % of the **TIV** at each **Location**, subject to a minimum deductible of $ N/A
   any one **Occurrence**; as respects **Locations** in:
   N/A.

   2) N/A    % of the **TIV** at each **Building** or structure or outdoor property, subject to a minimum
   deductible of $ N/A                any one **Occurrence**; as respects **Locations** in:
   N/A.

c.  any loss arising out of a **Hurricane** only:

1) 2.0          % of the **TIV** at each **Location**, subject to a minimum deductible of $ 50,000
any one **Occurrence**; as respects **Locations** in:
All Locations, as per Statement of Values on file with AmRisc.

2) N/A          % of the **TIV** at each **Building** or structure or outdoor property, subject to a
minimum deductible of $ N/A                    any one **Occurrence**; as respects **Locations** in:
N/A.

The following four paragraphs apply to Subparagraphs G.1. through G.3. above, inclusive:

1)       **TIV** at each **Location** shall mean the sum of all reported values for Real Property, Personal
Property, Time Element, and any other values for that scheduled **Location**, as per the
Statement of Values on file with AmRisc.

2)       **TIV** at each **Building** or structure or outdoor property shall mean the sum of all reported
values for Real Property, Personal Property, Time Element, and any other values for that
scheduled Building or scheduled structure or scheduled outdoor property, as per the
Statement of Values on file with AmRisc.

3)       In each case of loss or damage covered by this Policy, the Companies shall not be liable
unless the Insured sustains loss or damage in a single **Occurrence** greater than any
applicable deductible described herein and then, if this is a quota share Policy, only for
each Companies' share in excess of such deductible.  When this Policy covers more than
one **Location**, the deductible shall apply against the total loss or damage covered by this
Policy in any one **Occurrence**, unless otherwise stated in this Paragraph G.

4)       If two or more peril deductible amounts provided in this Policy apply to a single
**Occurrence**, the total to be deducted shall not exceed the largest deductible applicable,
unless otherwise stated in this Policy.  However, if a Time Element deductible and another
deductible apply to a single occurrence, then the Companies shall apply both deductibles to
the Occurrence.

## SECTION II - COVERED CAUSES OF LOSS

A.  COVERED CAUSES OF LOSS:  This Policy insures against all risks of direct physical loss or damage
to Covered Property, except as excluded.

B.  EXCLUSIONS:  The Companies do not insure for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

1.  NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL EXCLUSIONS

 a.  The Companies will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

  1)  Nuclear Hazard - including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

  2)  Biological Hazard - including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

  3)  Chemical Hazard - including, but not limited to, any chemical agent, material, product or substance;

  4)  Radioactive Hazard - including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

 b.  The provisions of subparagraphs a.2) and a.3) will not apply where the agent, material, product or substance at issue is utilized in the course of business by an Insured.

 c.  Only if and to the extent required by state law, the following exception to the exclusions in Paragraph a. applies:

  If a hazard excluded under Paragraph a. results in Fire (and provided Fire is a Covered Peril), the Companies will pay for the loss, damage, cost or expense caused by that Fire, subject to all applicable policy provisions including the Limit of Insurance on the affected Covered Property.  Such coverage for Fire applies only to direct loss or damage by Fire to Covered Property. This coverage does not apply to insurance provided under Time Element, including but not limited to,  Business Income, Rental Value or Extra Expense coverage or endorsements that apply to those coverages.

2.  a.  War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

  1)  By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

  2)  By military, naval, or air forces; or

  3)  By an agent of any such government, power, authority, or force; or

 b.  Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

 c.  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such **Occurrence**, seizure or destruction;

Including any consequence of Subparagraphs 2.a., 2.b., or 2.c. above.

CERTIFIED

3. Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured (including leased employees), or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured (including leased employees), or others listed above without the knowledge of the Insured is covered.

4. Asbestos

   a. The Companies will not pay for loss, damage or remediation expenses caused by or resulting from the presence of asbestos or asbestos-containing materials. As used in this exclusion, remediation expenses are expenses incurred for or in connection with the investigation, monitoring, removal, disposal, treatment, abatement or neutralization of asbestos or asbestos-containing materials to the extent required by federal, state or local laws, regulations or statutes or any subsequent amendments thereof to address asbestos.

   b. However, this Asbestos exclusion does not apply to the extent that coverage is provided under the following:

   This policy insures asbestos located within an insured **Building** or structure, and then only that part of the asbestos which has been physically damaged during the policy period by one of these Listed Perils:

   FIRE; SMOKE; EXPLOSION; LIGHTNING; WINDSTORM; HAIL; DIRECT IMPACT OF VEHICLE, AIRCRAFT OR VESSEL; RIOT OR CIVIL COMMOTION; VANDALISM OR MALICIOUS MISCHIEF; ACCIDENTAL DISCHARGE OF FIRE PROTECTIVE EQUIPMENT

   This coverage is subject to all limitations in the policy and, in addition, to each of the following specific limitations:

   1) The said **Building** or structure must be insured under this policy for damage by this Listed Peril.

   2) The Listed Peril must be the immediate, sole cause of the damage to the asbestos.

   3) The Insured must report to the Companies the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos.  However, this policy does not insure any such damage first reported to the Companies more than 12 (twelve) months after the expiration, or termination, of the policy period.

   4) Insurance under this policy in respect of asbestos shall not include any sum relating to:

      a) any faults in the design, manufacture or installation of the asbestos;
      b) asbestos not physically damaged by a Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

5. Pollution/Contamination Exclusion
   NMA 2340 11/24/1988 (USA date) - amended

   Seepage And/Or Pollution  And/Or Contamination Exclusion

   This Policy does not insure:

   a. any loss, damage, cost or expense, or

   b. any increase in insured loss, damage, cost or expense, or

CERTIFIED

c. any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution  and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this clause includes (but is not limited to):

a. seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

b. the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

6. Delay, loss of market, or loss of use.

7. Indirect, remote, or consequential loss or damage.

8. Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

9. Voluntary parting with title or possession of any property, including voluntary parting which is the result of any fraudulent scheme, trick, devise, false pretenses, or any other similar act.

10. Faulty workmanship, material, construction, installation, or design from any cause; or faulty planning, zoning, development, surveying or siting; all unless physical damage not excluded by this Policy ensues, in which event, this Policy will cover only such resulting damage.

11. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

12. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

13. Settling, cracking, shrinking, bulging, or expansion of pavements, paved surfaces, walkways, drainage systems or roadways, foundations, walls, floors, or  ceilings; all unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage.

14. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an **Occurrence** away from the **Location**(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

15. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

16. Electronic Data & Media Exclusion

Damage or consequential loss directly or indirectly caused by, consisting of, or arising out of:

a. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

b. Any corruption, destruction, distortion, erasure, "computer virus", or any other loss or damage to data, media, software, or any kind or programming or instruction set,

c. Loss of use or functionality, whether partial or entire, of data, media, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

"Computer Virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. "Computer Virus" includes, but is not limited to, "Trojan Horses," "worms" and "time or logic bombs".

However, in the event that a **Defined Cause of Loss** results from any of the matters described in paragraph a.- c. above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the policy period to property insured by this Policy directly caused by such **Defined Cause of Loss.**

17. Electronic Date Recognition Exclusion (EDRE)
NMA 2802 12/17/1997 (USA Date) - amended

This policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a. the calculations, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

b. any change, alteration or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

18. Loss or damage in the form of, caused by, arising out of, contributed to, or resulting from **Fungus, Mold(s), Mildew, Spores or Yeast;** or any spores or toxins created or produced by or emanating from such **Fungus, Mold(s), Mildew, Spores or Yeast.**

However, this exclusion shall not apply provided the Insured establishes that the fungus, mold(s), mildew, spores or yeast is a direct result of a covered loss from a **Defined Cause of Loss** or **Flood** (provided **Flood** is a covered peril) and provided this loss is reported to the Companies within twelve (12) months from the expiration date of the policy. The Companies' liability shall then be limited to the sublimit stated elsewhere.

19. Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage.

20. Loss or damage arising out of:

   a. A **building** or any part of a **building** that is in danger of falling down or caving in,

   b. Any part of a **building** that has separated from another part of the **building**, or

   c. A **building** or any part of a **building** that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   However, the Companies do cover loss or damage arising out of **Collapse.**

21. **Equipment Breakdown** to vehicles (or any equipment on vehicles), or **contractors equipment**, including but not limited to draglines, cranes, excavation or construction equipment; all unless physical damage not excluded by this Policy results to other insured Property, in which event, this Policy will cover only such resulting damage.

22. Terrorism Exclusion
   NMA 2920; 10/8/01 (USA Date) - amended

   This policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

   For the purpose of this exclusion, an "act of terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

   This clause also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

   If the Companies allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance, the burden of proving the contrary shall be upon the Insured.

   In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

23. Exclusion Of Loss Due To Virus Or Bacteria
   AR 01 40 07 - amended

   a. The exclusion set forth in subparagraph b. below, applies to all coverage under all forms and endorsements that comprise this Policy, including but not limited to forms or endorsements that cover property damage to **buildings** or personal property and forms or endorsements that cover business income extra expense or action of civil authority.

   b. The Companies will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from **fungus, mold(s), mildew, spores or yeast**.  Such loss or damage is addressed in a separate exclusion in this Policy.

    c.  With respect to any loss or damage subject to the exclusion in subparagraph b. above, such exclusion supersedes any exclusion relating to pollutants or contaminants.

    d.  The terms of the exclusion in subparagraph b. above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded by this Policy.

24. Water under the ground surface pressing on, or flowing or seeping through:

    a. Foundations, walls, floors or paved surfaces;

    b. Basements, whether paved or not;

    c. Doors, windows or other openings.

However, this exclusion shall not apply to water damage to Covered Property caused by the breakage of underground pipes or containment structures.

25. Rain, snow, ice or sleet to personal property in the open.

26. Loss or damage by rain, snow, or dust, whether driven by wind or not, to the interior of any **building** or structure, or the property inside the **building** or structure, unless the **building** or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.  This exclusion shall not apply to loss or damage caused by or resulting from the thawing of snow, sleet or ice on the **Building** or structure (also known as ice damming).

27. Seizure or destruction of property by order of governmental authority.  However, coverage is provided for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire is a Covered Cause of Loss.

28. **Equipment Breakdown** (see Definitions); unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

29. Hot Testing; which means:

    a.  Commissioning or performance testing;

    b.  Any testing involving the introduction of flammable or explosive feedstock beginning when such feedstock is first introduced; or

    c.  The rotational operation of any turbine or generator, except for rotational operation by turning gear only when the turbine or generator is not energized.

Hot Testing does not mean the commissioning or performance testing of:

    Heating; Cooling; Air handling; Electrical; Mechanical; Hydraulic; Hydrostatic; or Pneumatic; all  being systems that are part of construction works.

30. Loss, damage, cost, or expense covered under any express or implied guarantee or warranty from a manufacturer or supplier, whether or not such manufacturer or supplier is an Insured under this policy.

31. Named Storm Restriction: This policy shall exclude all damage directly or indirectly caused by a **Named Storm** that is in existence at the time that written request to bind is given to AmRisc,  until coverage for such **Named Storm** has been bound by written agreement between AmRisc and the First Named Insured.  In addition, no increase in limits or additional coverages will be provided for any insured **Location(s)** threatened by such **Named Storm**, until coverage for such **Named Storm** has been bound by written agreement between AmRisc and the First Named Insured.

32. Loss or damage to **contractor's equipment** caused by the weight of a load exceeding the registered lifting capacity of the machine.

## SECTION III - COVERED PROPERTY

A. COVERED PROPERTY:  Unless otherwise excluded, this Policy covers the following property while on the described **Locations** and within 1,000 feet thereof; except **contractor's equipment** shall be per the Policy Coverage Territory:

1. Real property, including new **buildings** and additions under construction or renovation at an insured **Location**, Personal property, **Contractor's Equipment** and any other Equipment in which the Insured has an insurable interest;

2. Improvements and betterments to **buildings** or structures in which the Insured has an insurable interest.  Such Improvements and Betterments shall be considered Real property.

3. At the option of the Insured, Personal property, other than motor vehicles, of officers and employees of the Insured;

4. Personal property of others, other than motor vehicles, in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against by this Policy;

5. Contractor's and vendor's interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage.  However, such interests will not extend to any Time Element coverage provided by this Policy.

6. Real and Personal Property and related Time Element Loss at **Miscellaneous Unnamed Location(s)** owned by the Insured or for which the Insured is legally responsible for, and within the Coverage Territory of the policy.  This shall also include Personal Property of the Insured while temporarily at **Miscellaneous Unnamed Location(s)**, including Property on Exhibitions and Salesman's Samples.

B. PROPERTY EXCLUDED: This Policy does not insure against loss or damage to:

1. Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones.  This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2. Air, **Land**, land values, and any substance in or on **Land**, or any alteration to the natural condition of the **Land**.  However, this exclusion does not apply to the cost of reclaiming, restoring or repairing land improvements, provided the loss is from a **Defined Cause of Loss**;

3.  Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4.  Standing timber, growing crops, plants, lawns, trees, shrubs or animals.  However, this exclusion does not apply to plants, lawns, trees or shrubs, provided the loss is from a **Defined Cause of Loss**;

5.  Pavements, paved surfaces, walkways, drainage systems or roadways; except: a) Builder's Risks, provided values are included in contract costs; b) when scheduled as such on the Statement of Values on file with AmRisc; & c) pool decking and spa decking which shall be considered part of the pool or spa, provided the Pool or Spa values are scheduled as such on the Statement of Values on file with AmRisc;

6.  Vehicles licensed for highway use, watercraft, aircraft and railroad rolling stock;

7.  Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8.  Property in transit, except expressly as provided elsewhere in this Policy;

9.  Underground mines or mining shafts and any related mining property and equipment while underground, or wells;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft;

12. Dams, dikes, levees, bridges, tunnels, reservoirs, flood retaining walls and canals; except when scheduled as such on the Statement of Values on file with AmRisc;

13. Docks, piers and wharves; except when scheduled as such on the Statement of Values on file with AmRisc;

14. Transmission and distribution lines and related equipment, including transformers, feeder lines, pipelines, and support structures of every type and description; except when located on the insured **Location** or within one-thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire;

16. Contraband, or property in the course of illegal transportation or trade;

17. Property of Unit Owners within individual Condominium units, consisting of:

    a.  Personal property and Improvements & Betterments; and

    b.  Floor coverings, wall coverings and ceiling coverings which only serve that unit.

    However, this exclusion shall not apply to:

    c.  Appliances; refrigerators; air conditioning equipment (including air conditioning compressors); heating equipment; cooking ranges; dishwashers; clothes washers/dryers; and fixtures, installations or permanent additions initially installed in accordance with the original plans and specifications; all contained within the units; or

d.  Any property within the individual unit (including the property excluded in a. and b., above) that the Condominium Association Agreement requires be covered by the Condominium Association.

18. Marijuana and Schedule 1 Controlled Substances, including all related Property, Expenses and Time Element.

## SECTION IV - VALUATION

Except as otherwise provided in this Paragraph, adjustment of loss or damage under this Policy shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and obsolescence.  The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site.   However, if the property is not repaired, rebuilt or replaced as soon as reasonably possible after the loss or damage, the value of the property will be determined on an **Actual Cash Value** basis.  In the event the Insured elects to have the loss or damage settled on an **Actual Cash Value** basis, the Insured may still make a claim on a replacement cost basis, provided the Insured notifies the Companies within 180 days after the loss or damage.

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A.  Stock in process:  the cost of raw materials and labor expended, plus the proper proportion of overhead charges.

B.  Finished goods manufactured by the Insured:  the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred

C.  Raw materials, supplies and other merchandise not manufactured by the Insured:  the replacement cost.

D.  **Valuable Papers and Records**:  the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information.  If not replaced, the Companies will only pay the blank value of the valuable papers or records.

E.  **Electronic Data and Media**:  the cost of the blank media, plus the costs of copying the **Electronic Data and Media** from back-up or from originals of a previous generation.  These costs will not include research and engineering nor any costs of recreating, gathering or assembling such **Electronic Data and Media**. If the **Electronic Data and Media** is not repaired, replaced or restored, the basis of valuation shall be the cost of the blank media.  However, this Policy does not insure any amount pertaining to the value of such **Electronic Data and Media** to the Insured or any other party, even if such **Electronic Data and Media** cannot be recreated, gathered or assembled.

F.  Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties:   the replacement cost if replacement cost values have been reported to the Companies and if actually replaced; otherwise the **Actual Cash Value**, but not to exceed the cost to repair or replace the property with material of like kind and quality.

G.  Leasehold improvements and betterments:

1.  If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments.

2.  If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost.

The Companies will determine the proportionate value as follows:

a.  Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

b.  Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3.  Nothing, if others pay for repairs or replacement.

H.  Fine Arts:

1.  If there is no Agreed Value Schedule on file with AmRisc, then the lesser of:

a.  The cost to repair or replace the fine art, or

b.  The appraised value, which will be determined as of the time of the loss.

2.  If there is an Agreed Value Schedule on file with AmRisc, then the Agreed Value Schedule shall be used.

3.  If a Fine Arts article is part of a pair or set, and a physically damaged article cannot be replaced, or cannot be repaired or restored to the condition that existed immediately prior to the loss, the Companies will be liable for the lesser of the full value of such pair or set or the Agreed Value, as per the schedule on file with AmRisc.  The Insured will surrender the pair or set to the Companies.

I.  Accounts Receivable:   the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

1.  Any collection expenses over and above the normal collection costs;

2.  Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3.  Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Companies, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Companies by the Insured up to the total amount of loss paid by these Companies.  All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Companies shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

J.   Property for Sale:  If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

   1.   The cost to repair or replace the damaged property, or

   2.   The price at which the property is offered for sale less the market value of the **Land**.

K.   Property in Transit:  In case of loss, the basis of adjustment shall be:

   1.   Property shipped to or for the account of the Insured: the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

   2.   Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder): the amount of the Insured's selling invoice, including prepaid or advanced freight;

   3.   Property of others not under invoice: the actual market value at the point of destination on the date of the **Occurrence**, less any charges saved which would have become due and payable upon delivery at destination; or

   4.   Property of the Insured not under invoice: valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

L.   Contractor's equipment and vehicles (if covered): **Actual Cash Value**, unless an agreed value applies.

M.   Catalyst: **Actual Cash Value**.

N.   Historic Building Replacement Cost: As respects buildings that are declared and designated by a local, state or federal authority to be of historical significance or of historic value, such rebuilding, repairing or replacement shall be with material, workmanship, processes, technologies and designs publicly available within the current marketplace and shall not include the cost of creating outdated, archaic or antiquated materials, workmanship, processes, technologies or designs. In no event shall the loss exceed the scheduled limit on the damaged Building.

O.   For all other property:  At replacement cost if actually replaced; otherwise, the **Actual Cash Value**, but not to exceed the cost to repair or replace the property with material of like kind and quality.

With respect to Subparagraphs A. through O., inclusive, unless otherwise specifically stated, the Companies will compute the valuations at the time and place of the loss.

## SECTION V - TIME ELEMENT COVERAGE
## GROSS EARNINGS

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Covered Property.

A.   ACTUAL LOSS SUSTAINED:  In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

   1.   To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

   2.   To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an insured **Location** or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Companies shall be liable, subject to all other conditions of this Policy not inconsistent herewith, for the actual loss sustained of the following during the Period of Interruption:

1.  GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services.  For the purpose of this coverage, GROSS EARNINGS means:

    a.  For manufacturing operations:  The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

    b.  For mercantile or non-manufacturing operations:  The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

    c.  Plus all other earnings derived from the operation of the business.

    In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

    In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses, including payroll (subject to the Ordinary Payroll restriction below), that would have existed had no interruption of production or suspension of business operations or services occurred.

    There is no coverage for any portion of the Insured's Ordinary Payroll expense, unless a specified number of days for Ordinary Payroll are shown elsewhere and values have been included in the reported Time Element Values.  In such case, the Companies will pay Ordinary Payroll for that number of days only.  The number of days need not be consecutive, but must fall within the interruption of production or suspension of business operations or services, or fall within the extension of that period, if an extension is provided.  Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2.  EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall these Companies be liable for an amount  greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B.  PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1.  The period from the time of physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

    a.  normal operations resume; or

    b.  physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

    whichever is less.  Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2.  In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

    a.  To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

    b.  To replace physically damaged or destroyed mercantile stock necessary to resume operations; or

    c.  To replace raw materials and supplies in order to continue operations.

    However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3.  For Property under construction:  The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion.  In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

    The Period of Interruption does not include any additional time:

    a.  Required for re-staffing or re-training employees; or

    b.  Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above; or

    c.  Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Ordinance or Law coverage, if such coverage is provided by this Policy.

C.  ADDITIONAL TIME ELEMENT COVERAGES

1.  EXTRA EXPENSE/EXPEDITING EXPENSE:  This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Covered Property utilized by the Insured.  Extra Expense means:

    a.  The reasonable and necessary extra expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

    b.  The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

    c.  The reasonable extra costs (expediting expenses) for temporary repair of damaged property and for expediting the permanent repair or replacement of such damaged property. This includes overtime wages and extra costs of express or other rapid means of transportation. This does not include expenses recoverable elsewhere under this policy.

    The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2.  RENTAL VALUE:  As respects Covered Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

Rental Value means the sum of:

a.  The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

b.  The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

c.  The fair rental value of any portion of such property which is occupied by the Insured.

Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3.  ROYALTIES:  This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of  Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party, only if such Royalties are shown as such on the Statement of Values on file with AmRisc.  When determining the amount payable,  the Companies will consider the amount of income derived by the Insured from such agreements before, and the probable amount of income after, the date of loss or damage.

4.  SOFT COSTS (BUILDER'S RISK):  For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during the Period of Interruption (described in Paragraph B. above).  Such Soft Costs must be the result of direct damage from a Covered Cause of Loss.

The Companies will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred.  Soft Costs  means:

a.  The amount of actual interim or construction financing interest, including loan fees and other one-time charges incurred to negotiate a new construction loan and/or extend the existing one;

b.  Realty taxes and ground rent if any;

c.  Advertising and promotional expenses;

d.  Cost of additional commissions;

e.  Architects, surveyors, legal, consulting engineers, accounting, licenses, permits, or other fees not otherwise covered by this Policy;

f.  Project administration expense, but not including development fees;

g.  Insurance premiums;

h.  Founder's fee refunds; and

i.  Net Business Income or Net Rental Income.

5.  CONTINGENT TIME ELEMENT:  If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

    a.  wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured; or

    b.  wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

    then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property.  The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Covered Property under this Policy.

    This coverage applies to the Insured's direct suppliers or direct customers located in the Policy's Coverage Territory.

6.  INTERRUPTION BY CIVIL OR MILITARY AUTHORITY:  This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's covered **Location** is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder.  The insured physical loss or damage must occur within five (5) statute miles from the Insured's covered **Location** in order for coverage to apply.  Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown elsewhere.

    With respect to Additional Time Element Coverages 6. & 7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Companies will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

7.  INGRESS & EGRESS:  This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's covered Location is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder.  The insured physical loss or damage must occur within five (5) statute miles from the Insured's covered **Location** in order for coverage to apply.  Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown elsewhere.

    With respect to Additional Time Element Coverages 6. & 7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Companies will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

8.  INTERDEPENDENCY: This Policy is extended to cover a Time Element loss at an insured **Location** that involves interdependency at one or more other insured **Locations,** all within the Policy's Coverage Territory.  The loss, including the resulting interdependency loss, will be adjusted based on the Time Element coverage that applies at the insured **Location** where the covered physical loss or damage occurred.

9.   EXTENDED PERIOD OF INDEMNITY:  Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

a.   the date on which the liability of the Companies for loss or damage would otherwise terminate; or

b.   the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for a period of time exceeding the number of days specified elsewhere starting with the later of a. or b. above.  This Extended Period of Indemnity does not apply to any Additional Time Element Coverages, except RENTAL VALUE (Par. 2. above) or SOFT COSTS (BUILDER'S RISK) Net Business Income or Net Rental Income (Par. 4.i. above).

This additional coverage does not include coverage for any increase in loss due to fines or damages for breach of contract or for late or non-completion of orders, or penalties of any nature.

D.   ADDITIONAL EXCLUSIONS: Section V - Time Element Coverage does not cover:

1.   IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than physical loss or damage from a Covered Cause of Loss to which this coverage applies.

2.   REMOTE LOSS -

a.   Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order; or

b.   Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature; or

c.   Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises.

Nor shall the Companies be liable for any other consequential or remote loss, other than as specifically provided in this Section V.

3.   FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction.

4.   TRANSIT - Any loss resulting from loss or damage to property in transit.

5.   BERTH AND/OR PORT BLOCKAGE - Blockage means a blockage of any part of the ship channel, dock areas, port or berths caused by disabled, stranded or sunken vessels, or rigs or cargo, or other obstructions to navigation.

E.   TIME ELEMENT MONTHLY LIMITATION OF INDEMNITY:  The Companies shall not be liable for more than the Monthly Limitation of Indemnity shown elsewhere.  This Monthly Limitation Of Indemnity shall apply to all Time Element coverages, except those that have a sublimit.

Time Element Monthly Limitation means the most the Companies will pay monthly for a Time Element loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Covered Property. This Monthly Limitation of Indemnity is payable for each period of 30 consecutive days after the beginning of the Period of Interruption and is calculated by multiplying the scheduled Time Element value by the fraction shown elsewhere.

## SECTION VI - ADDITIONAL COVERAGES

The following additional coverages are subject to the terms and conditions of this Policy, including the deductibles and sublimits of liability corresponding to each such additional coverage stated elsewhere. These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the **Earth Movement**, **Flood**, or **Named Storm** Sublimits of Liability provided herein, if applicable.

A. ACCOUNTS RECEIVABLE:  This Policy covers any shortage in the collection of Accounts Receivable directly resulting from a Covered Cause of Loss to Accounts Receivable Records.

   This extension of coverage does not apply to loss due to:

   1. Bookkeeping, accounting or billing errors and omissions; and

   2. Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL:  This Policy covers the necessary and reasonable expense of removal from the insured **Locations** of debris of Covered Property or property of others remaining as a result of direct physical loss or damage insured against under this Policy that occurs during the policy period when the Insured gives written notice of such direct physical loss or damage to the Companies, but no later than 180 days after the loss.  There is no liability for the expense of removing contaminated or polluted uninsured property, nor the **Pollutants or Contaminants** therein or thereon, whether or not the contamination results from an insured event.

C. ELECTRONIC DATA AND MEDIA:  This Policy is extended to cover direct physical loss or damage to **Electronic Data and Media.**

D. ERRORS OR OMISSIONS:  This Policy is extended to cover direct physical loss or damage at **Locations** within the Coverage Territory that are owned, leased or operated by the Insured or any property at an insured **Location**, if such loss or damage is not payable under this Policy solely due to:

   1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

   2. Failure through any error or unintentional omission to:

      a. Include any **Location** of the Insured or any property at an insured **Location**, at the inception of the Policy; or

      b. Report any newly acquired location or property before the period of automatic coverage provided under  this Policy for Newly Acquired Location(s) expires.

   With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values.

   This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

   It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Companies when discovered and an additional premium be paid, as determined by the Companies.

   There is no coverage under this Paragraph for loss or damage which is covered under Newly Acquired Property or **Miscellaneous Unnamed Locations** provisions of this Policy.

E.   FINE ARTS:  This Policy is extended to cover direct physical loss or damage to fine arts.  However, no coverage is provided for:

   1.   Breakage, marring, scratching, chipping or denting of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture, antique jewelry or similar fragile articles, unless such breakage, marring, scratching, chipping or denting  is caused by a **Defined Cause of Loss**; or

   2.   Physical loss or damage as a result of restoring, repairing or retouching processes.

F.   FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES:  This Policy covers the following expenses resulting from a Covered Cause of Loss:

   1.   Fire brigade charges and any extinguishing expenses which the Insured incurs;

   2.   Loss and disposal of fire extinguishing materials expended.

   There is no coverage for any costs incurred as a result of a false alarm.

G.   LEASEHOLD IMPROVEMENTS & BETTERMENTS:  This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an insured **Location**.  No sublimit of liability applies to this additional coverage, but in no event will the Companies be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

H.   LEASEHOLD INTEREST:  If Covered Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Covered Property is located, then this Policy is extended to cover "The Interest of the Insured as Lessee" (as defined below) or "The Interest of the Insured as Lessor" (as defined below), whichever is applicable, but only for the first three months succeeding the date of the loss and the "Net Lease Interest" (as defined below) shall be paid for the remaining months of the unexpired lease.

   Recovery under this additional coverage shall be the pro-rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

   1.   The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

   2.   Improvements and betterments to real property which are not covered under any other section of this Policy; and

   3.   The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

   Definitions:  The following terms, wherever used in this Paragraph H. shall mean:

   1.   The Interest of the Insured as Lessee is defined as:

      a.   the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

      b.   the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2.  The Interest of the Insured as Lessor is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3.  Net Lease Interest is defined as that sum, which placed at 6% interest compounded annually will be equivalent to The Interest of the Insured as Lessee or Lessor.

The Companies shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease.   Furthermore, the Named Insured shall use due diligence, including all things reasonably practicable, to diminish loss under this additional coverage.

I.   LIMITED POLLUTION COVERAGE:  This Policy is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of **Pollutants or Contaminants** from **Land** or water at an insured **Location** when such **Land** or water is contaminated or polluted due to a Covered Cause of Loss that occurs during the policy period.  There will be no coverage unless such expenses are reported to the Companies within 180 days of the date of direct physical loss or damage.

J.   LOCK REPLACEMENT:  This policy covers the necessary expense to repair or replace the exterior or interior door locks of a covered **Building:**

1.  If the door keys are stolen in a covered theft loss; or

2.  When the covered property is damaged and the door keys are stolen by burglars.

K.   NEWLY ACQUIRED PROPERTY:  This Policy covers real or personal property of the type insured under this Policy for the perils insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy.  Coverage under this additional coverage ceases at the earlier of the following dates:

1.  See number of Days stated elsewhere from the date of acquisition or lease of such property; or

2.  When the newly acquired location is bound by the Companies; or

3.  AmRisc notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or **Miscellaneous Unnamed Locations** provisions of this Policy.

L.   ORDINANCE OR LAW:  In the event of direct physical loss or damage under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Companies shall pay:

1.  Coverage A:  For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

2.  Coverage B:  For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

3. Coverage C:  For the increased cost of repair or replacement of the damaged and undamaged Building on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  However, these Companies shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced.

4. Coverage D:  For the additional loss in Time Element (if covered), that the Insured sustains during the increased period of suspension of operations caused by or resulting from a consequence of enforcement of an ordinance or law.

5. Coverage E:  In the event the enforcement of an applicable Ordinance or Law results in the requirement to demolish and not replace the damaged Building(s), the Companies agree to pay the greater of: a) the Actual Cash Value; or b) the outstanding loan balance including accrued fees, if applicable, as determined at the time of loss for the **Building(s)** not permitted to be rebuilt.

In the event the damaged **Building(s)** is permitted to be repaired or rebuilt, but only to a more limited extent as a consequence of the enforcement of any applicable Ordinance or Law, the Companies agree to pay: a) Replacement Cost for the repair of or construction of the permitted structure(s); and b) Actual Cash Value for the incremental portion of the original building that is not permitted to be repaired or replaced.

Coverage under this clause does not increase the applicable scheduled Limit of Insurance for the damaged **Building(s).**

The Companies shall not be liable for any cost of demolition or increased cost of reconstruction, repair, debris removal or loss of use (including Time Element) necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

M. PAIRS OR SETS:  If two or more components or parts are necessary for a whole or complete product, then this Policy covers the reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

N. PROFESSIONAL FEES:  This Policy is extended to cover reasonable and necessary "Claim Preparation Costs" (as defined below) incurred by the Insured at the request of the Companies for the purpose of determining the extent or amount of insured loss or damage as a result of a Covered Cause of Loss under this Policy, provided that, the Insured obtains the prior written approval of the Companies for the vendor to be engaged by the Insured.

Claim Preparation Costs means:

1. The cost of taking inventory and the cost of gathering and preparing other data to substantiate the extent or amount of loss or damage; and

2. The cost of services provided by accountants, contractors and engineers solely for the purpose of determining the extent or amount of loss.

Claim Preparation Costs does not mean and does not include:

1. Legal fees, charges and expenses;

2. Fees and costs of a public claims adjuster, claim consultant, insurance broker or agent (except forensic accounting services), or any person acting for or on behalf of a public claims adjuster, claim consultant, or insurance broker or agent;

3. Costs associated with negotiation or presentation of any claim or part of a claim that the Companies have advised the Insured is disputed or denied;

CERTIFIED

4.  Costs associated with establishing that any claim or part of a claim is covered by the Policy; or

5.  Costs which represent overhead or operating expense of any Insured, including salaries of such Insured's employees.

O.  PROPERTY REMOVED FROM INSURED LOCATIONS:  This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any **Location** within the Coverage Territory when such personal property is removed from the insured **Locations** for the purpose of being repaired or serviced, excluding:

1.  Personal property insured under another policy or floater;

2.  Personal property excluded under this Policy; or

3.  Personal property removed from the insured **Locations** for normal storage or processing or preparation for sale or delivery.

P.  REWARD REIMBURSEMENT:  This Policy covers monetary rewards for information that leads to a criminal conviction in connection with loss or damage to covered property by a Covered Cause of Loss.

Q.  SERVICE INTERRUPTION:  This Policy is extended to cover the loss or damage to Covered Property and Time Element (provided Time Element values are reported) resulting from direct physical loss or damage from a Covered Cause of Loss to: (1) incoming electrical, gas, water and telecommunication equipment and outgoing sewer; or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines; all situated outside the insured **Locations.**

However, this extension of coverage DOES NOT apply to any loss caused by damage to any utility service listed in (1) or (2) above, if located more than five (5) statute miles from the Insured's covered **Location.**

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown elsewhere.  In such case, the loss shall be measured from date and time of the loss. With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, is restored.

The Sublimit shown elsewhere applies to all loss or damage to Covered Property and/or Time Element Coverage, combined arising out of one Service Interruption.  None of the additional Time Element Coverages set forth in Section V.C. apply to the Time Element Coverage provided herein, except Rental Value.

R.  SPOILAGE:  This policy is extended to cover spoilage as a direct result of a Covered Cause of Loss and subject to the additional exclusions listed below.  The Companies shall be liable for direct physical loss or damage to:

1.  Perishable goods due to spoilage;

2.  Perishable goods due to contamination from the release of refrigerant, including but not limited to ammonia;

3.  Perishable goods due to spoilage caused by a Covered Cause of Loss to equipment that is owned by a utility, landlord, or other supplier of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

If the Insured is unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have been incurred. Otherwise, payment will be determined in accordance with the Valuation provision of this Policy.

Perishable Goods means personal property:

1.   maintained under controlled conditions for its preservation, and

2.   susceptible to loss or damage if the controlled conditions change.

Additional Exclusions:  The Companies shall not be liable for loss or damage caused by or resulting from:

1.   The disconnection of any refrigerating, cooling or humidity control system from the source of power.

2.   The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

S.   TRANSIT:  This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1.   Personal property shipped to customers on F.O.B., C& F, or similar terms.   The Insured's contingent interest in such shipments is admitted.

2.   The interest of the Insured in, and legal liability for, personal property of others in the actual or constructive custody of the Insured.

3.   Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage:

1.   Property insured under import or export ocean cargo policies.

2.   Waterborne shipments to and from the Policy's Coverage Territory.

3.   Shipments made by air, unless via regularly scheduled airlines.

4.   Property shipped by mail.

5.   Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

6.   Any transporting vehicle or conveyance.

7.   Waterborne shipments via the Panama Canal, or waterborne to and from the United States territories or possessions, Alaska, Puerto Rico, and Hawaii.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Policy's Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft.  Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts.  The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

T.  VALUABLE PAPERS AND RECORDS:  This Policy is extended to cover **Valuable Papers and Records.**

# SECTION VII - CONDITIONS

A.  ABANDONMENT:  There can be no abandonment to the Companies of any property.

B.  ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE:  Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any Certificates of Insurance on file with AmRisc which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all  other Insureds with respect to their rights, obligations and duties under this Policy.  Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Companies' obligations with respect to all Insureds.

C.  ARBITRATION CLAUSE:   All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent.  Within thirty days of receiving such notice, the  Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to and by whom and in what manner they shall be paid.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply  the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same.  If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

D.  ASSIGNMENT:  The Insured may not assign this Policy without the Companies' prior written consent.

E.  BRANDS AND LABELS:  If branded or labeled merchandise covered by this Policy is physically damaged and the Companies elect to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

F.  CANCELLATION AND ADDITIONS OR DELETIONS:

1.  This Policy can be canceled by the First Named Insured by providing the Companies with:

   a.  An advanced written request for cancellation stating when the cancellation shall be effective, and

   b.  The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2.  This Policy may be canceled by the Companies by giving to the Insured at least ninety (90) days written notice of cancellation or in the case of non-payment of premium or material mis-statement, at least ten (10) days written notice of cancellation.

3.  The cancellation will be effective even if the Companies have not made or offered a refund.   If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  If this Policy is canceled, the Companies will send the First Named Insured any premium refund due.

5.  Earned Premium:

   a.  For **Locations** NOT "Exposed to Hurricanes", if the Insured cancels this Policy or removes a **Location**, the short rate return premium is 90% of applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the Policy.

b. For **Locations** "Exposed to Hurricanes", if the Insured cancels this Policy, removes a **Location** or reduces the amount of insurance on a **Location** and coverage existed any time during the period of June 1st to November 1st, the amount of premium the Companies will return will be the Unearned Premium for the **Location**. The Unearned Premium is the **Location** premium times the Unearned Factor noted below:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1-180 | 20.0% |
| 181-210 | 15.0% |
| 211-240 | 10.0% |
| 241-270 | 7.5% |
| 271-300 | 5.0% |
| 301-330 | 2.5% |
| 331 or more | 0% |

c. However, subject to receipt of closing documents within 30 days of closing, this Policy allows pro-rata return premium for locations sold (but not for loss of management contract), subject to a maximum of 25% of scheduled values at time of the policy's inception. This pro-rata clause shall not apply if the policy is cancelled in its entirety due to the sale of all the covered location(s).

d. For **Locations** "Exposed to Hurricanes", if added (or coverage increased at an existing **location** which is "Exposed to Hurricanes") during the term of the Policy and coverage exists at any time during the period of June 1st to November 1st, the premium will be calculated at 100% of the annual rate, less the Unearned Factor noted in b. above. Otherwise, it shall be pro-rata.

However, subject to receipt of closing documents, this Policy allows pro-rata additional premium for **Locations** purchased during the policy term.

e. **Locations** of like kind and quality shall be added at the account rate, subject to the Unearned Factor noted in b. above. **Locations** of differing kind or quality or locations in Dade, Broward or Palm Beach counties of Florida must be approved by AmRisc prior to attachment.

f. If a **Location** is "Exposed to Hurricanes", the provisions of this clause replace any short rate provisions stipulated in this Policy, all subject to the Minimum Earned Premium provisions.

g. "Exposed to Hurricanes" is defined to include any **Location** within 100 miles of the closest salt water of the Atlantic Ocean or the Gulf of Mexico.

h. Coverage cannot be increased nor additional **Locations** added if they are "Exposed to Hurricanes" and a **Named Storm** is in existence, unless with the express written consent of AmRisc.

i. Nothing herein will act to provide coverage outside the automatic acquisition clause elsewhere in the Policy.

j. Non-payment of premium, material misstatement or non-compliance with underwriting requirements shall be considered a request by the Insured to cancel the Policy.

k. Proof of mailing will be sufficient proof of notice of cancellation.

G.  CLAIMS REPORTING AND ADJUSTMENT:
    All Claims shall be reported to:  AmRisc Claims Department
                                      E-Mail: claims@amrisc.com
                                      Ph: 252-247-8796
                                      Fax: 252-726-2855

    All Claims shall be adjusted by:  CJW and Associates
                                      1420 Edgewater Drive, Suite 101, Orlando, FL 32804

and/or its assigned adjusters and the costs of such adjustments shall be borne by each Company in proportion to its pro-rata participation in this policy.

In the event the Company(s) elects to use its own adjusters or independent adjusters or consultants other than as listed above, expenses so incurred shall be borne solely by the Company.

It is further understood and agreed that, notwithstanding any provision contained elsewhere in this policy to the contrary, the Insured will be deemed to be in full compliance with any claim notice requirements, if notice of an occurrence is made to the Company[s] as soon as practicable after knowledge by the Insured or their representatives, that such occurrence will, or is likely to result in a claim under the policy. Any unintentional failure to report any occurrence or claim shall not invalidate coverage with respect to any such occurrence or claim.

H.  CONTROL OF DAMAGED MERCHANDISE:  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption.  No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Companies any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I.  CURRENCY:  Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the United States of America.

J.  DIVISIBLE CONTRACT:  Subject to Condition N. below, if the **Locations** described in this Policy include two or more **buildings** or the contents of two or more **buildings**, the breach of any condition of this Policy in respect to any one or more of the **buildings** insured or containing the Covered Property,  shall not prejudice the right to recover for physical loss or damage occurring in any **building** insured or containing the Covered Property where, at the time of such loss or damage, a breach of condition does not exist.

K.  INSPECTION AND AUDIT:  The Companies, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy.  Neither  the Companies' right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Companies, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Companies may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L.  JOINT LOSS AGREEMENT:  In the event the insurance company, if any, providing Equipment Breakdown insurance ('EBD insurer') disputes any portion of the claim made against that EBD insurer, but these Companies believe the EBD insurer should have paid that portion of the claim, then these Companies shall, upon written request of the Insured, pay to the Insured one-half of the

amount of the loss which is in disagreement, but in no event more than these Companies would have paid if there had been no Equipment Breakdown policy in effect, subject to the following conditions:

1. The amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and all of the insurers, is limited to the minimum amount remaining payable under the Equipment Breakdown policy;

2. The EBD insurer shall simultaneously pay to the Insured one-half of said amount which is in disagreement;

3. The payments by all of the insurers hereunder and acceptance of the same by the Insured signify the agreement of all the insurers to submit to and proceed with arbitration within 90 days of such payments; the arbitrators shall be three in number, one of whom shall be appointed by the Property insurance Companies and one of whom shall be appointed by the EBD insurer and the third shall be appointed with the consent of the Property insurance Companies and the EBD insurer, and the decision by the arbitrators shall be binding upon all the insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

4. The Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

5. The provisions of this clause shall not apply unless such other policy issued by the EBD insurer is similarly endorsed;

6. Acceptance by the Insured of sums paid pursuant to the provisions of this clause, including an arbitration award, shall not operate to alter, waive, surrender, or in any way affect the rights of the Insured against any of the insurers.

M.  LOSS PAYEES, LENDER'S LOSS PAYEES, AND MORTGAGEES (OR TRUSTEES):

1. Loss, or damage, if any, under this Policy shall be payable to:

   a.  any Loss Payee or Lender's Loss Payee as its interest may appear; and

   b.  any Mortgagee (or Trustee) as its interest may appear under all present or future mortgages upon the insured property in which the aforesaid may have an interest as Mortgagee (or Trustee), in order of precedence of said mortgages.

2. As to the interest of the Lender's Loss Payee or Mortgagee (or Trustee) only, this insurance shall not be invalidated by any act or neglect of the Insured nor by any foreclosure or other proceedings or notice of sale relating to said property nor by any change in the title or ownership of said property, nor by the occupation of the insured **Locations** for purposes more hazardous than are permitted by this Policy; provided, that in case the Insured shall neglect to pay any premium due under this Policy, the Lender's Loss Payee or Mortgagee (or Trustee) shall, on demand pay the same.

   The Lender's Loss Payee or Mortgagee (or Trustee) must notify AmRisc of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the Lender's Loss Payee or Mortgagee (or Trustee) and, unless permitted by this Policy it shall be noted hereon and the Lender's Loss Payee or Mortgagee (or Trustee) shall, on demand, pay the premium for such increased hazard; otherwise, this entire Clause 2. shall be null and void.

3. If the Companies cancel this Policy, they will give:

   a. ten (10) days before the effective date, if cancellation is for non-payment of premium or material mis-statement; or

   b. ninety (90) days before the effective date, if cancellation is for any other reason.

4. Nothing herein shall affect the rights of the Companies to suspend insurance [which shall include any insurance applying to the interest of the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee)] on any machine, vessel or part thereof in accordance with the Suspension Clause of Equipment Breakdown (if such coverage is provided by endorsement to this policy). The Companies agree to furnish the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) with a copy of the suspension notice at the Loss Payee's, Lender's Loss Payee's, or Mortgagee's (or Trustee's) address.

5. Whenever the Companies shall pay the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) any sum for loss under this Policy and shall claim that, as to the Insured, no liability therefor existed, the Companies shall, to the extent of such payment, be subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at their option pay to the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of all rights and securities; but no subrogation shall impair the right of the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) to recover the full amount of the Loss Payee's, Lender's Loss Payee's or Mortgagee's (or Trustee's) claim.

N. MISREPRESENTATION AND FRAUD: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

O. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE: In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

   However, in the event the Named Insured is a Condominium Association, the Unit-Owner may have other insurance covering the same property as this insurance. This insurance is intended to be Primary, and not to contribute with other such Unit-Owner insurance.

P. PROTECTION AND PRESERVATION OF PROPERTY: In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Covered Property hereunder shall be added to the total physical loss or damage otherwise recoverable under this Policy and be subject to the applicable deductible, sublimit of liability and the Policy Limit.

Q. REINSTATEMENT OF LIMITS: Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

R. REQUIREMENTS IN CASE OF LOSS: The Insured shall:

   1. Give immediate written notice of any loss or damage to AmRisc Claims Department;

   2. Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;

3. Protect the property from further loss or damage;

4. Separate the damaged and undamaged personal property;

5. Maintain such property in the best possible order;

6. Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;

7. Furnish all other documents or insurance policies that the Companies may reasonably require;

8. Allow the Companies to access and inspect any of the damaged or undamaged property; and

9. Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within ninety (90) days after the loss, unless such time is extended in writing by the Companies, the Insured shall provide the Companies with a Proof of Loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1. The time and origin of the loss;

2. The interest of the Insured and of all others in the property;

3. The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon;

4. All other contracts of insurance, whether collectible or not, covering any of said property; and

5. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

S. REVIEW OF VALUES:  The Insured shall provide AmRisc at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all insured **Locations**.

Such values shall be reported separately for each **Location**, with separate figures shown for each type of coverage at each **Location**.  The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an **Actual Cash Value** basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values.  Time Element values (if covered) shall be provided in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to AmRisc.  Receipt of said Statement of Values by AmRisc shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with AmRisc, or attached to this Policy.

T.  SALVAGE AND RECOVERIES:  All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

U.  SETTLEMENT OF CLAIMS:  The amount of loss for which the Companies may be liable shall be payable within thirty (30) days after Proof of Loss, as herein required, is received and accepted by the Companies and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Companies or an amount is determined by binding Arbitration in accordance with the provisions of this Policy.

The Companies shall have the option to take all, or any part of the property at the agreed or arbitrated value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention to do so within sixty (60) days after receipt of the Proof of Loss herein required.

V.  SEVERAL LIABILITY NOTICE
LMA5096 03/08 (Combined Certificate) - amended

The liability of an insurer under this Policy is several and not joint with other insurers party to this Policy.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly liable for the proportion of liability underwritten by any other insurer.  Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this Policy.
The proportion of liability under this Policy underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this Policy.
In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members.  A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other insurer that may  underwrite this Policy.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA United Kingdom.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.  Although reference is made at various points in this clause to "this Policy" in the singular, where the circumstances so require this should be read as a reference to Policies in the plural.

Wherever the word Insurers is mentioned in this clause, this is deemed to also mean reinsured in respect of reinsurance business.

W.  SUBROGATION:  The Companies may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment has been made by the Companies, but the Companies shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

The Companies do waive rights of recovery against any unit-owner of a Condominium Association.

However, notwithstanding the foregoing, the Companies shall be subrogated to all the Insured's rights of recover against:

1.  any Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and

2.   any manufacturer or supplier of machinery, equipment or other property, whether named as an Insured or not, for the cost of making good any loss or damage which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Companies and, upon the Companies' request and expense will:

1.   Attend hearings and trials; and

2.   Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

X.   SUIT AGAINST COMPANIES:  No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twelve (12) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

Y.   TERRITORIAL LIMITATIONS:  Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Z.   TITLES OF PARAGRAPHS:  The titles of the various paragraphs of this Policy (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

AA. VACANCY:   The Insured has permission to cease business operations or to have any insured **Location** vacant or unoccupied, provided that the existing fire protection, security and alarm services are maintained.  The insured **Location** is considered vacant or unoccupied when it does not contain adequate Covered Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations. The Insured must notify AmRisc no later than 90 days after the cessation of business operations, vacancy or un-occupancy.  If not so notified within 90 days, the Deductible shall be double the applicable peril deductible. This restriction shall not apply to any **Location** in the course of construction or renovation.

## SECTION VIII - POLICY DEFINITIONS

A.   **Actual Cash Value:**  The following is added to any provision which uses the term Actual Cash Value:

Actual Cash Value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.   Actual Cash Value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The Actual Cash Value of the lost or damaged property may be significantly less than its replacement cost.

B. **Aircraft or Vehicle Impact** means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

C. **Average Daily Value (ADV):**  Average Daily Value shall be the total 100% Time Element Value that would have been projected for the Period of Interruption for the **Location(s)** where the physical loss or damage occurs, had no physical loss or damage occurred, divided by the number of working days in such period.  The sum shall include all Time Element values to which the operations of the **Locations(s)** directly or indirectly contribute.

D. **Building:**  Building is defined as a fully enclosed permanent structure with walls and a continuous roof.

E. **Catastrophic Ground Cover Collapse** means direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

   1. The abrupt collapse of the ground cover;

   2. A depression in the ground cover clearly visible to the naked eye;

   3. Structural damage to the building, including the foundation; and

   4. The insured **Building** or structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement exclusion does not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earth Movement (if either or both of these causes of loss are covered), only one Limit of Insurance will apply to such loss or damage.

F. **Collapse** means an abrupt falling down or caving in of a **building** or any part of a **building** with the result that the **building** or part of the **building** cannot be occupied for its current intended purpose. The Collapse must be caused by or resulting from one or more of the following:

   1. Building decay that is hidden from view, unless the presence of such decay is known to the Insured prior to collapse;

   2. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to the Insured prior to collapse;

   3. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of construction, remodeling or renovation.

   4. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      a. A cause of loss listed in F.1. or F.2;

      b. One or more of the **Defined Causes of Loss**;

      c. Breakage of building glass;

      d. Weight of people or personal property; or

      e. Weight of rain or snow or ice that collects on a roof.

   5. **Catastrophic Ground Cover Collapse**.

G. **Companies:** The following words shall be synonymous with each other: "Underwriters", "Insurers" and "Companies".

H. **Contractor's Equipment:** Machinery, accessories, equipment, spare parts or tools of a mobile nature that are used in contracting, installation, erection, repair or moving operations and projects. It includes self-propelled vehicles that transport mounted equipment and any vehicle not registered or licensed and not used on public roads, even though designed for highway use.

I. **Defined Cause of Loss** means Fire, Lightning, **Explosion**, **Windstorm or Hail**, **Smoke**, **Aircraft or Vehicle Impact**, **Riot**, **Strike or Civil Commotion**, **Vandalism and Malicious Mischief**, or **Leakage from Fire Protection Equipment**.

J. **Earth Movement** means any natural or manmade:

   1. Earthquake, including any earth sinking, rising or shifting related to such event;

   2. Landslide, including any earth sinking, rising or shifting related to such event;

   3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   4. Earth sinking, rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface

   5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, **Sinkhole Loss**, subsidence or any other **Earth Movement**.

K. **Earth Movement Counties:** As referenced in this Policy, designated Earthquake Zones shall be defined as all **Locations** situated within the States or Counties as specified below:

   1. **Pacific Northwest States**:

     Oregon and Washington.

   2. **New Madrid Earthquake Zone Counties**:

     <u>Arkansas</u>: Arkansas, Clay, Cleburne, Conway, Craighead, Crittenden, Cross, Desha, Faulkner, Fulton, Independence, Izard, Greene, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Prairie, Poinsett, Pulaski, Randolph, Sharp, St. Francis, Stone, Van Buren, White, and Woodruff.

     <u>Illinois</u>: Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Moultrie, Perry, Pope, Pulaski, Randolph, Richland, Saline, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, and Williamson.

Indiana: Daviess, Dubois, Gibson, Knox, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, and Warrick.

Kentucky: Ballard, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Todd, Trigg, Union, and Webster.

Mississippi: Alcorn, Benton, Bolivar, Coahoma, De Soto, Lafayette, Marshall, Panola, Quitman, Sunflower, Tallahatchie, Tate, Tippah, Tunica, and Union.

Missouri: Bollinger, Butler, Cape Girardeau, Carter, Crawford, Dent, Dunklin, Franklin, Howell, Iron, Jefferson, Lincoln, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis City, St. Louis, Ste. Genevieve, Stoddard, Warren, Washington, and Wayne.

Tennessee: Benton, Carroll, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Madison, McNairy, Montgomery, Obion, Perry, Shelby, Stewart, Tipton, and Weakley.

L.  **Electronic Data and Media** means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

M.  **Equipment Breakdown** means:

1.  Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2.  Artificially generated electrical current, including electric arcing, that disturbs electrical  devices, appliances or wires;

3.  Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

4.  Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5.  Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

N.  **Explosion:**  Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured:

1.  Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

2.  Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

3.  Combustion gas turbines;

4.  Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

Explosion will include loss or damage arising or resulting from:

1.  The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

2.  A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

The following are not explosions within the intent or meaning of this definition:

1.  Electric arcing or any coincident rupture of electrical equipment due to such arcing;

2.  Bursting or rupture caused by freezing;

3.  Sonic shock waves, generally known as Sonic Boom;

4.  Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

O.  **Exterior Insulation and Finish Systems (EIFS):**  means a non-load bearing, exterior wall cladding system that consists of an expanded foam insulation board attached either adhesively or mechanically, or both, to a substrate; an integrally reinforced base coat; and a textured protective finish coat.

P.  **Fine Arts** means:  paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metal, watercraft, aircraft, money and securities.

Q.  **Flood** means, whether natural or manmade: Flood waters, surface water, waves, tide or tidal water, tsunami, overflow or rupture of a dam, levee, dike, floodgates, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not.

Water which backups or discharges from sewers, drains or sumps is not considered Flood, unless such backup or discharge was caused by Flood as defined above.

R.  **Fungus, Mold(s), Mildew, Spores Or Yeast:**

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms.

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s).

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms.

S.  **Hurricane:**  A hurricane is a storm system that has been declared to be a Hurricane by the National Hurricane Center of the National Weather Service.

T.  **Land** means land (except land for which values are reported and premiums are charged hereunder), such as dikes, levees, and other surface containment structures.  Surface containment structures are not land to a depth of six inches below such surface containment structures.

U.  **Leakage From Fire Protection Equipment** means direct physical loss or damage from:

1.  Water or other substances discharged from within any part of the **Fire Protection Equipment** for the insured **Location** or for any adjoining **Locations**;

2.  Collapse or fall of tanks forming a part of the **Fire Protection Equipment** or the component parts or supports of such tanks.

The term **Fire Protection Equipment** includes tanks, water mains, hydrants or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include:

1.  Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2.  Any underground water mains or appurtenances located outside of the insured **Location** and forming a part of the public water distribution system;

3.  Any pond or reservoir in which the water is impounded by a dam.

V.  **Location** means the location as specified in the Statement of Values on file with AmRisc, but if not so specified, location means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear Land space or open waterways, each not less than two hundred feet wide.  Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

W.  **Miscellaneous Unnamed Location(s)** means a location that has not been included in the Statement of  Values on file with AmRisc and has not been reported to AmRisc as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

X.  **Named Storm:**  The term "Named Storm" shall include, but not be limited to, storm, cyclone, typhoon, atmospheric disturbance, depression or other weather phenomena designated by the US National Hurricane Center and where a name (and not only a number) has been applied.

Y.  **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses.  The **occurrence** must occur during the policy period.

If more than one event for **Windstorm & Hail, Named Storm, Riot Strike Or Civil Commotion, Vandalism & Malicious Mischief, Earth Movement or Flood** covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single **Occurrence.**  When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Covered Property.

Z.  **Pollutants or Contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smog, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

AA. **Riot, Strike or Civil Commotion** means riot and civil commotion including:

    1. Acts of striking employees while occupying the insured **Location**; and

    2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

BB. **Sinkhole Loss**

    1. As respects locations in all states, EXCEPT Florida:

    Sinkhole Loss means: The sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This does not include:

      a. The cost of filling sinkholes; or

      b. Sinking or collapse of land into man-made underground cavities.

    2. As respects locations in Florida:

      a. **Sinkhole Loss**, means loss or damage to Covered Property when "structural damage" to the covered **Building**, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered **Building**, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

      Coverage for Sinkhole Loss includes stabilization of the **Building** (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to the Insured. The professional engineer must be selected or approved by the Companies. However, until the Insured enters into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from the Companies:

        1) The Companies will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the **Building**; and

        2) The Companies' payment for Sinkhole Loss to Covered Property may be limited to the Actual Cash Value of the loss to such property.

      The Insured must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after the Companies notify the Insured that there is coverage for Sinkhole Loss. After the Insured has entered into such contract, the Companies will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

      However, if the professional engineer determines, prior to the Insured entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, the Companies must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and the Companies have begun making payments for the work performed, the Companies must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most the Companies will pay for the total of all Sinkhole Loss, including **Building** and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected **Building**.

CERTIFIED

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1) There is a mutual agreement between the Insured and the Companies;

2) The claim is involved with the neutral evaluation process;

3) The claim is in litigation; or

4) The claim is under appraisal or mediation.

b. Sinkhole Loss does not include:

1) Sinking or collapse of land into man-made underground cavities; or

2) Earthquake.

c. With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by the Companies of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if the Companies deny the claim, the Companies will notify the Insured of his right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

Either party may file a request with the Department for neutral evaluation; the other party must comply with such request. The Companies will pay reasonable costs associated with the  neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral  evaluator will not be binding on either party.

Participation in the neutral evaluation program does not change the Insured's right to file suit against the Companies, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

d. Coverage for Sinkhole Loss does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

e. The following provision is added to the REQUIREMENTS IN CASE OF LOSS Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to the Companies in accordance with the terms of this policy within two years after the Insured knew or reasonably should have known about the Sinkhole Loss.

The following definitions are added with respect to the coverage provided for Sinkhole loss:

1) "Structural damage" means a covered **Building**, regardless of the date of its construction, has experienced the following:

    **a)** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior **Building** structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

    **b)** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

    **c)** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

    **d)** Damage that results in the building, or any portion of the **Building** containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such **Building** as defined within the Florida Building Code; or

    **e)** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

2) "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3) "Primary structural system" means an assemblage of "primary structural members".

f.  If the Companies deny the claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, the Insured may demand testing by communicating such demand to the Companies in writing within 60 days after the Insured receives the Companies' denial of the claim. The Insured is responsible for 50% of the testing costs, or $2,500, whichever is less. If the Companies' professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, the Companies will reimburse the Insured for the testing costs.

g.  The Insured may not accept a rebate from any person performing repairs for Sinkhole Loss. If the Insured receives a rebate, coverage under this Policy is void and the Insured must refund the amount of the rebate to the Companies.

h.  If the Companies deny the claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627. 7073, that there is no Sinkhole loss or that the cause of the damage was not Sinkhole activity, and if the Sinkhole claim was submitted without good faith grounds for submitting such claim, the Insured shall reimburse the Companies for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. The Insured is not required to pay such reimbursement unless the Insured requested the analysis and services and the Companies, before ordering the analysis, informed the Insured in writing of the potential for reimbursement and gave the Insured the opportunity to withdraw the claim.

i.  As a precondition to accepting payment for Sinkhole loss, the Insured must file with the county clerk of court, a copy of any Sinkhole report regarding the property which was prepared on behalf or at the Insured's  request. The Insured will bear the cost of filing and recording the sinkhole report.

C **C. Smoke** means loss or damage ensuing from a sudden and accidental release of Smoke.  The peril of Smoke does not include loss or damage caused by Smoke from agricultural smudging or industrial operations.

DD. **Special Flood Hazard Areas** means areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA) and shall only include those Flood Zones that are prefixed A or V.

EE. **Tier 1** and **Tier 2**:  Shall be defined as all locations situated within Tier 1 or Tier 2 Counties, Parishes or Independent Cities as specified below:

| State | Tier 1 | Tier 2 |
|---|---|---|
| AL | Baldwin<br>Mobile | Covington<br>Escambia<br>Geneva<br>Houston |
| CT | Fairfield<br>Middlesex<br>New Haven<br>New London | |
| DE | Sussex | Kent |
| FL | All FL counties | Not Applicable |
| GA | Bryan<br>Camden<br>Chatham<br>Glynn<br>Liberty<br>Mcintosh | Brantley<br>Charlton<br>Effingham<br>Long<br>Wayne |
| HI | All HI counties | |
| LA | Cameron<br>Iberia<br>Jefferson<br>Lafourche<br>Orleans<br>Plaquemines<br>St Bernard<br>St Martin (South)<br>St Mary<br>St Tammany<br>Terrebonne<br>Vermilion | Acadia<br>Ascension<br>Assumption<br>Calcasieu<br>Iberville<br>Jefferson Davis<br>Lafayette<br>St Charles<br>St James<br>St John The Baptist<br>St Martin (North)<br>Tangipahoa<br>Washington |

CERTIFIED

---------------------------------------------------------------

| MA | Barnstable | Middlesex |
|----|-----------|-----------|
|    | Bristol   |           |
|    | Dukes     |           |
|    | Essex     |           |
|    | Nantucket |           |
|    | Norfolk   |           |
|    | Plymouth  |           |
|    | Suffolk   |           |

---------------------------------------------------------------

| MD | Worcester | Calvert |
|----|-----------|-----------|
|    |           | Dorchester |
|    |           | St. Mary's |
|    |           | Somerset |
|    |           | Wilcomico |

---------------------------------------------------------------

| ME | Cumberland |
|----|-----------|
|    | Hancock   |
|    | Knox      |
|    | Lincoln   |
|    | Sagadahoc |
|    | Waldo     |
|    | Washington |
|    | York      |

---------------------------------------------------------------

| MS | Hancock  | George |
|----|----------|--------|
|    | Harrison | Pearl River |
|    | Jackson  | Stone |

---------------------------------------------------------------

| NC | Beaufort   | Bladen |
|----|-----------|--------|
|    | Bertie    | Columbus |
|    | Brunswick | Craven |
|    | Camden    | Duplin |
|    | Carteret  | Gates |
|    | Chowan    | Hertford |
|    | Currituck | Jones |
|    | Dare      | Lenoir |
|    | Hyde      | Martin |
|    | New Hanover | Pitt |
|    | Onslow    | Sampson |
|    | Pamlico   |        |
|    | Pasquotank |       |
|    | Pender    |        |
|    | Perquimans |       |
|    | Tyrrell   |        |
|    | Washington |       |

---------------------------------------------------------------

| NH | Rockingham |
|----|-----------|
|    | Strafford |

---------------------------------------------------------------

| NJ | Atlantic | Burlington |
|----|----------|-----------|
|    | Cape May | Cumberland |
|    | Monmouth | Essex |
|    | Ocean    | Hudson |
|    |          | Middlesex |
|    |          | Union |

CERTIFIED

----------------------------------------------------------------

| NY | Kings | Bronx |
|----|-------|-------|
|    | Nassau | New York |
|    | Queens | Westchester |
|    | Richmond | |
|    | Suffolk | |

----------------------------------------------------------------

| RI | Newport | Bristol |
|----|---------|---------|
|    | Washington | Kent |

----------------------------------------------------------------

| SC | Beaufort | Berkeley |
|----|----------|----------|
|    | Charleston | Dillon |
|    | Colleton | Dorchester |
|    | Georgetown | Florence |
|    | Horry | Hampton |
|    | Jasper | Marion |
|    | | Williamsburg |

----------------------------------------------------------------

| TX | Aransas | Bee |
|----|---------|-----|
|    | Brazoria | Brooks |
|    | Calhoun | Fort Bend |
|    | Cameron | Goliad |
|    | Chambers | Hardin |
|    | Galveston | Harris |
|    | Jefferson | Hidalgo |
|    | Kenedy | Jackson |
|    | Kleberg | Jim Wells |
|    | Matagorda | Liberty |
|    | Nueces | Live Oak |
|    | Refugio | Orange |
|    | San Patricio | Victoria |
|    | Willacy | Wharton |

----------------------------------------------------------------

| VA | Accomack |
|----|----------|
|    | Chesapeake |
|    | Gloucester |
|    | Hampton |
|    | Isle of Wight |
|    | James City |
|    | Lancaster |
|    | Mathews |
|    | Middlesex |
|    | Newport News |
|    | Norfolk |
|    | Northampton |
|    | Northumberland |
|    | Poquoson |
|    | Portsmouth |
|    | Suffolk |
|    | Surry |
|    | Virginia Beach City |
|    | Westmoreland |
|    | Williamsburg City |
|    | York |

----------------------------------------------------------------

FF. **Total Insurable Values (TIV):**  The Total Insurable Values shall include all Covered Property (Real & Personal Property) and Time Element values reported on the Statement of Values on file with AmRisc.

GG. **Unit of Insurance:** The following shall be considered a separate "unit" of insurance:

1. Each separate **Building** or Structure;
2. Contents in each Separate **Building** or Structure;
3. Property in the Yard or open at each scheduled **Location**;
4. Business Income/Extra Expense in each Separate **Building** or Structure.

The above definition is to be used in the determination of the DEDUCTIBLE where a percent (%) of TIV of each separate "unit" DEDUCTIBLE applies at the time when such loss occurs.

HH. **Valuable Papers and Records** means documents that are written, printed or otherwise inscribed. These include:

1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

2. Legal and financial agreements, such as deeds and mortgages;

3. Addressograph plates; and

4. Any electrically produced data, such as printouts, punched cards, tapes or discs.

**Valuable Papers and Records** does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

II. **Vandalism and Malicious Mischief** means willful and malicious damage to, or destruction of, Covered Property.  Vandalism and Malicious Mischief does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

JJ. **Warranty:**

1. "Warranty" means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the Companies' liability hereunder, the existence of fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of loss or damage within the coverage of the contract.

2. A breach of warranty shall not void an insurance contract or defeat recovery hereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract.  If the insurance contract specified two or more distinct kinds of loss, damage or injury which are within its coverage, a breach of warranty shall not void such contract or defeat recovery hereunder with respect to any kind of loss, damage or injury other than the kind or kinds to which such warranty relates and the risk of which is materially increased by the breach of such warranty.

KK. **Windstorm or Hail:**  Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under this peril for loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not.

**COMMERCIAL PROPERTY COVERAGE PART**
**EQUIPMENT BREAKDOWN SCHEDULE AND COVERAGE**

Equipment Breakdown is subject to the Limits of Insurance shown in the Declarations except as specifically shown below.

These coverages apply to all locations covered on the policy, unless otherwise specified.

## EQUIPMENT BREAKDOWN COVERAGE SCHEDULE

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $Per Statement of Values on file with AmRisc. However, not to exceed $50,000,000 Per Occurrence |
| Time Element | $Per Statement of Values on file with AmRisc. |
| Extra Expense | $100,000 |
| Data Restoration | $100,000 |
| Expediting Expenses | $100,000 |
| Green Upgrades | $25,000 |
| Hazardous Substances | $100,000 |
| Off Premises Equipment Breakdown | $100,000 |
| Service Interruption | $Included in Time Element and/or Spoilage. |
| Spoilage | $100,000              @ NIL% Coinsurance |

### Deductibles

| | |
|---|---|
| Combined, All Coverages | $Per Property Deductibles |
| Direct Coverages | $N/A |
| Indirect Coverages | $N/A<br>or  N/A          hours,<br>or  N/A          times ADV |
| Spoilage | $N/A<br>or   $N/A      of loss,  $N/A          minimum |

### Other Conditions

N/A

AR EB 10 16                                                                                     1

## EQUIPMENT BREAKDOWN COVERAGE
### (Including Electronic Circuitry Impairment)

A.    The following is added to **Section VI - ADDITIONAL COVERAGES:**

**Additional Coverage-- Equipment Breakdown**

The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below. Without an **accident** or **electronic circuitry impairment**, there is no Equipment Breakdown Coverage.

1.    The Companies will pay for direct physical damage to Covered Property that is the direct result of an **accident** or **electronic circuitry impairment**. The Companies will consider **electronic circuitry impairment** to be physical damage to **covered equipment**.

2.    Unless otherwise shown in a **schedule**, the following coverages also apply to the direct result of an **accident** or **electronic circuitry impairment**. However, with respect to coverage 2.h. Service Interruption below and any Contingent Time Element coverage provided by this coverage part, coverage will apply only to the direct result of an accident and will not apply to the direct result of an **electronic circuitry impairment**. These coverages do not provide additional amounts of insurance.

   a.    Time Element Coverage

      (1)    Insurance provided under the coverage part for Time Element Coverage is extended to the coverage provided by this endorsement. However, coverage under this endorsement is not extended to the Additional Time Element Coverages for Soft Costs and Royalties.

      (2)    If a deductible is shown in a **schedule,** then with respect to this endorsement only, the period of interruption will begin immediately after the **accident** or **electronic circuitry impairment**, and the deductible shown in the schedule will apply.

      (3)    The most the Companies will pay for loss or expense under this coverage is the applicable limit for Time Element Coverage provided, unless otherwise show in in a schedule.

   b.    Data Restoration

      (1)    The Companies will pay for the Insured's reasonable and necessary cost to research, replace and restore lost **Electronic Data and Media.**

      (2)    The most the Companies will pay for loss or expense under this coverage, including actual loss of covered Time Element the Insured sustains and necessary covered Extra Expense the Insured incurs, is $100,000 unless otherwise shown in a **schedule.**

   c.    Expediting Expenses

      (1)    With respect to the Insured's damaged Covered Property, the Companies will pay the reasonable extra cost to:

         (a)    Make temporary repairs; and

         (b)    Expedite permanent repairs or permanent replacement.

      (2)    The most the Companies will pay for loss or expense under this coverage is $100,000 unless otherwise shown in a **schedule.**

d. Green Upgrades
 (1) Any insurance provided under the coverage part for Green Upgrades is extended to the coverage provided by this endorsement.
 (2) The most the Companies will pay for loss or expense under this coverage, including actual loss of covered Time Element the Insured sustains and necessary covered Extra Expense the Insured incurs, is $25,000 unless otherwise shown in a **schedule.**

e. Hazardous Substances
 (1) The Companies will pay the Insured's additional cost to repair or replace Covered Property because of contamination by a **hazardous substance**. This includes the additional expenses to clean up or dispose of such property.
 (2) This does not include contamination of **perishable goods** by refrigerant, including but not limited to ammonia, which is addressed in 2.i.(1)(b) below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no **hazardous substance** been involved.
 (3) The most the Companies will pay for loss, damage or expense under this coverage, including actual loss of covered Time Element the Insured sustains and necessary covered Extra Expense the Insured incurs, is $100,000 unless otherwise shown in a **schedule.**

f. Off Premises Equipment Breakdown
 (1) The Companies will pay for physical damage to transportable **covered equipment** that, at the time of the **accident** or **electronic circuitry impairment**, is not at an insured **Location**. As respects this Off Premises Equipment Breakdown coverage only, the **accident** or **electronic circuitry impairment may** occur in any country except one in which the United States has imposed sanctions, embargoes or similar restrictions on the provision of insurance.
 (2) The Companies will also pay for the Insured's reasonable and necessary cost to research, replace and restore lost **Electronic Data and Media** contained within **covered equipment** as described under (1) above. This amount may not exceed the limit applicable to Data Restoration coverage.
 (3) The most the Companies will pay for loss, damage or expense under this coverage, including actual loss of covered Time Element the Insured sustains and necessary covered Extra Expense the Insured incurs, and Data Restoration as described in (2) above is $100,000 unless otherwise shown in a **schedule.**

g. Public Relations
 (1) This coverage only applies if the Insured has sustained an actual loss of Time Element covered under this endorsement.
 (2) The Companies will pay for the Insured's reasonable costs for professional services to create and disseminate communications, when the need for such communications arises directly from the interruption of the Insured's business. This communication must be directed to one or more of the following:
  (a) The media;
  (b) The public; or
  (c) The Insured's customers, clients or members.

(3)    Such costs must be incurred during the period of interruption or up to 30 days after the period of interruption has ended.

(4)    The most the Companies will pay for loss or expense under this coverage is $5,000.

h.    Service Interruption

(1)    Any insurance provided under this endorsement for Time Element, Data Restoration or Spoilage is extended to apply to the Insured's loss, damage or expense caused by a failure or disruption of service. The failure or disruption of service must be caused by an **accident** to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides the Insured with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, Internet access, telecommunications services, **cloud computing services**, wide area networks or data transmission. The equipment must meet the definition of **covered equipment** except that it is not Covered Property.

(2)    **Cloud computing services** must be provided by a professional provider with whom the Insured has a contract.

(3)    With respect to the Data Restoration portion of this Service Interruption coverage, coverage will also apply to **Electronic Data and Media** stored in the equipment of a provider of cloud computing services.

(4)    Unless otherwise shown in a **schedule**, any insurance provided for Time Element or Data Restoration will not apply under this Service Interruption coverage unless the failure or disruption of service exceeds 24 hours immediately following the **accident**. If the interruption exceeds 24 hours, coverage will begin at the time of the disruption, and the applicable deductible will apply.

(5)    The most the Companies will pay in any **one equipment breakdown** for loss, damage or expense under this coverage is the applicable limit for covered Time Element, Data Restoration or Spoilage, except that if a limit is shown in a **schedule** for Service Interruption, that limit will apply to Time Element loss under this coverage.

i.    Spoilage

(1)    The Companies will pay for:

(a)    Physical damage to **perishable goods** due to spoilage;

(b)    Physical damage to **perishable goods** due to contamination from the release of refrigerant, including but not limited to ammonia;

(c)    Any necessary expenses the Insured incurs to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(2)    If the Insured is unable to replace the **perishable goods** before its anticipated sale, the amount of the Companies' payment will be determined on the basis of the sales price of the **perishable goods** at the time of the **accident** or **electronic circuitry impairment**, less discounts and expenses the Insured otherwise would have had. Otherwise the Companies' payment will be determined in accordance with the Valuation provision.

    (3)    The most the Companies will pay for loss, damage or expense under this coverage is $100,000 unless otherwise shown in a **schedule**.

3.    EXCLUSIONS

All exclusions in the Commercial Property Compass Form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

    a.    The following exclusions are modified:

        (1)    As respects this endorsement only, **ACCIDENT** and **ELECTRONIC CIRCUITRY IMPAIRMENT** are included as Listed Perils under **SECTION II – COVERED CAUSES OF LOSS**, Exclusion B.4.b) - Asbestos.

        (2)    **SECTION II –   COVERED CAUSES OF LOSS**, Exclusion B.5.- Pollution/Contamination, does not apply to the Hazardous Substances coverage provided within this endorsement.

        (3)    As respects this endorsement only, **SECTION II – COVERED CAUSES OF LOSS**, Exclusion B.19. is deleted and replaced with the following:

Loss or damage caused by a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

    b.    The following exclusions are added:

        (1)    The Companies will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an **accident** or **electronic circuitry impairment**:

            (a)    Fire, including smoke from a fire;

            (b)    Explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere;

            (c)    Any other explosion, except as specifically covered under this endorsement;

            (d)    Any earth movement, including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action;

            (e)    Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump;

            (f)    Vandalism; or

            (g)    The Insured's failure to use all reasonable means to protect Covered Property from damage following an **accident** or **electronic circuitry impairment**.

        (2)    Coverage under this endorsement does not apply to an **accident** or **electronic circuitry impairment** caused by or resulting from:

            (a)    Lightning;

            (b)    Windstorm or hail. However this exclusion does not apply when:

                i.    **Covered equipment** located within a building or structure suffers an **accident** or **electronic circuitry impairment** that results from windblown rain, snow, sand or dust; and

      ii.    The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

(c) Smoke; aircraft or vehicles; riot or civil commotion; sprinkler leakage; elevator collision;

(d) Breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse or molten material; or

(e) Water or other means used to extinguish a fire.

(3) With respect to Time Element and Service Interruption coverages, the Companies will also not pay for:

(a) Loss caused by the Insured's failure to use due diligence and dispatch and all reasonable means to resume business; or

(b) Any increase in loss resulting from an agreement between the Insured and the Insured's customer or supplier.

(4) The Companies will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an **accident** or **electronic circuitry impairment**: Any **Fungus, Mold(s), Mildew, Spores or Yeast** including any presence, growth, proliferation, spread or any activity of **Fungus, Mold(s), Mildew, Spores or Yeast**. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such **Fungus, Mold(s), Mildew, Spores or Yeast**. However, this exclusion does not apply to spoilage of personal property that is **perishable goods**, to the extent that such spoilage is covered under Spoilage coverage.

(5) The Companies will not pay for any loss or damage to animals.

c. Exclusions b.(2)(a), b.(2)(b), b.(2)(c) and b.(2)(d) above shall not apply if:

(1) The excluded cause of loss occurs away from any covered **Location** and causes an electrical surge or other electrical disturbance;

(2) Such surge or disturbance is transmitted through utility service transmission lines to the covered **Location** and results in an **accident** or **electronic circuitry impairment**; and

(3) The loss, damage or expense caused by such surge or disturbance is not covered elsewhere under the policy.

d. Any cause of loss set forth in exclusion b.(2)(d) above that is not a Covered Cause of Loss in this coverage part shall be excluded only as respects Service Interruption coverage.

4. DEFINITIONS

The following definitions are added with respect to this endorsement only:

a. **Accident**

(1) **Accident** means a fortuitous event that causes direct physical damage to **covered equipment**. The event must be one of the following:

(a) Mechanical breakdown, including rupture or bursting caused by centrifugal force;

(b) Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

       (c)      Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the Insured's control;

       (d)      Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

       (e)      Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

(2)      None of the following is an **accident**:

       (a)      Defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving **Electronic Data and Media** of any kind; or

       (b)      Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

       However, if an accident results, the Companies will pay for the resulting loss, damage or expense caused by that **accident**.

b.    **Boilers and vessels** means:

(1)      Any boiler, including attached steam, condensate and feedwater piping; and

(2)      Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement, but may appear in a **schedule.**

c.    **Cloud computing services** means professional, on-demand, self-service data storage or data processing services provided through the Internet or over telecommunications lines. This includes services known as IaaS (infrastructure as a service), PaaS (platform as a service), SaaS (software as a service) and NaaS (network as a service).  This includes business models known as public clouds, community clouds and hybrid clouds.  Cloud computing services include private clouds if such services are owned and operated by a third party.

d.    **Covered equipment**

(1)      **Covered equipment** means, unless otherwise specified in a **schedule**, Covered Property:

       (a)      That generates, transmits or utilizes energy; or

       (b)      Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

       **Covered equipment** may utilize conventional design and technology or new or newly commercialized design and technology.

(2)      None of the following is **covered equipment**:

       (a)      Structure, foundation, cabinet or compartment;

       (b)      Insulating or refractory material;

       (c)      Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

       (d)      Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

CERTIFIED

   (e) **Vehicle** or any equipment mounted on a **vehicle**;

   (f) Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

   (g) Dragline, excavation or construction equipment; or

   (h) Equipment manufactured by the Insured for sale.

e. **Electronic circuitry** means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

f. **Electronic circuitry impairment**

  (1) **Electronic circuitry impairment** means a fortuitous event involving **electronic circuitry** within **covered equipment** that causes the **covered equipment** to suddenly lose its ability to function as it had been functioning immediately before such event. This definition is subject to the conditions specified in (2), (3) and (4) below.

  (2) The Companies shall determine that the reasonable and appropriate remedy to restore such **covered equipment's** ability to function is the replacement of one or more **electronic circuitry** components of the **covered equipment.**

  (3) The **covered equipment** must be owned or leased by the Insured, or operated under the Insured's control.

  (4) None of the following is an **electronic circuitry impairment:**

   (a) Any condition that can be reasonably remedied by:

    i. Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

    ii. Rebooting, reloading or updating software or firmware; or

    iii. Providing necessary power or supply.

   (b) Any condition caused by or related to:

    i. Incompatibility of the **covered equipment** with any software or equipment installed, introduced or networked within the prior 30 days; or

    ii. Insufficient size, capability or capacity of the **covered equipment.**

   (c) Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

g. **Hazardous substance** means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

h. **One equipment breakdown** means: If an initial **accident** or **electronic circuitry impairment** causes other **accidents** or **electronic circuitry impairments**, all will be considered **one equipment breakdown**. All **accidents** or **electronic circuitry impairments** that are the result of the same **accident or electronic circuitry impairment**  will be considered **one equipment breakdown.**

i. **Perishable goods** means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

CERTIFIED

j.  **Production machinery** means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus. However, **production machinery** does not mean any boiler, or fired or unfired pressure vessel.  This term does not appear elsewhere in this endorsement, but may appear in a **schedule**.

k.  **Schedule** means the Equipment Breakdown Coverage Schedule.

l.  **Vehicle** means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power.  **Vehicle** includes, but is not limited to: car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a **vehicle**.

B.  The Commercial Property Compass Form is modified as follows.

The definitions stated above also apply to section B. of this endorsement.

1.  DEDUCTIBLE

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a **schedule**. If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, **SECTION I – COVERAGES AND LIMITS OF LIABILITY**, paragraph G. is deleted and replaced with the following:

a.  Deductibles for Each Coverage

(1)  Unless the **schedule** indicates that the Insured's deductible is combined for all coverages, multiple deductibles may apply to any **one equipment breakdown.**

(2)  The Companies will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the **schedule**. The Companies will then pay the amount of  loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

(3)  If deductibles vary by type of **covered equipment** and more than one type of **covered equipment** is involved in any one **equipment breakdown**, only the highest deductible for  each coverage will apply.

b.  Direct and Indirect Coverages

(1)  Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the **schedule**.

(2)  Unless more specifically indicated in the **schedule**:

(a)  Indirect Coverages Deductibles apply to Time Element loss and expense; and

(b)  Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

c.  Application of Deductibles

(1)  Dollar Deductibles

The Companies will not pay for loss, damage or expense resulting from any **one equipment breakdown** until the amount of loss, damage or expense exceeds the applicable deductible shown in the **schedule**. The Companies will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, up to the applicable Limit of Insurance.

       (2)      Time Deductible

If a time deductible is shown in the **schedule**, the Companies will not be liable for any loss occurring during the specified number of hours or days immediately following the **accident** or **electronic circuitry impairment**. If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

       (3)      Multiple of Average Daily Value (ADV)

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the Time Element (as defined in any Time Element Coverage that is part of this policy) that would have been earned during the period of interruption of business had no **accident** or **electronic circuitry impairment** occurred, divided by the number of working days in that period. No reduction shall be made for the Time Element not being earned, or in the number of working days, because of the **accident** or **electronic circuitry impairment** or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Time Element value of the entire **Location**, whether or not the loss affects the entire **Location**. If more than one **Location** is included in the valuation of the loss, the ADV will be the combined value of all affected **Locations**. The number indicated in the **schedule** will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

       (4)      Percentage of Loss Deductibles

If a deductible is expressed as a percentage of loss, the Companies will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

2.      CONDITIONS

The following conditions are in addition to those in **SECTION VII – CONDITIONS**:

  a.      Suspension

Whenever **covered equipment** is found to be in, or exposed to, a dangerous condition, any of the Companies' representatives may immediately suspend the insurance against loss from an **accident** or **electronic circuitry impairment** to that **covered equipment**. This can be done by mailing or delivering a written notice of suspension to:

       (1)      The Insured's last known address; or

       (2)      The address where the **covered equipment** is located.

Once suspended in this way, the Insured's coverage can be reinstated only by an endorsement for that **covered equipment**. If the Companies suspend the Insured's coverage, the Insured will get a pro rata refund of premium for that **covered equipment** for the period of suspension. But the suspension will be effective even if the Companies have not yet made or offered a refund.

b.    Jurisdictional Inspections

If any property that is **covered equipment** under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, the Companies agree to perform such inspection on the Insured's behalf. The Companies do not warrant that conditions are safe or healthful.

c.    Coinsurance

If a coinsurance percentage is shown in a **schedule** for specified coverages, the following condition applies.

The Companies will not pay for the full amount of the Insured's loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, the Companies will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. The Companies will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most the Companies will pay. The Companies will not pay for the remainder of the loss. Coinsurance applies separately to each insured **Location.**

3.    VALUATION

As respects this endorsement only, **SECTION IV - VALUATION** in the Commercial Property Compass Form is deleted and replaced with the following:

The Companies will determine the value of Covered Property as follows:

a.    Except as specified otherwise, the Companies' payment for damaged Covered Property will be the smallest of:

(1)    The cost to repair the damaged property;

(2)    The cost to replace the damaged property on the same site; or

(3)    The amount the Insured actually spends that is necessary to repair or replace the damaged property.

b.    The amount of the Companies' payment will be based on the most cost effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

c.    Except as described in d. below, the Insured must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

d.    Environmental, Safety and Efficiency Improvements

If **covered equipment** requires replacement due to an **accident** or **electronic circuitry impairment**, the Companies will pay the Insured's additional cost to replace with equipment that is better for the environment, safer for people or more energy or water efficient than the equipment being replaced. However, the Companies will not pay to increase the size or capacity of the equipment and the Companies will not pay more than 150% of what the cost would have been to replace with like kind and quality. This provision does not apply to the replacement of component parts or to any property to which Actual Cash Value applies and does not increase any of the applicable limits.

e.    The following property will be valued on an Actual Cash Value basis:

(1)    Any property that does not currently serve a useful or necessary function for the Insured;

(2)    Any Covered Property that the Insured does not repair or replace within 24 months after the date of the **accident** or **electronic circuitry impairment**; and

(3)    Any Covered Property for which Actual Cash Value coverage is specified in a **schedule,**
Actual Cash Value includes deductions for depreciation.

f.    If any one of the following conditions is met, property held for sale by the Insured will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

(1)    The property was manufactured by the Insured;

(2)    The sales price of the property is less than the replacement cost of the property; or

(3)    The Insured is unable to replace the property before its anticipated sale.

g.    Except as specifically provided for under Data Restoration coverage, **Electronic Data and Media** will be valued on the following basis:

(1)    For mass-produced and commercially available software, at the replacement cost.

(2)    For all other **Electronic Data and Media**, at the cost of blank media for reproducing the records. The Companies will not pay for data representing financial records based on the face value of such records.

The most the Companies will pay for loss, damage or expense under this endorsement arising from any **one equipment breakdown** is the applicable limit of liability shown in **SECTION I – COVERAGES AND LIMITS OF LIABILITY**, unless otherwise shown in a **schedule**. Coverage provided under this endorsement does not provide an additional amount of insurance.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LLOYD'S OF LONDON AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**, THE FOLLOWING CLAUSES (SERVICE OF SUIT and APPLICABLE LAW) SHALL APPLY:

## Service of Suit Clause (U.S.A.)
### NMA 1998 4/24/86 (USA date)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon

| | |
|---|---|
| 1. California Insureds: | 2. All other Insureds: |
| Foley & Lardner, LLP | Mendes and Mount |
| 555 California Street, Suite 1700 | 750 Seventh Avenue |
| San Francisco, CA 94104-1520 | New York, NY 10019-6829; |
| USA | USA |

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to have a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named person to whom the said officer is authorized to mail such process or a true copy thereof.

## APPLICABLE LAW (U.S.A.)
### LMA5021 9/14/2005 (USA date)

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (USA).

LLOYDS - SOS 03 17

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIAN HARBOR INSURANCE COMPANY AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY **INDIAN HARBOR INSURANCE COMPANY**, THE FOLLOWING CLAUSES SHALL APPLY:

## Service of Process Clause

1. **The following Service of Process Clause applies to all policies written in Alabama, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Indiana, Iowa, Kansas, Maryland, Massachusetts, Mississippi, Montana, Nevada, New Hampshire, New Jersey, North Carolina, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Washington and Wyoming:**

### Service of Process

The Commissioner of Insurance of the above applicable state is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in the above applicable state to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

2. **The following Service of Process Clause applies to all policies written in Alaska, Arizona, Idaho, Illinois, Nebraska, South Carolina and South Dakota:**

### Service of Process

The Director of Insurance of the above applicable state is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in the above applicable state to whom such process shall be forwarded by the Director of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

XL SOP 11 12

3. **The following Service of Process Clause applies to all policies written in Kentucky, Louisiana and West Virginia:**

## Service of Process

The Secretary of State of the above applicable state is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in the above applicable state to whom such process shall be forwarded by the Secretary of State.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

4. **The following Service of Process Clause applies to all policies written in New Mexico, New York and Ohio:**

## Service of Process

The Superintendent of Insurance of the above applicable state is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in the above applicable state to whom such process shall be forwarded by the Superintendent of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

5. **The following Service of Process Clause applies to all policies written in California:**

## Service of Process

The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> John Oster
> 1990 North California Boulevard
> Suite 740
> Walnut Creek, CA 94596

CERTIFIED

XL SOP 11 12

as its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

6. **The following Service of Process Clause applies to all policies written in Maine:**

## Service of Process

The Acting Superintendent of Insurance of the State of Maine is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> CT Corporation System
> One Portland Square
> Portland, ME 04101

as its agent in Maine to whom such process shall be forwarded by the Acting Superintendent of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

7. **The following Service of Process Clause applies to all policies written in Michigan:**

## Service of Process

The Commissioner of Insurance of the State of Michigan is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> The Corporation Company
> 30600 Telegraph Road
> Bingham Farms, MI 48025

as its agent in Michigan to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

8. **The following Service of Process Clause applies to all policies written in Minnesota:**

## Service of Process

The Commissioner of Commerce of the State of Minnesota is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

XL SOP 11 12

Sarah Mims
Assistant Secretary
505 Eagleview Boulevard, Suite 100
Exton, Pennsylvania 19341-0636

as its agent in Minnesota to whom such process shall be forwarded by the Commissioner of Commerce.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

9. **The following Service of Process Clause applies to all policies written in Missouri:**

## Service of Process

The Director of the Department of Insurance of the State of Missouri is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

Sarah Mims
Assistant Secretary
505 Eagleview Boulevard, Suite 100
Exton, Pennsylvania 19341-0636

as its agent in Missouri to whom such process shall be forwarded by the Director of the Department of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

10. **The following Service of Process Clause applies to all policies written in Rhode Island:**

## Service of Process

The Commissioner of Insurance of the State of Rhode Island is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

Ms. Sherry A. Goldin
CT Corporation System
10 Weybosset Street
Providence, RI 02903

as its agent in Rhode Island to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

XL SOP 11 12

**11.  The following Service of Process Clause applies to all policies written in Utah:**

## Service of Process

The Commissioner of Insurance and Lieutenant Governor of the State of Utah is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in Utah to whom such process shall be forwarded by the Commissioner of Insurance or Lieutenant Governor.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

**12.  The following Service of Process Clause applies to all policies written in Virginia:**

## Service of Process

The Clerk of the Commissioner of Insurance of the State of Virginia is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in Virginia to whom such process shall be forwarded by the Clerk of the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

**13.  The following Service of Process Clause applies to all policies written in Wisconsin:**

## Service of Process

The Commissioner of Insurance and the Department of Financial Institutions of the State of Wisconsin is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

CERTIFIED

XL SOP 11 12

as its agent in Wisconsin to whom such process shall be forwarded by the Commissioner of Insurance or the Department of Financial Institutions.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.



XL SOP 11 12

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

## NOTICE TO POLICYHOLDERS

| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
|---|---|
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING**:  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| Puerto Rico | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

CERTIFIED

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# QBE INSURANCE COMPANY
# SERVICE OF PROCESS ENDORSEMENT

When a cause of action arises in any of the states listed below, service of process applies as shown below for that state. As used in this endorsement, "the Company" shall mean QBE Specialty Insurance Company.

### ALABAMA Service of Process Clause

The Company hereby designates the Commissioner of the State of Alabama as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL  36104 as the person to whom the Commissioner shall mail process.

### ALASKA Service of Process Clause

Upon any cause of action arising in Alaska under this contract, the Company may be sued. The Company appoints the Director of Insurance for the State of Alaska as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Director, or their successors in office, shall be lawful service upon the Company. The Company further designates CT Corporation System, 9360 Glacier Highway, Suite 202, Juneau, AK 99801 as the person to whom the Director is authorized to mail such process or a true copy thereof.

### ARIZONA Service of Process Clause

Upon any cause of action arising in Arizona under this contract, QBE Specialty Insurance Company (hereafter referred to as "the Company") may be sued in the circuit court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Arizona by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 2390 East Camelback Road, Phoenix, AZ 85016 as the person to whom the Director shall mail process.

### ARKANSAS Service of Process Clause

Upon any cause of action arising in Arkansas under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Arkansas and his successors in office by the clerk of the court in which the action is brought.  The Company further designates The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201 as the person to whom the Commissioner shall mail process.

### CALIFORNIA Service of Suit Clause

We hereby appoint Nancy Flores, c/o C.T. Corporation System, 818 West 7th Street, 2nd Floor,Los Angeles, California, 90017, as our true and lawful attorney in and for the State of California, upon whom all lawful process may be served in any action, "suit" or proceeding instituted in California by or on behalf of any insured or beneficiary against us arising out of this insurance policy, provided a copy of any process, "suit", complaint or summons is sent by certified or registered mail to: 88 Pine Street – 16th Floor, New York, NY 10005.

### COLORADO Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance for the State of Colorado as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates The Corporation Company, 1675 Broadway, Suite 1200, Denver, CO 80202 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### CONNECTICUT Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance for the State of Connecticut as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates CT Corporation System, One Corporate Center, Floor 11, Hartford, CT 06103 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### DELAWARE Service of Process Clause

The Company hereby designates the Commissioner of the State of Delaware, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.  The Company further designates The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as the person to whom the Commissioner shall mail process.

### FLORIDA Service of Process Clause

The Company hereby designates the Chief Financial Officer of the Office of Insurance Regulation, as its agent upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324 as the person to whom the Chief Financial Officer shall mail process.

### GEORGIA Service of Process

Upon any cause of action under this policy, the Company may be sued in the superior court of the county in which the cause of action arose.  The Company appoints the Georgia Commissioner of Insurance as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### HAWAII Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance for the State of Hawaii as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates The Corporation Company, Inc., 1136 Union Mall, Suite 301, Honolulu, HI 96813 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### IDAHO Service of Process Clause

Upon any cause of action arising in Idaho under this contract, the Company may be sued in the district court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Idaho.  The Company further designates CT Corporation System, 921 S. Orchard Street, Suite G, Boise, ID 83705 as the person to whom the Director shall mail process.

### ILLINOIS Service of Process Clause

The Company hereby designates the Director of the Illinois Department of Insurance and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, IL 60604 as the person to whom the Director shall mail process.

### INDIANA Service of Process Clause

Upon any cause of action arising in Indiana under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Indiana by the clerk of the court in which the action is brought.  The Company further designates C T Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN 46204 as the person to whom the Commissioner shall mail process.

### KANSAS Service of Process Clause

Upon any cause of action arising in Kansas under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon

the Commissioner of Insurance of the State of Kansas and his successor or successors in office. The Company further designates The Corporation Company, Inc., 112 S.W. Seventh Street, Suite 3C, Topeka, KS 66603 as the person to whom the Commissioner shall mail process.

### KENTUCKY Service of Process Clause

Upon any cause of action arising in Kentucky under this contract, the Company may be sued in the circuit court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Secretary of State by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 306 West Main Street, Suite 512, Frankfort, KY 40601 as the person to whom the Secretary of State shall mail process.

### LOUISIANA Service of Process Clause

Upon any cause of action arising in Louisiana under this contract, the Company may be sued in the district court of the parish in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Secretary of State. The Company further designates CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, LA 70808 as the person to whom the Secretary of State shall mail process.

### MAINE Service of Process Clause

Upon any cause of action arising in this State under this policy, the Company may be sued in the Superior Court. Service of legal process against the Company may be made in any such action by service of two copies upon the designated agent. The Company further designates CT Corporation System, 1536 Main Street, Readfield, ME 04355 as the agent.

### MARYLAND Service of Process Clause

Upon any cause of action arising in Maryland under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Insurance Commissioner of the State of Maryland by the clerk of the court in which the action is brought. The Company further designates The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, MD 21201 as the person to whom the Commissioner shall mail process.

### MASSACHUSETTS Service of Process Clause

The Company hereby designates the Commissioner of the State of Massachusetts, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates C T Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110 as the person to whom the Commissioner shall mail process.

### MICHIGAN Service of Process Clause

Upon any cause of action arising in Michigan under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon Director of Insurance, c/o Resident Agent, of the State of Michigan by the clerk of the court in which the action is brought. The Company further designates The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, MI 48025 as the person to whom the Commissioner shall mail process.

### MINNESOTA Service of Process Clause

Upon any cause of action arising in Minnesota under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Commerce of the State of Minnesota by the clerk of the court in which the action is brought. The Company further designates C T Corporation System, Inc., 100 South 5th Street, Suite 1075, Minneapolis, MN 55402 as the person to whom the Commissioner shall mail process.

### MISSISSIPPI Service of Process Clause

The Company hereby designates the Commissioner of the State of Mississippi, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232 as the person to whom the Commissioner shall mail process.

### MISSOURI Service of Process Clause

Upon any cause of action arising in Missouri under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Missouri and his successors in office by the clerk of the court in which

the action is brought.  The Company further designates CT Corporation System, 120 South Central Avenue, Clayton, MO 63105 as the person to whom the Director shall mail process.

### MONTANA Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance of the State of Montana, as its attorney for acceptance of the service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates CT Corporation System, 208 North Broadway, Suite 313, Billings, MT 59101 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### NEBRASKA Service of Process Clause

Upon any cause of action arising in Nebraska under this policy, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Nebraska.  The Company further designates CT Corporation System, 5601 South 59th Street, Lincoln, NE 68516 as the person to whom the Director shall mail process.

### NEVADA Service of Process Clause

Upon any cause of action arising in Nevada under this contract, the Company may be sued in a district court of Nevada.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Nevada or the Commissioner's authorized representative.  The Company further designates The Corporation Trust Company of Nevada, 311 South Division Street, Carson City, NV 89703 as the person to whom the Commissioner shall mail process.

### NEW HAMPSHIRE Service of Process Clause

Upon any cause of action arising in New Hampshire under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of New Hampshire by the clerk of the court in which the action is brought.  The Company further designates C T Corporation System, 9 Capitol Street, Concord, NH 03301 as the person to whom the Commissioner shall mail process.

### NEW MEXICO Service of Process Clause

Upon any cause of action arising in New Mexico under this contract, the Company may be sued in the district court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Superintendent of Insurance of the State of New Mexico by the clerk of the court in which the action is brought.  The Company further designates Registered Agent: C T Corporation System, 123 East Marcy, Santa Fe, NM 87501 as the person to whom the Superintendent shall mail process.

### NEW YORK Service of Process Clause

QBE Specialty Insurance Company  (hereafter referred to as "the Company") pursuant to the provisions of Regulation 41, promulgated by New York (11 NYCRR 27.16) by issuance of this policy hereby constitutes and appoints the Superintendent of Insurance of the State of New York as its true and lawful attorney upon whom all lawful process may be served in any action, suit, or proceeding instituted in this State by or on behalf of the insured or any beneficiary against the Company arising out of this policy of insurance.  The Company further designates CT Corporation System, 111 Eighth Avenue, 13th Floor, New York, NY 10011 as the person to whom the Superintendent shall mail process.

### NORTH CAROLINA Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of North Carolina, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.  The Company further designates CT Corporation System, 150 Fayetteville Street, Box 1011, Raleigh, NC  27601 as the person to whom the Commissioner shall mail process.

### OHIO Service of Process Clause

Upon any cause of action arising in Ohio under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Superintendent of Insurance of the State of Ohio by the clerk of the court in which the action is brought.  The Company further designates C T Corporation System, 1300 East 9th Street, Cleveland, OH 44114 as the person to whom the Superintendent shall mail process.

### OKLAHOMA Service of Process Clause

Upon any cause of action arising in Oklahoma under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Oklahoma by the clerk of the court in which the action is brought.  The Company further designates The Corporation Company, 1833 South Morgan Road, Oklahoma City, OK 73128 as the person to whom the Commissioner shall mail process.

### OREGON Service of Process Clause

Upon any cause of action arising in Oregon under this contract, the Company may be sued in the circuit court of the county in which the cause of action arose.  The Company further designates:  CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301 as the person to whom the process shall be mailed.

### PENNSYLVANIA Service of Process Clause

It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) herein to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) herein, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. It is further agreed that in any such action instituted against any one of them upon this contract, Insurer(s) or Underwriter(s) will abide by the final decision of such court or of any appellate court in the event of an appeal.  Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure). When making service of process by mail, such process shall be mailed to: CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, PA 17101.  The above-named is authorized and directed to accept service of process on behalf of the Insured(s) or Underwriter(s) in any such action or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance for the Insurer(s) or Underwriter(s) in the event such an action shall be instituted.  Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefor, the Insured(s) or Underwriter(s) hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of his contract of insurance (or reinsurance), and hereby designates the above-named as the person on whom such process or a true copy thereof shall be served.

### RHODE ISLAND Service of Process Clause

Upon any cause of action arising in Rhode Island under this policy, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Secretary of State by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, RI 02914 as the person to whom the Secretary of State shall mail process.

### SOUTH DAKOTA Service of Process Clause

Any cause of action against the Company arising in South Dakota under this policy shall be brought in the circuit court for the county in which the cause of action arose.  Service of legal process against the Company may be made in any such action by service upon the Director of Insurance of the State of South Dakota and his successors in office.  The Company further designates CT Corporation System, 319 South Coteau Street, Pierre, SD 57501 as the person to whom the Director shall mail a copy of the process.  The copy shall be mailed by prepaid registered or certified mail with return receipt requested.  The Company shall have thirty days from the date of service upon the Director within which to plead, answer, or otherwise defend the action.

### TENNESSEE Service of Process Clause

The Company hereby designates the Commissioner of the State of Tennessee, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929-9710 as the person to whom the Commissioner shall mail process.

### TEXAS Service of Process Clause

The Company hereby designates the Commissioner of the State of Texas as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201 as the person to whom the Commissioner shall mail process.

### UTAH Service of Process Clause

The Company hereby designates the Commissioner and Lieutenant Governor of the State of Utah, as its agent upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 1108 East South Union Avenue, Midvale, UT  84047 as the person to whom the Commissioner or Lieutenant Governor shall mail process.

### VIRGINIA Service of Process Clause

The Company hereby designates the clerk of the Commission of the State of Virginia as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060 as the person to whom the clerk of the Commission shall mail process.

### WASHINGTON Service of Process Clause

Upon any cause of action arising in Washington under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Washington by the clerk of the court in which the action is brought.  The Company further designates C T Corporation System, Inc., 505 Union Ave. S.E., Suite 120, Olympia, WA 98501 as the person to whom the Commissioner shall mail process.

### WEST VIRGINIA Service of Process Clause

Upon any cause of action arising in West Virginia under this policy, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Secretary of State by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 5400 D Big Tyler Road, Charleston, WV 25313 as the person to whom the Secretary of State shall mail process.

### WISCONSIN Service of Process Clause

Upon any cause of action arising in Wisconsin under this policy the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Wisconsin.  The Company further designates CT Corporation System, 8020 Excelsior Drive, Suite 200, Madison, WI 53717 as the person to whom the Commissioner shall mail process.

### WYOMING Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance of the State of Wyoming, as its attorney for acceptance of the service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates CT Corporation System, 1712 Pioneer Avenue, Suite 120, Cheyenne, WY 82001 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# STEADFAST INSURANCE COMPANY AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY **STEADFAST INSURANCE COMPANY**, THE FOLLOWING CLAUSES SHALL APPLY:

## Service Of Suit and In Witness Clause

1.  **The following Service Of Suit and In Witness Clause applies to all policies written in Alabama, Alaska, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia or Wyoming:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy. This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

2. **The following Service Of Suit and In Witness Clause applies to all policies written in Arizona, Virginia or Washington:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.

In Witness Whereof, the Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

3. **The following Service Of Suit and In Witness Clause applies to all policies written in California:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder

arising out of this policy of insurance and hereby designates Carpenter & Moore Insurance Services, Inc., 111 Pine Street, Suite 777, San Francisco, California 94111 as whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.  This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, the Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

4. **The following Service Of Suit and In Witness Clause applies to all policies written in Delaware:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Zurich American Insurance Company of Illinois, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.  This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

**5.   The following Service Of Suit and In Witness Clause applies to all policies written in District of Columbia:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates Douglas A. Henry, c/o CT Corporation, 1025 Vermont Avenue, N.W., Washington, DC 20005 as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.  This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

# OFAC Notice and Sanction Limitation Clauses

## Office of Foreign Assets Control ("OFAC") Regulations

## Advisory notice to policyholders regarding the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") regulations

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**Please read this Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons." This list can be located on the United States Treasury's web site – http://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC restrictions. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on premiums and payments also apply.

Includes copyrighted material of Insurance Service Office, Inc. with its permission       U-GU-1041-A (3/11)

## Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100   9/15/2010 (USA date)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## VARIOUS COMPANIES' SERVICE OF SUIT CLAUSES

WITH RESPECT TO THE COVERAGE PROVIDED BY:

> GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; OR
> INTERNATIONAL INSURANCE COMPANY OF HANNOVER, PLC; OR
> LEXINGTON INSURANCE COMPANY; OR
> OLD REPUBLIC UNION INSURANCE COMPANY; OR
> UNITED SPECIALTY INSURANCE COMPANY; OR
> PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY.

THE FOLLOWING APPLICABLE CLAUSES SHALL APPLY TO THE INDICATED COMPANY(IES), PROVIDED THAT COMPANY IS PARTICIPATING ON THE POLICY:

### Service of Suit Clause(s)

It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon:

**General Security Indemnity Company of Arizona**

One Seaport Plaza         With copy to:
199 Water Street          One Seaport Plaza
New York, NY 10038-3526   199 Water Street
Attn.: Henry Klecan, CEO  New York, NY 10038-3526
                          Attn.: Maxine Verne, General Legal Counsel

**International Insurance Company of Hannover, PLC**

Drinker, Biddle & Reath, LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036-2714
Attn: Andrea Best

**Lexington Insurance Company**

100 Summer Street
Boston, MA 02110
Facsimile: (866) 753-8411
Attn.: Division Executive, Commercial Property
With copies to:
AIG Property Casualty U.S.    and   Lexington Insurance Company
175 Water Street - 18th Floor   100 Summer Street
New York, NY 10038                   Boston, MA 02110
Facsimile: (212) 458-7080            Facsimile: (617) 772-4588
Attn.: General Counsel               Attn.: General Counsel

**Old Republic Union Insurance Company**

Old Republic Specialty Insurance Underwriters, Inc.
c/o Office of General Counsel
370 North Michigan Avenue
Chicago, IL 60601

**United Specialty Insurance Company**

1900 L. Don Dodson Drive
Bedford, Texas 76021
Attn.: Terry L. Ledbetter

and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured (or Reinsured) to have a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named person to whom the said officer is authorized to mail such process or a true copy thereof.

## AS RESPECTS PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY ONLY:

### <u>Service of Process Clause</u>

We designate the Superintendent of Insurance, Insurance Commissioner, Director of Insurance, or other officer specified by law, pursuant to the laws of the State where this policy is delivered, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in the State in which this policy is delivered, by, or on behalf of, the Named Insured or any beneficiary hereunder arising out of this Policy.  We designate the General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543 as the person to whom the said officer is authorized to mail such process or true copy thereof**.**

# CyberOne Coverage Form

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the First Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Some words and phrases that appear in bold face or quotation marks have special meaning. Refer to Definitions.

Coverage under this Coverage Form is subject to the following SCHEDULE:

**SECTION 1 – COMPUTER ATTACK**

| | |
|---|---|
| **Computer Attack Limit** | $100,000 |
| | Annual Aggregate |
| **Sublimits** | |
| **Data Re-creation** | $5,000 |
| **Loss of Business** | $10,000 |
| **Public Relations** | $5,000 |
| | Per Occurrence |
| **Computer Attack Deductible** | $10,000 |
| | Per Occurrence |

**SECTION 2 – NETWORK SECURITY LIABILITY**

| | |
|---|---|
| **Network Security Liability Limit** | $100,000 |
| | Annual Aggregate |
| **Network Security Liability Deductible** | $10,000 |
| | Per Occurrence |
| **Network Security Liability Optional Coverage** | |
| **3rd Party Business Information** | Included |

## SECTION 1 – COMPUTER ATTACK

### A. COVERED CAUSE OF LOSS – SECTION 1

This Computer Attack coverage applies only if all of the following conditions are met:

1. There has been a "computer attack"; and

2. Such "computer attack" is first discovered by you during the policy period for which this Coverage Form is applicable; and

3. Such "computer attack" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

### B. COVERAGE – SECTION 1

If all three of the conditions listed above in COVERED CAUSE OF LOSS – SECTION 1 have been met, then we will provide you the following coverages for loss directly arising from such "computer attack".

1. **Data Restoration**

   We will pay your necessary and reasonable "data restoration costs".

2. **Data Re-creation**

   We will pay your necessary and reasonable "data re-creation costs".

© 2013
Includes material © ISO Services, Inc., with permission
as well as other copyrighted material

3. **System Restoration**

We will pay your necessary and reasonable "system restoration costs".

4. **Loss of Business**

We will pay your actual "business income loss" and your necessary and reasonable "extra expenses".

5. **Public Relations**

If you suffer a covered "business income loss", we will pay for the services of a professional public relations firm to assist you in communicating your response to the "computer attack" to the media, the public and your customers, clients or members.

C. **LIMITS – SECTION 1**

The most we will pay under Computer Attack coverage is the Computer Attack Limit indicated in the SCHEDULE. If no limit is shown or is shown as Excluded in the SCHEDULE at the top of this Coverage Form, then the Computer Attack coverage will be considered to have a limit of $0 and no coverage will be provided.

The most we will pay under Data Re-creation coverage for loss (including "business income loss" and "extra expense" related to data re-creation activities) arising from any one "computer attack" is the Data Re-creation Sublimit indicated in the SCHEDULE. This sublimit is part of, and not in addition to, the Computer Attack Limit. If no sublimit is shown or is shown as Excluded in the SCHEDULE at the top of this Coverage Form, then the Data Re-creation coverage will be considered to have a sublimit of $0 and no coverage will be provided.

The most we will pay under Loss of Business coverage for loss arising from any one "computer attack" is the Loss of Business Sublimit indicated in the SCHEDULE. This sublimit is part of, and not in addition to, the Computer Attack Limit. If no sublimit is shown or is shown as Excluded in the SCHEDULE at the top of this Coverage Form, then the Loss of Business coverage will be considered to have a sublimit of $0 and no coverage will be provided.

The most we will pay under Public Relations coverage for loss arising from any one "computer attack" is the Public Relations Sublimit indicated in the SCHEDULE. This sublimit is part of, and not in addition to, the Computer Attack Limit. If no sublimit is shown or is shown as Excluded in the SCHEDULE at the top of this Coverage Form, then the Public Relations coverage will be considered to have a sublimit of $0 and no coverage will be provided.

The Computer Attack Limit is an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under Section 1 arising out of all "computer attack" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "computer attack" events occurring during that period.

A "computer attack" may be first discovered by you in one policy period but it may cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "computer attack" will be subject to the Computer Attack Limit applicable to the policy period when the "computer attack" was first discovered by you.

D. **DEDUCTIBLE – SECTION 1**

The Computer Attack coverage is subject to the Computer Attack Deductible indicated in the SCHEDULE for this Coverage Form. You shall be responsible for the applicable deductible amount as respects loss arising from each "computer attack" covered under this Coverage Form.

# SECTION 2 – NETWORK SECURITY LIABILITY

A. **COVERED CAUSE OF LOSS – SECTION 2**

This Network Security Liability coverage applies only if all of the following conditions are met:

1. You first receive notice of a "network security liability suit" during the policy period for which this Coverage Form is applicable or any Extended Reporting Periods; and

2. Such "network security liability suit" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

B. **COVERAGE – SECTION 2**

If both of the conditions listed above in COVERED CAUSE OF LOSS - SECTION 2 have been met, then we will provide you the following coverages for loss directly arising from such "network security liability suit".

1. **Defense**

We will pay your necessary and reasonable "network security liability defense costs".

2. **Settlement Costs**

We will pay your necessary and reasonable "network security liability settlement costs".

© 2013
Includes material © ISO Services, Inc., with permission
as well as other copyrighted material

**C.   LIMITS – SECTION 2**

Except for post-judgment interest, the most we will pay under Network Security Liability coverage is the Network Security Liability Limit indicated in the SCHEDULE. If no limit is shown or is shown as Excluded in the SCHEDULE at the top of this Coverage Form, then the Network Security Liability coverage will be considered to have a limit of $0 and no coverage will be provided.

The Network Security Liability Limit is an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under Section 2 (other than post-judgment interest) arising out of all "network security liability suits" of which you first receive notice during the present annual policy period or any Extended Reporting Periods. This limit applies regardless of the number of "network security liability suits" of which you first receive notice during that period.

You may first receive notice of a "network security liability suit" in one policy period but it may cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "network security liability suit" (other than post-judgment interest) will be subject to the Network Security Liability Limit applicable to the policy period when notice of the "network security liability suit" was first received by you.

The Network Security Liability Limit for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security Liability Limit for the immediately preceding policy period.

**D.   DEDUCTIBLE – SECTION 2**

The Network Security Liability coverage is subject to the Network Security Liability Deductible indicated in the SCHEDULE for this Coverage Form. You shall be responsible for the applicable deductible amount as respects loss arising from each "network security liability suit" covered under this Coverage Form.

## EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS APPLICABLE TO ALL SECTIONS

**A.   EXCLUSIONS**

We will not pay for costs or loss based upon, arising out of or resulting from the following:

1.   Loss to the internet, an internet service provider, or any computer or computer system that is not owned or leased by you and operated under your control.

2.   Costs to research or correct any deficiency.

3.   Any fines or penalties.

4.   Any criminal investigations or proceedings.

5.   Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

6.   Your intentional or willful complicity in a covered loss event or your reckless disregard for the security of your computer system or data.

7.   Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

8.   Any "computer attack" occurring prior to the first inception of this CyberOne Coverage Form or any coverage substantially similar to that described in this Coverage Form.

9.   That part of any "network security liability suit" seeking any non-monetary relief.

10.   Any "network security liability suit" arising from a propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data that occurred prior to the first inception of this Coverage Form or any coverage substantially similar to that described in this Coverage Form.

11.   The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

12.   Seizure or destruction of property by order of governmental authority.

13.   Nuclear reaction or radiation or radioactive contamination, however caused.

14.   War and military action including any of the following and any consequence of any of the following:

   a.   War, including undeclared or civil war;

   b.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© 2013
Includes material © ISO Services, Inc., with permission
as well as other copyrighted material

15. Bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

16. Physical injury to or destruction of tangible property including all resulting loss of use; or loss of use of tangible property that is not physically injured.

17. Failure or interruption of or damage to the internet or internet service provider.

**B. CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Concealment or Fraud**

This policy is void if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

**3. Coverage Territory**

The "computer attack" must involve a computer or other electronic hardware that is owned or leased by you and operated under your control within the United States of America, its territories and possessions, and Puerto Rico.

The "network security liability suit" must be brought in the United States of America, its territories and possessions, Puerto Rico or Canada.

**4. Due Diligence**

You agree to use due diligence to prevent and mitigate costs covered under this Coverage Form. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for:

a. Providing and maintaining appropriate computer and internet security; and

b. Maintaining and updating at appropriate intervals backups of computer data.

**5. Duties in the Event of a "Computer Attack"**

You must see that the following are done in the event of a "computer attack":

a. Notify the police if a law may have been broken.

b. Give us prompt notice of the "computer attack". As noted in Section 1 A.3., you must report the "computer attack" to us within 60 days of the date you first discover it.

c. As soon as possible, give us a description of how, when and where the "computer attack" occurred.

d. Take all reasonable steps to protect computers or other electronic hardware. If feasible, preserve evidence of the "computer attack".

e. Permit us to inspect the property and records proving the "computer attack".

f. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

g. Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

h. Cooperate with us in the investigation or settlement of the claim.

**6. Duties in the Event of a "Network Security Liability Suit"**

a. If a "network security liability suit" is brought against you, you must:

1. Immediately record the specifics of the "network security liability suit" and the date received; and

2. Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "network security liability suit" is first received by you.

3. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "network security liability suit".

4. Authorize us to obtain records and other information;

5. Cooperate with us in the investigation, settlement or defense of the "network security liability suit";

6. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply; and

7. Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "network security liability suit".

**7. Extended Reporting Periods**

a. You shall have the right to the Extended Reporting Periods described in this section, in the event that:

© 2013
Includes material © ISO Services, Inc., with permission
as well as other copyrighted material

1. You or we cancel this CyberOne coverage;

2. You or we refuse to renew this CyberOne coverage; or

3. We renew this CyberOne coverage on an other than a claims-made basis or with a retroactive date later than the date of the first inception of this Coverage Form or any coverage substantially similar to that described in this Coverage Form;

b. If an event as specified in Paragraph a. has occurred, you shall have the right to the following:

1. An Automatic Extended Reporting Period of 30 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "network security liability suit" of which you first receive notice during said Automatic Extended Reporting Period for any propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data occurring before the end of the coverage period for this CyberOne coverage and which is otherwise covered by this CyberOne coverage; and

2. Upon payment of an additional premium of 100% of the full annual premium applicable to this CyberOne coverage, a Supplemental Extended Reporting Period of 1 year immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "network security liability suit" of which you first receive notice during said Supplemental Extended Reporting Period for any propagation of malware, denial of service attack, or if applicable, loss, release or disclosure of business data occurring before the end of the coverage period for this CyberOne coverage and which is otherwise covered by this CyberOne coverage.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 30 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

This insurance, provided during the Supplemental Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Supplemental Extended Reporting Period becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**8. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The actions is brought within 2 years after the date the "computer attack" is first discovered by you, or the date on which you first receive notice of a "network security liability suit".

**9. Network Security Liability Defense**

a. We shall have the right and the duty to assume the defense of any applicable "network security liability suit" against you. You shall give us such information and cooperation as we may reasonably require.

b. You shall not admit liability for or settle any "network security liability suit" or incur any defense costs without our prior written consent.

c. If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "network security liability suit" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

d. We shall not be obligated to pay any damages or defense costs, or to defend or continue to defend any "network security liability suit", after the Network Security Liability Limit has been exhausted.

e. We shall pay all interest on that amount of any judgment within the Network Security Liability Limit which accrues:

1. After entry of judgment; and

2. Before we pay, offer to pay or deposit in court that part of the judgment within the Network Security Liability Limit or, in any case, before we pay or offer to pay the entire Network Security Liability Limit.

These interest payments shall be in addition to and not part of the Network Security Liability Limit.

**10. Other Data Coverage in This Policy**

Some elements of this CyberOne coverage may also be covered elsewhere under this policy. If so, this CyberOne

© 2013
Includes material © ISO Services, Inc., with permission
as well as other copyrighted material

coverage will apply as excess, additional coverage. If loss payment has been made elsewhere under the policy for the same event, the amount of such payment will count towards the deductible that applies to this CyberOne coverage.

**11. Policy Period**

This policy applies only to "computer attacks" that are first discovered by you during the policy period shown in the Declarations, and to "network security liability suits" of which you first receive notice during the policy period shown in the Declarations. The policy period begins and ends at 12:01 a.m., Standard Time, at your address shown in the Declarations.

**12. Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this Coverage Form:

a. The effectiveness of such services depends on your cooperation and assistance.

b. We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**C. DEFINITIONS**

With respect to the provisions of this Coverage Form only, the following definitions are added:

1. "Business Income Loss" means the sum of the:

    a. Net income (net profit or loss before income taxes) that would have been earned or incurred; and

    b. Continuing normal and necessary operating expenses incurred, including employee payroll,

    actually lost by you during the "period of restoration".

2. "Computer Attack" means one of the following involving a computer or other electronic hardware that is owned or leased by you and operated under your control:

    a. Unauthorized Access - meaning the gaining of access to your computer system by an unauthorized person or persons; or

    b. Malware Attack – meaning damage to your computer system or data arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your computer system during the manufacturing process.

    c. Denial of Service Attack – meaning a deliberate act to prevent third parties from gaining access to your computer system through the internet in a manner in which they are legally entitled.

3. "Data Re-creation Costs"

    a. "Data re-creation costs" means the costs of an outside professional firm hired by you to research, re-create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

    b. "Data re-creation costs" also means your actual "business income loss" and your necessary and reasonable "extra expenses" arising from the lack of the lost or corrupted data during the time required to research, re-create and replace such data.

    c. "Data re-creation costs" does not mean costs to research, re-create or replace:

        1) Software programs or operating systems that are not commercially available; or

        2) Data that is obsolete, unnecessary or useless to you.

4. "Data Restoration Costs"

    a. "Data restoration costs" means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered "data restoration costs," such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

    b. "Data restoration costs" does not mean costs to research, restore or replace:

        1) Software programs or operating systems that are not commercially available; or

        2) Data that is obsolete, unnecessary or useless to you.

5. "Extra Expense" means the additional cost you incur to operate your business during the "period of restoration" over and above the cost that you normally would have incurred to operate your business during the same period

© 2013
Includes material © ISO Services, Inc., with permission
as well as other copyrighted material

had no "computer attack" occurred.

6. "Network Security Liability Defense Costs"

   a. "Network security liability defense costs" means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "network security liability suit" against you. Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

   b. "Network security liability defense costs" does not mean your salaries or your loss of earnings.

7. "Network Security Liability Settlement Costs"

   a. "Network security liability settlement costs" means the following, when they arise from a "network security liability suit":

     1) Damages, judgments or settlements; and

     2) Defense costs added to that part of any judgment paid by us, when such defense costs are awarded by law or court order; and

     3) Pre-judgment interest on that part of any judgment paid by us.

   b. "Network security liability settlement costs" does not mean:

     1) Civil or criminal fines or penalties imposed by law;

     2) Punitive or exemplary damages;

     3) The multiplied portion of multiplied damages;

     4) Taxes; or

     5) Matters which may be deemed uninsurable under the applicable law.

8. "Network Security Liability Suit"

   a. "Network security liability suit" means a civil proceeding against you in which damages are alleged. Such proceeding must be brought in the United States of America, its territories and possessions, Puerto Rico or Canada. Such proceeding must be based on an allegation that a negligent security failure or weakness with respect to a computer or other electronic hardware that is owned or leased by you and operated under your control allowed one or more of the following to happen:

     1) The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

     2) The unintended abetting of a denial of service attack against one or more other systems.

   b. If the 3rd Party Business Information line under Network Security Liability Optional Coverage on the SCHEDULE at the top of this Coverage Form is marked as Included, then "network security liability suit" also means a civil proceeding against you in which damages are alleged which is brought in the United States of America, its territories and possessions, Puerto Rico or Canada and which is based on an allegation that a negligent security failure or weakness with respect to a computer or other electronic hardware that is owned or leased by you and operated under your control allowed the loss, release or disclosure of business data that is owned by or proprietary to a third party. This does not include personally identifying information or other information that is sensitive or personal to individuals. If the 3rd Party Business Information line under Network Security Liability Optional Coverage on the SCHEDULE at the top of this Coverage Form is marked as Excluded or is blank, then "network security liability suit" does not include such suits.

   c. "Network security liability suit" includes the following:

     1) An arbitration or alternative dispute resolution proceeding that you are required to submit to or which we agree you should submit to; or

     2) A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

   d. "Network security liability suit" does not mean any demand or action alleging or arising from property damage or bodily injury.

   e. "Network security liability suit" does not mean any demand or action brought by or on behalf of someone who is:

     1) Your director or officer;

     2) Your owner or part-owner; or

     3) A holder of your securities;

   in their capacity as such, whether directly, derivatively, or by class action.

**© 2013**
**Includes material © ISO Services, Inc., with permission**
**as well as other copyrighted material**

9. "Period of Restoration" means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

    a. The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

    b. The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

10. "System Restoration Costs"

    a. "System restoration costs" means the costs of an outside professional firm hired by you to do any of the following in order to restore your computer system to its pre- "computer attack" level of functionality:

        1) Replace or reinstall computer software programs;

        2) Remove any malicious code; and

        3) Configure or correct the configuration of your computer system.

    b. "System restoration costs" does not mean:

        1) Costs to increase the speed, capacity or utility of your computer system;

        2) Labor of your employees;

        3) Any costs in excess of the actual cash value of your computer system; or

        4) Costs to repair or replace hardware.

**© 2013**
**Includes material © ISO Services, Inc., with permission**
**as well as other copyrighted material**

# Data Compromise Coverage Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the First Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to the Definitions section.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions and any amendment to such terms incorporated by endorsement are hereby incorporated herein and shall apply to coverage as is afforded by this Data Compromise Coverage, unless specifically stated otherwise in an endorsement attached hereto.

SCHEDULE

| SECTION 1 – RESPONSE EXPENSES | | |
|---|---|---|
| **Data Compromise** | | |
| Response Expenses Limit: | $50,000 | Annual Aggregate |
| **Sublimits** | | |
| Named Malware (Section 1): | $50,000 | Any One "Personal Data Compromise" |
| Forensic IT Review: | $5,000 | Any One "Personal Data Compromise" |
| Legal Review: | $5,000 | Any One "Personal Data Compromise" |
| PR Services: | $5,000 | Any One "Personal Data Compromise" |
| **Response Expense Deductible:** | $5,000 | Any One "Personal Data Compromise" |
| | | |
| **SECTION 2 – DEFENSE AND LIABILITY** | | |
| **Data Compromise** | | |
| Defense and Liability Limit: | $50,000 | Annual Aggregate |
| **Sublimits** | | |
| Named Malware (Section 2): | $50,000 | Any One "Personal Data Compromise" |
| **Defense and Liability Deductible** | $2,500 | Each "Data Compromise Suit" |

The following is added as an Additional Coverage:

# SECTION 1 – RESPONSE EXPENSES

**A. DATA COMPROMISE COVERED CAUSE OF LOSS**

Coverage under this Data Compromise Coverage Form applies only if all of the following conditions are met:

**1.** There has been a "personal data compromise"; and

**2.** Such "personal data compromise" is first discovered by you during the policy period for which this Data Compromise Coverage Form is applicable; and

**3.** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

© 2006, 2009, 2012
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

**B. COVERAGE – SECTION 1**

If all three of the conditions listed above in DATA COMPROMISE – COVERED CAUSE OF LOSS have been met, then we will provide coverage for the following expenses when they arise directly from the covered cause of loss and are necessary and reasonable. Coverages 4 and 5 apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under coverage 3.

**1. Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**a.** Vulnerabilities in systems, procedures or physical security;

**b.** Compliance with PCI or other industry security standards; or

**c.** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**2. Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it.

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**3. Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**4. Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals".

**a.** The following services apply to any "personal data compromise".

**(1)** Informational Materials

A packet of loss prevention and customer support information.

**(2)** Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in b. 1) and 2).

**b.** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**(1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**(2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

 © 2006, 2009, 2012

**5. PR Services**

Professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships.

This includes costs to implement public relations recommendations of such firm. This may include advertising and special promotions designed to retain your relationship with "affected individuals". However, we will not pay for promotions:

**a.** Provided to any of your directors or employees; or;

**b.** Costing more than $25 per "affected individual".

## C. LIMITS – SECTION 1

The most we will pay under Response Expenses coverage is the Response Expenses Limit indicated in the SCHEDULE above.

The Data Compromise Response Expenses Limit is an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under Section 1 arising out of all "personal data compromise" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

A "personal data compromise" may be first discovered by you in one policy period but cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "personal data compromise" will be subject to the Response Expenses Limit applicable to the policy period when the "personal data compromise" was first discovered by you.

The most we will pay under Response Expenses coverage for loss arising from any "malware-related compromise" is the Named Malware (Sec. 1) sublimit indicated in the Data Compromise schedule above. For the purpose of the Named Malware (Sec. 1) sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise". This sublimit is part of, and not in addition to the Response Expenses Limit.

The most we will pay under Forensic IT Review, Legal Review and PR Services coverages for loss arising from any one "personal data compromise" is the applicable sublimit for each of those coverages indicated in the Data Compromise schedule above. These sublimits are part of, and not in addition to, the Data Compromise Response Expenses Limit. PR Services coverage is also subject to a limit per "affected individual" as described in 5. PR Services.

Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals". Notwithstanding, coverage for Identity Restoration Case Management services initiated within such one year period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

## D. DEDUCTIBLE – SECTION 1

Response Expenses coverage is subject to the Response Expenses Deductible indicated in the Data Compromise schedule above. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Form.

The following is added as an Additional Coverage:

# SECTION 2 – DEFENSE AND LIABILITY

## A. DEFENSE AND LIABILITY COVERED CAUSE OF LOSS

Coverage under this Data Compromise Coverage Form applies only if all three of the conditions in DATA COMPROMISE – COVERED CAUSE OF LOSS are met.

Only with regard to Section 2 – Defense and Liability coverage, the following conditions must also be met:

**1.** You have provided notifications and services to "affected individuals" in consultation with us pursuant to Response Expenses coverage; and

**2.** You receive notice of a "data compromise suit" brought by one or more "affected individuals" or by a governmental entity on behalf of one or more "affected individuals"; and

3. Notice of such "data compromise suit" is received by you within two years of the date that the "affected individuals" are notified of the "personal data compromise"; and

4. Such "data compromise suit" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

## B. COVERAGE – SECTION 2

If all of the conditions listed above in DEFENSE AND LIABILITY – COVERED CAUSE OF LOSS have been met, then we will provide coverage for "data compromise defense costs" and "data compromise liability" directly arising from the covered cause of loss.

## C. LIMITS – SECTION 2

The most we will pay under Defense and Liability coverage (other than post-judgment interest) is the Data Compromise Defense and Liability Limit indicated in the schedule above.

The Data Compromise Defense and Liability Limit is an annual aggregate limit. This amount is the most we will pay for all loss covered under Section 2 (other than post-judgment interest) arising out of all "personal data compromise" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "personal data compromise" events occurring during that period.

A "personal data compromise" may be first discovered by you in one policy period but cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "personal data compromise" (other than post-judgment interest) will be subject to the Data Compromise Defense and Liability Limit applicable to the policy period when the "personal data compromise" was first discovered by you.

The most we will pay under Defense and Liability coverage for loss arising from any "malware-related compromise" is the Named Malware (Sec. 2) sublimit indicated for this coverage. For the purpose of the Named Malware (Sec. 2) sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise". This sublimit is part of, and not in addition to, the Defense and Liability Limit.

## D. DEDUCTIBLE – SECTION 2

Defense and Liability coverage is subject to the Defense and Liability Deductible indicated in the schedule above. You shall be responsible for such deductible amount as respects each "data compromise suit" covered under this Coverage Form.

# SECTION 3 -- EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS APPLICABLE TO BOTH SECTION 1 AND SECTION 2

## A. EXCLUSIONS

The following additional exclusions apply to this coverage:

We will not pay for costs or loss based upon, arising out of or resulting from the following:

1. Your intentional or willful complicity in a "personal data compromise."

2. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

3. Any "personal data compromise" occurring prior to the first inception of this Data Compromise Coverage Form or any coverage substantially similar to that described in this Form.

4. Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "personal data compromise".

5. Any fines or penalties. This includes, but is not limited to, fees or surcharges from affected financial institutions.

6. Any criminal investigations or proceedings.

7. Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

8. Any "personal data compromise" involving data that is being transmitted electronically, unless such data is encrypted to protect the security of the transmission.

9. Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

10. That part of any "data compromise suit" seeking any non-monetary relief.

11. Seizure or destruction of property by order of governmental authority.

12. Nuclear reaction or radiation or radioactive contamination, however caused.

13. War and military action including any of the following and any consequence of any of the following:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

14. Bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

15. Physical injury to or destruction of tangible property including all resulting loss of use; or loss of use of tangible property that is not physically injured.

16. Failure or interruption of or damage to the internet or internet service provider.

## B. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions.

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Concealment or Fraud

This policy is void if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

### 3. Coverage Territory

The "personal data compromise" must involve "personally identifying information" that was within your care, custody or control within the United States of America and Puerto Rico.

### 4. Data Compromise Liability Defense

   a. We shall have the right and the duty to assume the defense of any applicable "data compromise suit" against you. You shall give us such information and cooperation as we may reasonably require.

   b. You shall not admit liability for or settle any "data compromise suit" or incur any defense costs without our prior written consent.

   c. If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "data compromise suit" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

   d. We shall not be obligated to pay any damages or defense costs, or to defend or continue to defend any "data compromise suit", after the Data Compromise Defense and Liability Limit has been exhausted.

   e. We shall pay all interest on that amount of any judgment within the Data Compromise Defense and Liability Limit which accrues:

      (1) after entry of judgment; and

      (2) before we pay, offer to pay or deposit in court that part of the judgment within the Data Compromise Defense and Liability Limit or, in any case, before we pay or offer to pay the entire Data Compromise Defense and Liability Limit.

These interest payments shall be in addition to and not part of the Data Compromise Defense and Liability Limit.

**5. Due Diligence**

You agree to use due diligence to prevent and mitigate costs covered under this Data Compromise Coverage Form. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information," or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**6. Duties in the Event of a "Data Compromise Suit"**

**a.** If a "data compromise suit" is brought against you, you must:

**(1)** Immediately record the specifics of the "data compromise suit" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "data compromise suit" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "data compromise suit";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "data compromise suit";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "data compromise suit".

**b.** You may not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**c.** If you become aware of a claim or complaint that may become a "data compromise suit," you shall promptly inform us of such claim or complaint.

**7. Duties in the Event of a "Personal Data Compromise"**

You must see that the following are done in the event of a "personal data compromise":

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the "personal data compromise". You must report the "personal data compromise" to us within 60 days of the date you first discover it.

**c.** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

**d.** Take all reasonable steps to protect "personally identifying information" or "personally sensitive information" remaining in your care, custody or control. If feasible, preserve evidence of the "personal data compromise".

**e.** Permit us to inspect the property and records proving the "personal data compromise".

**f.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

**g.** Send us a signed, sworn statement containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**h.** Cooperate with us in the investigation or settlement of the claim.

**8. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

   **b.** The actions is brought within 2 years after the date the "personal data compromise" is first discovered by you.

## 9. Legal Advice

We are not your legal advisor. Our determination of what is or is not covered under this Data Compromise Coverage Form does not represent advice or counsel from us about what you should or should not do.

## 10. Other Insurance

If there is other insurance that applies to the same loss, damage or expense, this Data Compromise Coverage shall apply only as excess insurance after all other applicable insurance has been exhausted.

## 11. Policy Period

This policy applies only to "personal data compromises" that are first discovered by you during the policy period shown in the General Declarations. The policy period begins and ends at 12:01 a.m., Standard Time, at your address shown in the General Declarations.

## 12. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals." We assume no responsibility under this Data Compromise Coverage for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition 13. Service Providers. You must provide the following at our pre-notification consultation with you:

   **a.** The exact list of "affected individuals" to be notified, including contact information.

   **b.** Information about the "personal data compromise" that may appropriately be communicated with "affected individuals."

   **c.** The scope of services that you desire for the "affected individuals." For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

## 13. Service Providers

   **a.** We will only pay under this Data Compromise Coverage for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Data Compromise Coverage. We will not unreasonably withhold such approval.

   **b.** Prior to the Pre-Notification Consultation described in Additional Condition 12. above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

   **(1)** Such alternate service provider must be approved by us;

   **(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

   **(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

## 14. Services

The following conditions apply as respects any services provided to you or any "affected individual" by us, our designees or any service firm paid for in whole or in part under this Data Compromise coverage:

   **a.** The effectiveness of such services depends on your cooperation and assistance.

   **b.** All services may not be available or applicable to all individuals. For example, "affected individuals" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

   **c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

   **d.** You will have a direct relationship with the professional service firms paid for in whole or in part under this coverage. Those firms work for you.

**C. DEFINITIONS**

With respect to the provisions of this Data Compromise Coverage Form only, the following definitions are added:

1. "Affected Individual" means any person who is your current, former or prospective customer, client, member, owner, director or employee and whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Form. This definition is subject to the following provisions:

   a. "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual."

   b. An "affected individual" must have a direct relationship with your interests as insured under this policy. The following are examples of individuals who would not meet this requirement:

      (1) If you aggregate or sell information about individuals as part of your business, the individuals about whom you keep such information do not qualify as "affected individuals." However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

      (2) If you store, process, transmit or transport records, the individuals whose "personally identifying information" or "personally sensitive information you are storing, processing, transmitting or transporting for another entity do not qualify as "affected individuals." However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

      (3) You may have operations, interests or properties that are not insured under this policy. Individuals who have a relationship with you through such other operations, interests or properties do not qualify as "affected individuals." However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of the operation insured under this policy.

   c. An "affected individual" may reside anywhere in the world.

2. "Data Compromise Defense Costs" means expenses resulting solely from the investigation, defense and appeal of any "data compromise suit" against you. Such expenses must be reasonable and necessary. They will be incurred by us. They do not include your salaries or your loss of earnings. They do include premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond.

3. "Data Compromise Liability"

   a. "Data compromise liability" means the following, when they arise from a "data compromise suit":

      (1) Damages, judgments or settlements to "affected individuals";

      (2) Defense costs added to that part of any judgment paid by us, when such defense costs are awarded by law or court order; and

      (3) Pre-judgment interest on that part of any judgment paid by us.

   b. "Data compromise liability" does not mean:

      (1) Damages, judgments or settlements to anyone who is not an "affected individual";

      (2) Civil or criminal fines or penalties imposed by law;

      (3) Punitive or exemplary damages;

      (4) The multiplied portion of multiplied damages;

      (5) Taxes; or

      (6) Matters which may be deemed uninsurable under the applicable law.

4. "Data Compromise Suit"

   a. "Data Compromise Suit" means a civil proceeding in which damages to one or more "affected individuals" arising from a "personal data compromise" or the violation of a governmental statute or regulation are alleged. Such proceeding must be brought in the United States of America, Puerto Rico or Canada. "Data compromise suit" includes:

      (1) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

      (2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent; or

CERTIFIED

**(3)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** "Data compromise suit" does not mean any demand or action brought by or on behalf of someone who is:

**(1)** Your director or officer;

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Data compromise suit" will include proceedings brought by such individuals in their capacity as "affected individuals," but only to the extent that the damages claimed are the same as would apply to any other "affected individual."

**c.** "Data compromise suit" does not mean any demand or action brought by or on behalf of an organization, business, institution or any other party that is not an "affected individual" or governmental entity.

**5.** "Identity Theft" means the fraudulent use of "personally identifying information." This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**6.** "Malware-Related Compromise" means a "personal data compromise" that is caused, enabled or abetted by a virus or other malicious code that, at the time of the "personal data compromise", is named and recognized by the CERT® Coordination Center, McAfee®, Secunia, Symantec or other comparable third party monitors of malicious code activity.

**7.** "Personal Data Compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

**(2)** Such disposal or abandonment must take place during the time period for which this Data Compromise Coverage is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**8.** "Personally Identifying Information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**9.** "Personally Sensitive Information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

All other provisions of this policy apply.

# Calendar Year Hurricane Deductible

The Hurricane Wind/Hail Deductible, as described elsewhere in this policy, will apply anew in each calendar year.  If the policy period does not coincide with the calendar year, then a separate Hurricane Wind/Hail Deductible will apply to loss or damage that occurs during each calendar year in which the policy is in force. For example, if the policy period is from July 1 of calendar year 1 to June 30 of calendar year 2, a separate Hurricane Wind/Hail Deductible applies to loss or damage occurring from July 1 to December 31 of calendar year 1 and to loss or damage occurring from January 1 to June 30 of calendar year 2.

When a Hurricane results in loss or damage that exhausts the Hurricane Wind/Hail Deductible, then that Hurricane Wind/Hail Deductible will not apply to loss or damage from a subsequent Hurricane in the same calendar year.  In such case, the Deductible that applies to loss or damage from each subsequent Hurricane in that calendar year shall be the "All Other Wind/Hail" Deductible.

When a Hurricane results in loss or damage that does not exhaust the Hurricane Wind/Hail Deductible, then the Hurricane Wind/Hail Deductible applicable to a subsequent Hurricane in the same calendar year shall be the greater of:

     a)    the All Other Wind/Hail Deductible; or
     b)    the remaining amount of the Hurricane Wind/Hail Deductible.  In this situation, the remaining amount of the Hurricane Wind/Hail Deductible is determined by subtracting the amount(s) of the aforementioned loss or damage from the Hurricane Wind/Hail Deductible.

All other terms and conditions remain unchanged.

AR CYH 11 15

## <u>Compass Sinkhole Loss Extension</u>

It is understood and agreed that this policy is amended as follows:

1. The words "**Sinkhole Loss**" are deleted from the Earth Movement Definition in Section VIII.J.5. of the AR Compass 02 17 Form.

2. The Compass Form is extended to cover **Sinkhole Loss**, as defined under Section VIII.BB.



All other terms and conditions remain unchanged.

AR Compass Sinkhole 02 17

## TERRORISM ENDORSEMENT

**The extension of coverage as provided by this endorsement shall also be subject to all of the other terms and conditions contained in this policy and any other endorsements attached to this Policy.**

### PROPERTY SECTION

#### Insuring Clause

Subject to the exclusions, limits and conditions hereinafter contained, this Insurance insures Real and Personal Property against direct physical loss or physical damage by an Act of Terrorism, as herein defined, occurring during the period of this Policy as stated in the Declarations Page.

For the purpose of this Insurance, an Act of Terrorism means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

#### Losses Excluded

IN ADDITION TO THE EXCLUSIONS STATED ELSEWHERE IN THIS POLICY, THIS EXTENSION OF COVERAGE DOES NOT INSURE AGAINST:-

1.  Loss or damage arising directly or indirectly from nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination, however such nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination may have been caused.

2.  Loss or damage occasioned directly or indirectly by war, invasion or warlike operations (whether war be declared or not), hostile acts of sovereign or government entities, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power or martial law or confiscation by order of any Government or public authority.

3.  Loss by seizure or illegal occupation.

4.  Loss or damage caused by confiscation, requisition, detention, legal or illegal occupation, embargo, quarantine, or any result of any order of public or government authority which deprives the Insured of the use or value of its property, nor for loss or damage arising from acts of contraband or illegal transportation or illegal trade.

5.  Loss or damage directly or indirectly arising from or in consequence of the discharge of pollutants or contaminants, which pollutants and contaminants shall include but not be limited to any solid, liquid, gaseous or thermal irritant, contaminant of toxic or hazardous substance or any substance the presence, existence or release of which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

6.  Loss or damage by chemical or biological release or exposure of any kind.

7.  Loss or damage by attacks by electronic means, including computer hacking or the introduction of any form of computer virus.

8.  Loss or damage caused by vandals or other persons acting maliciously or by way of protest or strikes, riots or civil commotion unless physical loss or damage is caused directly by an Act of Terrorism.

9.  Loss or increased cost occasioned by any Public or Civil Authority's enforcement of any ordinance or law regulating the reconstruction, repair or demolition of any property insured hereunder; unless this ordinance or law extension is also covered by the Policy's other insured perils.

10. Any consequential loss or damage caused by any other ensuing cause.

11. Loss of use, delay or loss of markets, however caused or arising, and despite any preceding loss insured hereunder.

12. Loss or damage caused by cessation, fluctuation or variation in, or insufficiency of, water, gas or electricity supplies and telecommunications of any type or service.

AR TERR 09 17                                                                                          1

13. Loss or increased cost as a result of threat or hoax, in the absence of physical damage due to an Act of Terrorism.

14. Loss or damage caused by or arising out of burglary, house - breaking, theft or larceny or caused by any person taking part therein.

15. Loss, damage, cost or expense or whatsoever nature directly or indirectly caused by, resulting from or in connection with any actual or threatened existence, growth, release, transmission, migration, dispersal, or exposure to Mold, Spores, or Fungus, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.  Mold, Spores, or Fungus means any mold, spores or fungus of any type that can cause or threaten physical damage, deterioration, loss of use or loss of value or marketability, to any tangible property whatsoever.  This includes, but is not limited to, any type(s) of Mold, Spores, or Fungus that are damaging or potentially damaging to tangible property.  Nor does this policy apply to the cost of removal, disposal, decontamination or replacement of insured property which has been contaminated by Mold, Spores, or Fungus and by law and civil authority must be restored, disposed of, or decontaminated.  In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

### Property Excluded

IN ADDITION TO THE PROPERTY EXCLUDED ELSEWHERE IN THIS POLICY, THIS EXTENSION OF COVERAGE SHALL ALSO EXCLUDE THE FOLLOWING:

1.  Property located in the downtown business districts (specific zip codes) of:
    Boston, MA: 02108, 02109, 02110, 02111, 02112, 02113, 02114, 02203, 02205, 02210, 02211, 02212 & 02222.
    San Francisco, CA: 94104, 94105 & 94111.
    Washington, DC: 20001, 20002, 20003, 20004, 20005, 20006, 20024, 20036, 20037, 20045, 20059, 20201, 20204, 20220, 20240, 20260, 20319, 20401, 20407, 20410, 20418, 20500, 20503, 20515, 20530, 20549 & 20560.
    Manhattan, NY: 10002, 10004, 10005, 10006, 10007, 10013, 10038, 10048, 10280 & 10282.
2.  Buildings with values greater than $250,000,000.
3.  Buildings or locations where animal testing is conducted.
4.  Embassies and Government owned & occupied buildings.  State and Local Municipalities and/or Hospitals do not apply to this exclusion.
5.  Abortion Clinics.
6.  Property located in the U.S. Virgin Islands.
7.  Property in Transit not on the Insured's premises.

### Onus of Proof

In any claim and/or action, suit or proceeding to enforce a claim for loss under this policy, the burden of proving that the loss is recoverable under this Policy and that no limitation or exclusion of this policy applies and the quantum of loss shall fall upon the Insured.

### Sum Insured

The Underwriters hereon shall not be liable for more than the sum insured stated in the Supplemental Declarations Page in respect of each occurrence.

### Deductible

Each occurrence shall be adjusted separately and from the amount of each such adjusted loss the sum stated in the Deductible Endorsement shall be deducted.

### Occurrence

The term "Occurrence" shall mean any one loss and/or series of losses arising out of and directly occasioned by one Act or series of Acts of Terrorism for the same purpose or cause.  The duration and extent of any one "Occurrence" shall be limited to all losses sustained by the Insured at the property insured herein during any period

AR TERR 09 17

of 72 consecutive hours arising out of the same purpose or cause.  However, no such period of 72 consecutive hours may extend beyond the expiration of this policy unless the Insured shall first sustain direct physical damage by an Act of Terrorism prior to expiration and within said period of 72 consecutive hours nor shall any period of 72 consecutive hours commence prior to the attachment of this Policy.

## Conditions

1. Protection Maintenance

    It is agreed that any protection provided for the safety of the insured property shall be maintained in good order throughout the currency of this Policy and shall be in use at all relevant times, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Underwriters without their consent.

2. Rights of Third Parties Exclusion

    This Policy is effected solely between the Insured and Underwriters.  This Policy shall not confer any benefits on any third parties, including shareholders, and no such third party may enforce any term of this Policy.  The Contract (Rights of Third Parties) Act 1999 is expressly excluded from this Policy.

    This clause shall not affect the rights of the Insured.  Any Loss Payees and/or Mortgagees shall be included in loss payments, as their interests may appear.

3. Arbitration

    All matters in difference between the Insured and the Underwriters (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

    Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent.  Within thirty days or receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

    Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.

    Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

    The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

    All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to and by whom and in what manner they shall be paid.

    The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

    The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.

## BUSINESS INTERRUPTION SECTION

In consideration of the premium paid, and subject to the EXCLUSIONS, CONDITIONS AND LIMITATIONS of the Policy to which this Extension is attached, and also to the FOLLOWING ADDITIONAL CONDITIONS and EXCLUSIONS, this Policy is extended to cover loss resulting from necessary Interruption of Business, relating only to the premises affected by the Act of Terrorism, caused by Direct Physical Loss or Damage of an Act of Terrorism, as covered by the Policy to which this Extension is attached, to property insured by this Policy.  This Policy is also extended to cover loss resulting from Interruption of Business (if covered), to an Insured's covered Location due to INTERRUPTION BY CIVIL OR MILITARY AUTHORITY or INGRESS & EGRESS, from an Act of Terrorism, to real property not owned by the Insured; and only for the SUBLIMITS OF LIABILITY stated elsewhere in this policy; however, in no event to exceed $1,000,000 per occurrence.

## Conditions

Direct Damage

No claim shall be payable under this Extension unless and until a claim has been paid, or liability admitted, in respect of Direct Physical Loss or Damage by an Act of Terrorism to property insured under the Policy to which this Extension is attached and which gave rise to Interruption of Business.

This Condition shall not apply if no such payment shall have been made, or liability admitted, solely owing to the operation of a Deductible in said Policy which excludes liability for losses below a specified amount.

This Condition shall be amended to include Direct Physical Loss or Damage to real property not owned by the Insured, but only as respects INTERRUPTION BY CIVIL OR MILITARY AUTHORITY or INGRESS & EGRESS if covered under this policy.

## Exclusions

IN ADDITION TO THE EXCLUSIONS STATED ELSEWHERE IN THIS POLICY, THIS EXTENSION DOES NOT INSURE AGAINST:

1.  Increase in loss resulting from interference at the insured premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of operation.

2.  Increase in loss caused by the suspension, lapse, or cancellation of any lease, licence, contract, or order, unless such results directly from the insured Interruption of Business, and then Underwriters shall be liable for only such loss as affects the Insured's earnings during, and limited to, the period of indemnity covered under this Policy.

3.  Increase in loss caused by the enforcement of any ordinance or law regulating the use, reconstruction, repair or demolition of any property insured hereunder; unless this ordinance or law extension is also covered by the Policy's other insured perils.

4.  Loss of market or other consequential loss, except as respects loss resulting from Interruption of Business (if covered),  to an Insured's covered Location due to INTERRUPTION BY CIVIL OR MILITARY AUTHORITY and/or INGRESS & EGRESS, from an Act of Terrorism to real property not owned by the Insured.

5.  Loss as a result of physical or mental or bodily injury to any person.

All other terms and conditions remain unchanged.

AR TERR 09 17                                                                                                          4

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLOOD ZONE DESIGNATION

It is agreed that for purposes of applying the policy's applicable Flood exclusions, sublimits and/or deductibles:

1.  The Locations from the latest Statement of Values on file with AmRisc are designated to be in the Flood Zones as indicated below.  The street addresses shown below shall apply to the entire Location that includes that street address.  Any Flood Zone prefixed A or V is considered to be Flood Zone A or V, respectively.

| Address | City | State | Zip | Flood Zone |
|---|---|---|---|---|
| 2400 S. Loop W Fwy | Houston | TX | 77054 | X-UnSh |
| 2401 West Ridge | Houston | TX | 77054 | X-UnSh |
| 7020 Stuebner Ariline Rd. | Houston | TX | 77091 | AE |
| 3607 Old Spanish Trail | Houston | TX | 77021 | X-UnSh |
| 4808 Gibson St. | Houston | TX | 77007 | X-UnSh |
| 1417 Congress St. | Houston | TX | 77002 | X-UnSh |
| 4704 Airline Dr. | Houston | TX | 77022 | X-UnSh |
| 6010 Washington | Houston | TX | 77007 | X-UnSh |
| 4720 Clinton Dr | Houston | TX | 77020 | X-UnSh |
| 7410 Apache St. | Houston | TX | 77028 | AE |
| 200 Emile St. | Houston | TX | 77020 | X-UnSh |
| 5820 Washington | Houston | TX | 77077 | X-UnSh |
| 22220-22224 NW Freeway | Cypress | TX | 77095 | X-UnSh |
| 2533 Southmore | Houston | TX | 77004 | X-UnSh |
| 5555 Washington | Houston | TX | 77077 | X-UnSh |
| 2133 Hwy 6 South | Houston | TX | 77077 | X-UnSh |
| 2135 Hwy 6 South | Houston | TX | 77077 | X-UnSh |
| 5040 Broadway | Pearland | TX | 77584 | X500 |
| 6940-7021 Portwest Dr. | Houston | TX | 77024 | X-UnSh |
| 525 McCarty St. | Houston | TX | 77029 | X-UnSh |
| 1901-1903 Jefferson St. 2502 S | Laredo | TX | 78040 | X-UnSh |
| 6501 Navigation | Houston | TX | 77011 | X-UnSh |
| 3838 Westheimer | Houston | TX | 77028 | X-UnSh |
| 3900 6th Street | Holmes Beach | FL | 34217 | AE |
| 9451 Cullen Blvd. | Houston | TX | 77051 | X500 |
| 4310 Old Spanish Trail | Houston | TX | 77021 | X-UnSh |
| 7647 Harrisburg Blvd | Houston | TX | 77012 | X-UnSh |
| 3815 Garrott St. | Houston | TX | 77006 | X-UnSh |
| 410 Sul Ross | Houston | TX | 77006 | X-UnSh |
| 6028 Navigation | Houston | TX | 77011 | X-UnSh |
| 5304 Navigation | Houston | TX | 77011 | X500 |
| 702 W Bay Area Blvd | Webster | TX | 77598 | X-UnSh |
| 421 SE 34th Ave. | Amarillo | TX | 79103 | X-UnSh |
| 2504 Broadway Ave. | Galveston | TX | 77550 | AE |
| 3530 W 12th St | Houston | TX | 77008 | X-UnSh |
| 13840 Pike Road | Missouri City | TX | 77489 | X-UnSh |
| 144 Winkler Dr | Houston | TX | 77087 | X-UnSh |
| 3730 Dacoma Street | Houston | TX | 77092 | X-UnSh |
| 6942 Signat Drive | Houston | TX | 77041 | X-UnSh |
| 2710 W Alabama St | Houston | TX | 77098 | X-UnSh |
| 440 South Street | Houston | TX | 77023 | AE |

AR FLD 06 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLOOD ZONE DESIGNATION

It is agreed that for purposes of applying the policy's applicable Flood exclusions, sublimits and/or deductibles:

1.  The Locations from the latest Statement of Values on file with AmRisc are designated to be in the Flood Zones as indicated below.  The street addresses shown below shall apply to the entire Location that includes that street address.  Any Flood Zone prefixed A or V is considered to be Flood Zone A or V, respectively.

| | | | | |
|---|---|---|---|---|
| 10660 Eastex Freeway | Houston | TX | 77093 | AE |
| 3852 Telephone Rd | Houston | TX | 77023 | AE |

2.  Any future Location(s) declared and added to the Statement of Values on file with AmRisc:
    The Flood Zone will be determined at time of binding.  If the Flood Zone is not indicated on the endorsement adding the Location (s), then it will be determined at the time of loss.

3.  Miscellaneous Unnamed Location or Newly Acquired Property (if covered by the policy):
    The Flood sublimit applying (if Flood is a covered peril for the affected Location) will be the lesser of:
    a)    The Miscellaneous Unnamed Locations or Newly Acquired Property sublimit (whichever is applicable at the time of loss); or
    b)    The applicable Flood limit.

All other terms and conditions remain unchanged.

AR FLD 06 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL COVERAGE ENDORSEMENT
# (WIND-DRIVEN PRECIPITATION)

This endorsement modifies insurance provided under the following:

## CAUSE OF LOSS - SPECIAL FORM OR COMPASS

**Sublimit:**

The sublimit for WIND-DRIVEN PRECIPITATION is included within the Limit of Insurance shown in the Declarations as applicable to the covered Building Property.  This sublimit does not increase the Limit of Insurance.

Sublimit:  $ 250,000

**Covered Cause of Loss:**

The term Covered Cause of Loss includes the Additional Coverage of Wind-Driven Precipitation as described and limited below.

The Companies will pay for direct physical loss or damage to the interior of any building or structure, or to personal property in the building or structure caused by or resulting from rain, snow, sleet or ice, when driven by wind.

**Additional Exclusions:**

The Companies will not pay for loss or damage caused directly or indirectly by any of the following:

(1) Sand or dust, unless the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the sand or dust enters;

(2) Thawing of snow, sleet or ice on the building or structure; or

(3) Faulty, inadequate or defective:
    (a) Planning, zoning, development, surveying, siting;
    (b) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    (c) Materials used in repair, construction, renovation or remodeling; or
    (d) Maintenance of part or all of any property on or off the described premises.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

A. The following definition is added with respect to the provisions of this endorsement:

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "Certified Act of Terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

The Companies will not pay for loss or damage caused directly or indirectly by a "Certified Act of Terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

C. **Exception Covering Certain Fire Losses**

As respects to property located in states that have Standard Fire Policy or similar laws mandating that insurance Companies provide coverage for "fire following" any Certified Acts of Terrorism, the following exception to the exclusion in Paragraph **B.** applies:

If a "Certified Act of Terrorism" results in fire, the Companies will pay for the loss or damage caused by that fire.  Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Companies have met their insurer deductible under the Terrorism Risk Insurance Act, the Companies shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

D. **Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War and Military Action Exclusion.

All other terms and conditions remain unchanged.

AR TRIA EXCL 02 15